IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

EDERICK FABRIZIO also known as
EDERICK FABRICIO,

                          Plaintiff,                  Civil Action No.
                                              9:18-CV-0339 (GTS/DEP)

     v.

COMMISSIONER ANTHONY J.
ANNUCCI, *et al.*,[1]

                          Defendants.

_____

<u>APPEARANCES</u>:              <u>OF COUNSEL</u>:

<u>FOR PLAINTIFF</u>:

EDERICK FABRIZIO a/k/a
EDERICK FABRICIO, *Pro Se*
97-A-2265
Otisville Correctional Facility
Box 8
Otisville, NY 10963

<u>FOR DEFENDANTS</u>:

HON. LETITIA A. JAMES         NICHOLAS LUKE ZAPP, ESQ.
New York State Attorney General    Assistant Attorney General
The Capitol
Albany, NY 12224

_____

[1]      According to acknowledgements of service that have been filed with the court, the proper spellings and full names of certain of the defendants identified in plaintiff's amended complaint are as follows: "Lt. Sullivan" is "Brian Sullivan," Dkt. No. 26; "T. Mauro" is "Thomas Mauro," Dkt. No. 27; "C.O. Rielly" is "James Rielly," Dkt. No. 29; and "Sgt. Galioto" is "Daniel Galioto," Dkt. No. 30. The clerk of the court will respectfully be directed to modify the court's records to reflect these changes.

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

<u>ORDER, REPORT, AND RECOMMENDATION</u>

This is a civil rights action commenced by *pro se* plaintiff Ederick Fabrizio, a New York State prison inmate, pursuant to 42 U.S.C. § 1983 against several individuals employed by the New York State Department of Corrections and Community Supervision ("DOCCS"). In his complaint, as amended, plaintiff alleges that defendants violated his rights under the First and Eighth Amendments to the United States Constitution.

In response to plaintiff's amended complaint, defendants have moved for the entry of summary judgment dismissing his claims. In their motion, defendants raise a single procedural issue, arguing that plaintiff is precluded from pursuing his claims as a result of his failure to exhaust available administrative remedies prior to filing suit. Because I agree that the record clearly establishes plaintiff's failure to properly exhaust available administrative remedies before commencing suit, and there is no basis presented for excusing the exhaustion requirement, I recommend that defendants' motion be granted.

I.    <u>BACKGROUND</u>[2]

---

[2]    In light of the procedural posture of the case, the following recitation is derived

Plaintiff is currently confined in the custody of the DOCCS. Dkt. No. 9 at 1. While he is now incarcerated elsewhere, at all times relevant to the events in this action, plaintiff was confined in the Greene Correctional Facility ("Greene"), located in Coxsackie, New York. *Id.* At various other times, plaintiff was also held in the Elmira Correction Facility ("Elmira") and the Green Haven Correctional Facility ("Green Haven"). *Id.* at 4.

On November 9, 2016, plaintiff commenced an action in the Southern District of New York alleging violations of his constitutional rights while confined at Green Haven. Dkt. No. 9 at 4; *see Fabricio v. Lee et al*, No. 16-CV-8731 (S.D.N.Y. filed 11/9/16). In addition, on June 23, 2017, plaintiff filed a lawsuit in the Western District of New York alleging violations of his constitutional rights while he was confined at Elmira. Dkt. No. 9 at 4; *Fabricio v. Annucci et al*, No. 17-CV-6410 (W.D.N.Y. filed 6/23/17). Generally, plaintiff alleges that as a result of these two actions, defendants retaliated against him in violation of his First Amendment rights. *See generally* Dkt. No. 9 at 4.

Plaintiff's amended complaint details various alleged incidents occurring during his confinement at Greene, claiming that they were

---

from the record now before the court, with all inferences drawn and ambiguities resolved in the non-movant's favor. *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003).

constitutionally-significant adverse actions taken in retaliation for his having engaged in protected activity.[3] *See generally* Dkt. No. 9.

A.    December 9, 2017 Incident and Grievance GNE-9664-17

On December 9, 2017, while plaintiff was walking back from the mess hall towards his dorm with another inmate, he was stopped by defendant James Rielly, a corrections officer at Greene. Dkt. No. 9 at 7. Defendant Rielly allegedly then "grab[bed] the [p]laintiff by his coat . . . and force[d] him to put his hands on the fence, while maliciously and sadistically . . . kicking the [p]laintiff['s] legs to pull them apart, just for the very purpose of causing unnecessary harm . . . and made the [p]laintiff f[a]ll to his knees." *Id.* Defendant Oliver, who is also a corrections officer at Greene, then approached plaintiff, and the two defendants "started to smack the [p]laintiff from the bottom of his face[] while they . . . rubb[ed] [his] face against the fence," resulting in a laceration to his face, and they took bread out of his pocket. *Id.* Plaintiff claims that "at no time during this incident did [p]laintiff use any force against the defendant[] officers or do anything that would have provided the officers with a legal basis to use force against him." *Id.* at

---

[3]      Although plaintiff describes additional events in his amended complaint that are not detailed in this section, I have limited my discussion to the circumstances forming the basis for those claims that survived the court's initial review pursuant to 28 U.S.C. §§ 1915(e), 1915A. *See generally* Dkt. No. 14.

7-8.

On December 12, 2017, plaintiff filed grievance number GNE-9664-17 regarding the December 9, 2017 incident involving defendants Rielly and Oliver.[4] Dkt. No. 50-2 at 2; Dkt. No. 55-3 at 2; *see also* Dkt. No. 55-1 at 5-7. Plaintiff's grievance was forwarded directly to the superintendent of the facility, and a determination was issued on January 8, 2018, concluding that plaintiff's allegations could not be substantiated. Dkt. No. 50-2 at 2; Dkt. No. 55-3 at 1; *see also* Dkt. No. 50-3 at 9. The following day, plaintiff signed an appeal statement, and the DOCCS Central Office Review Committee ("CORC") acknowledged receipt of plaintiff's appeal on March 12, 2018. *Id.*; Dkt. No. 50-3 at 9-10; Dkt. No. 55-1 at 6.

B.    February 16, 2018 Incident and Grievance GNE-9766-18

On February 16, 2018, while plaintiff was working on his legal claims, defendant Laster, another corrections officer at Greene, searched plaintiff's cube and began reading plaintiff's notepad where he kept legal notes related to each of his grievances. Dkt. No. 9 at 11. Defendant Laster thereafter left plaintiff's cube and returned with a contraband report. *Id.* While Laster subsequently confiscated plaintiff's notebook, he did not

_____

4    Plaintiff also filed a second grievance against defendant Oliver on December 30, 2017 alleging retaliation, intimidation, and harassment. Dkt. No. 55-1. That grievance was consolidated with GNE-9664-17. *Id.*

5

provide him with a corresponding contraband slip. *Id.*

As a result of that incident, on February 22, 2018, plaintiff filed grievance number GNE-9766-18. Dkt. No. 50-2 at 2; Dkt. No. 55-3 at 2; *see* Dkt. No. 50-3 at 12. That grievance was once again forwarded directly to the facility superintendent, and a determination was issued on March 16, 2018, advising plaintiff that the matter was under investigation by the DOCCS Office of Special Investigations ("OSI") and that action on the grievance was being deferred pending the completion of that investigation. *Id.*; *see* Dkt. No. 50-3 at 14. Plaintiff appealed the superintendent's determination to the CORC on March 21, 2018, and the CORC received plaintiff's appeal on April 26, 2018. *Id.*; Dkt. No. 55-1 at 5; *see* Dkt. No. 50-3 at 14.

C.    April 5, 2018 Incident and Grievance GNE-9848-18

On April 5, 2018, defendant Oliver pat frisked plaintiff, ordering Fabrizio to take his shoes off and stand on a freezing cold floor. Dkt. No. 9 at 12. The following day, on April 6, 2018, plaintiff was stopped while walking to his dorm, placed in handcuffs, and directed to get into a van with defendant Rielly. *Id.* Plaintiff was then placed inside a room and ordered to face the wall while Rielly conducted a strip search of plaintiff. *Id.* at 13. Upon completion of the search, plaintiff's clothes were returned to him, with

6

the exception of his gloves and scarf, which were not returned and for which he was not provided a contraband slip. *Id.* Plaintiff alleges that with respect to these events, the officers involved never gave plaintiff an explanation as to why he was subjected to a strip search, nor was he ever issued a misbehavior report, evidencing the "administration['s] intent [to] conspire against [plaintiff] to make him go through unnecessary suffering." *Id.*

On or about April 9, 2018, plaintiff filed grievance number GNE-9848-18 regarding the April 5 and 6, 2018 incidents. Dkt. No. 50-2 at 3; Dkt. No. 55-3 at 2; *see* Dkt. No. 50-3 at 16-17. The grievance was forwarded directly to the superintendent at Greene, who issued a determination on August 31, 2018, concluding that the plaintiff's allegations could not be substantiated. *Id.*; *see* Dkt. No. 50-3 at 19. Plaintiff filed an appeal of the superintendent's determination on September 12, 2018; that appeal was received by the CORC on October 15, 2018. *Id.*; Dkt. No. 55-1 at 9.

### D. May 20, 2018 Incident and Grievance GNE-9848-18

On the evening of May 20, 2018, as plaintiff was leaving the facility's law library, defendant Daniel Galioto, another corrections officer at Greene, and Sergeant Cruz, an officer who, plaintiff claims, was previously affiliated with Green Haven and acquainted with defendants in plaintiff's prior lawsuit

involving events at that facility, directed two officers to search plaintiff and his legal papers. Dkt. No. 9 at 15. Plaintiff was not provided a reason as to why the officers searched his papers. *Id.* On or about June 4, 2018, plaintiff filed grievance number GNE-9922-18 regarding the May 20, 2018 incident. Dkt. No. 50-2 at 3; Dkt. No. 55-3 at 2; *see* Dkt. No. 50-3 at 21-22. That grievance was similarly forwarded directly to the Greene superintendent, who issued a determination on August 10, 2018, again finding plaintiff's allegations to be unsubstantiated. *Id.*; *see* Dkt. No. 50-3 at 24. On August 10, 2018, plaintiff filed an appeal of the superintendent's determination; that appeal was received by the CORC on October 15, 2018. *Id.*; Dkt. No. 55-1 at 10.

      E.    <u>Remaining Claims</u>

Finally, in his complaint, as amended, plaintiff alleges that defendants Anthony J. Annucci, the DOCCS Acting Commissioner; Brandon Smith, the Superintendent of Greene; Thomas Mauro, the IGP Supervisor at Greene; and Brian Sullivan, a corrections officer at Greene, were personally involved in the alleged constitutional violations. Specifically, plaintiff contends that defendants Mauro and Sullivan investigated and denied his grievances, suggesting that they "participat[ed] in an unwritten practice of retaliation." Dkt. No. 9 at 19. With respect to defendants Smith and

Annucci, plaintiff alleges they "intentionally conspire[d] to persecute [and]

retaliate against plaintiff" and "fail[ed] to act on knowledge of substantial

risk of serious harm to plaintiff." *Id.* at 17, 18.

II.    PROCEDURAL HISTORY

Plaintiff commenced this action on or about March 19, 2018, by the

filing of a complaint dated February 20, 2018, accompanied by an

application for leave to proceed *in forma pauperis* ("IFP"). Dkt. Nos 1, 2.

Following an initial review of plaintiff's complaint pursuant to 28 U.S.C. §§

1915(e), 1915A, Chief Judge Glenn T. Suddaby issued a decision and

order denying as moot plaintiff's IFP application and dismissing all of the

claims set forth in plaintiff's complaint, with the exception of his Eighth

Amendment excessive force claim asserted against defendants John Doe

#2 and Oliver, and granted plaintiff leave to amend his complaint. Dkt. No.

5.

Plaintiff availed himself of the opportunity to replead on or about July

16, 2018, by filing an amended complaint and second IFP application. Dkt.

No. 9. Upon review of that amended pleading pursuant to 28 U.S.C. §§

1915(e), 1915A, the court granted plaintiff's IFP application and accepted

for filing plaintiff's Eighth Amendment excessive force claims against

defendant Oliver and Rielly and the following First Amendment retaliation

causes of action: (1) a claim against defendant Laster, related to incidents that occurred in February and March 2018; (2) claims against defendants Rielly and Oliver for aggressive pat-frisks and the confiscation of plaintiff's personal items in April 2018; (3) a claim against defendant Galioto, related to the May 2018 search of plaintiff's legal work; and (4) retaliation claims against defendants Annucci, Smith, Mauro, and Sullivan. Dkt. No. 14.

On April 1, 2018, prior to answering plaintiff's amended complaint, defendants filed the currently pending motion for summary judgment, arguing that plaintiff's claims are barred based on his failure to exhaust available administrative remedies prior to filing this action.[5] Dkt. No. 50. Plaintiff filed a response in opposition to the motion, and defendants have since replied in further support of their motion. Dkt. Nos. 55, 56. Additionally, and with the court's permission, plaintiff has filed a sur-reply in opposition to defendants' motion. Dkt. No. 59. Defendants' motion, which is

---

[5]    Unlike its Rule 12(b) dismissal motion counterpart, a summary judgment motion does not by rule have the effect of automatically staying the requirement of answering a plaintiff's complaint. *Compare* Fed. R. Civ. P. 12(b)(6) with Fed. R. Civ. P. 56. Despite the lack of a specific rule recognizing such a stay, some courts have deemed the interposition of a pre-answer summary judgment motion as an act of defending in the case, negating a finding of a default, while others have not. *Compare Rashidi v. Albright*, 818 F. Supp. 1354, 1355-56 (D. Nev. 1993) *with Poe v. Cristina Copper Mines*, Inc., 15 F.R.D. 85, 87 (D. Del. 1953). In this instance, exercising my discretion, I will *sua sponte* order a stay of defendants' time to answer plaintiff's complaint until twenty days after a final determination is issued with respect to defendants' motion, in the event that the action survives. *See Snyder v. Goord*, 9:05-CV-01284, 2007 U.S. Dist. LEXIS 23066, 2007 WL 957530, at * 5 (N.D.N.Y. Mar. 29, 2007) (McAvoy, S.J. and Peebles, M.J.).

now fully briefed and ripe for determination, has been referred to me for the

issuance of a report and recommendation pursuant to 28 U.S.C. §

636(b)(1)(B) and Northern District of New York Local Rule 73.2(c). *See*

*also* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

    A.    Legal Standard Governing Summary Judgment Motions

       Summary judgment motions are governed by Rule 56 of the Federal

Rules of Civil Procedure. Under that provision, the entry of summary

judgment is warranted "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317,

322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986);

*Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77,

82-83 (2d Cir. 2004). A fact is "material" for purposes of this inquiry if it

"might affect the outcome of the suit under the governing law." *Anderson*,

477 U.S. at 248; *see also Jeffreys v. City of N.Y.*, 426 F.3d 549, 553 (2d

Cir. 2005). A material fact is genuinely in dispute "if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party."

*Anderson*, 477 U.S. at 248.

       A party moving for summary judgment bears an initial burden of

demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4; *Sec. Ins. Co.*, 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material dispute of fact for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences, in a light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). The entry of summary judgment is justified only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *Bldg. Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002); *see also Anderson*, 477 U.S. at 250 (finding summary judgment appropriate only when "there can be but one reasonable conclusion as to the verdict").

    B.   <u>Exhaustion of Available Administrative Remedies</u>

      In support of their motion, defendants argue that plaintiff commenced this action on February 20, 2018, the date upon which plaintiff signed his original complaint. Dkt. No. 1 at 17; Dkt. No. 50-1 at 10. Defendants argue

12

that based upon the dates that plaintiff filed each of his grievances and

appeals with the CORC, plaintiff's federal causes of action are subject to

dismissal due to his failure to satisfy the applicable exhaustion requirement.

Dkt. No. 50-1 at 8-9. In opposition to defendants' motion, plaintiff asserts

that there were delays in processing his appeals and that the CORC failed

to render decisions, in violation of DOCCS Directive No. 4040. *See*

*generally* Dkt. No. 55-1.

       1.   <u>Legal Standard</u>

     The Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-

134, 110 Stat. 1321 (1996), which imposes several restrictions on the

ability of prisoners to maintain federal civil rights actions, expressly

provides that "[n]o action shall be brought with respect to prison conditions

under section 1983 of this title, or any other Federal law, by a prisoner

confined in any jail, prison, or other correctional facility until such

administrative remedies as are available are exhausted." 42 U.S.C. §

1997e(a); *see also Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). Section

1997e(a)'s exhaustion provision is mandatory and applies to all inmate

lawsuits regarding the conditions of their confinement. *Ross*, 136 S. Ct. at

1856; *Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *Porter v. Nussle*, 534 U.S.

516, 524, 532 (2002); *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 122

(2d Cir. 2016). In the event a defendant establishes that the inmate-plaintiff failed to fully comply with the administrative process prior to commencing an action in federal court, the plaintiff's complaint is subject to dismissal. *See Woodford*, 548 U.S. at 93 ("[W]e are persuaded that the PLRA exhaustion requirement requires proper exhaustion."); *see also Wilson v. McKenna*, 661 F. App'x 750, 752 (2d Cir. 2016). "Proper exhaustion" requires a plaintiff to procedurally exhaust his claims by "compl[ying] with the system's critical procedural rules." *Woodford*, 548 U.S. at 95; *accord, Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007).[6]

In New York, the DOCCS has instituted a grievance procedure, designated as the Inmate Grievance Program ("IGP"), for use by prison inmates to lodge complaints regarding the conditions of their confinement. *Williams*, 829 F.3d at 119. The IGP is comprised of three steps that inmates must satisfy when they have a grievance regarding prison conditions. 7 N.Y.C.R.R. §§ 701.1 701.5; *Williams*, 829 F.3d at 119. The IGP requires that an inmate first file a grievance with "the clerk" within

---

[6]    While placing prison officials on notice of a grievance through less formal channels may constitute claim exhaustion "'in a substantive sense,'" an inmate plaintiff nonetheless must meet the procedural requirement of exhausting his available administrative remedies within the appropriate grievance construct in order to satisfy the PLRA. *Macias*, 495 F.3d at 43 (quoting *Johnson v. Testman*, 380 F.3d 691, 697-98 (2d Cir. 2004) (emphasis omitted)).

twenty-one days of the alleged occurrence giving rise to his complaint. 7 N.Y.C.R.R. § 701.5(a)(1). "The complaint may only be filed at the facility where the inmate is housed even if it pertains to another facility." *Id.* Representatives of the inmate grievance resolution committee ("IGRC")[7] have up to sixteen days after the grievance is filed to informally resolve the issue. 7 N.Y.C.R.R. § 701.5(b)(1). If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen days after receipt of the grievance. 7 N.Y.C.R.R. § 701.5(b)(2).

A grievant may then appeal the IGRC's decision to the facility's superintendent within seven days after receipt of the IGRC's written decision. 7 N.Y.C.R.R. § 701.5(c). The superintendent must issue a written decision within a certain number of days after receipt of the grievant's appeal.[8] 7 N.Y.C.R.R. § 701.5(c)(3)(i), (ii).

The third and final step of the IGP involves an appeal to the DOCCS Central Office Review Committee ("CORC"), which must be taken within seven days after an inmate receives the superintendent's written decision. 7 N.Y.C.R.R. § 701.5(d)(1)(i). The CORC is required to render a written

---

[7]    The IGRC is comprised of "two voting inmates, two voting staff members, and a non- voting chairperson." 7 N.Y.C.R.R. § 701.4(a).

[8]    Depending on the type of matter complained of by the inmate, the superintendent has either seven or twenty days after receipt of the appeal to issue a decision. 7 N.Y.C.R.R. § 701.5(c)(3)(i), (ii).

decision within thirty days of receipt of the appeal. 7 N.Y.C.R.R. § 701.5(d)(2)(i), (ii).

Where an inmate's grievance complains of employee harassment, the grievance is forwarded directly to the superintendent, bypassing the IGRC review. 7 N.Y.C.R.R. § 701.8(b), (c). The superintendent then has twenty-five days from the date of its receipt to render a decision. 7 N.Y.C.R.R. § 701.8(g). An inmate may appeal the superintendent's decision to the CORC within seven days of its receipt. 7 N.Y.C.R.R. § 701.8(h).

As can be seen, at each step of the IGP, a decision must be rendered within a specified time period. 7 N.Y.C.R.R. § 701.5. Where the IGRC and/or superintendent do not timely respond, an inmate is permitted to appeal "to the next step." 7 N.Y.C.R.R. § 701.6(g)(2). Generally, if a plaintiff fails to follow each of the required three steps of the above-described IGP prior to commencing litigation, he has failed to exhaust his administrative remedies as required under the PLRA. *See Ruggerio v. Cnty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." (internal quotation marks omitted)).

16

While the PLRA mandates exhaustion of available administrative remedies, it also "contains its own, textual exception to mandatory exhaustion." *Ross*, 136 S. Ct. at 1858. More specifically, section 1997e(a) provides that only those administrative remedies that "are available" must first be exhausted. 42 U.S.C. § 1997e(a); *see also Ross*, 136 S. Ct. at 1858 ("[T]he exhaustion requirement hinges on the availability of administrative remedies." (quotation marks omitted)). In the PLRA context, the Supreme Court has determined that "availability" means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Ross*, 136 S. Ct. at 1859 (quotation marks omitted).

In *Ross*, the Supreme Court identified three circumstances in which a court could find that internal administrative remedies are not available to prisoners under the PLRA.[9] *Ross*, 136 S. Ct. at 1859-60. Under the first, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. In addition, "an administrative scheme

---

[9]    According to the Second Circuit, "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" *Williams*, 829 F.3d at 123 n.2.

might be so opaque that it becomes, practically speaking, incapable of use." *Id*. The Court explained that, "[i]n this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* The third scenario in which administrative remedies are deemed unavailable to prisoners is when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

Because failure to exhaust is an affirmative defense to a prisoner's civil rights claim, an inmate plaintiff is under no obligation to plead facts demonstrating that he has complied with the PLRA's exhaustion requirement. *Jones v. Bock*, 549 U.S. 199, 211-17 (2007). If, however, such an inmate-plaintiff pleads sufficient facts revealing his failure to exhaust available administrative remedies before commencing suit, his complaint may be dismissed for failure to state a cognizable claim. *Jones*, 549 U.S. at 215-16; *see e.g.*, *Weidman v. Wilcox*, No. 12-CV-6524, 2014 WL 1056416, at *3 (W.D.N.Y. Mar. 17, 2014) (dismissing the plaintiff's complaint because it clearly alleged that the plaintiff failed to avail himself of the prison grievance procedure).[10]

---

[10]     Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

2.    Analysis

The record reflects that while confined at Greene, plaintiff filed the following grievances relating to the claims raised in this action:

| Grievances Filed | | |
|---|---|---|
| Grievance No. | Date Filed | Subject |
| GNE-9664-17 | December 12, 2017 | Excessive force on December 9, 2017 |
| GNE-9766-18 | February 22, 2018 | February 16, 2018 search of plaintiff's legal notepad |
| GNE-9848-18 | April 9, 2018 | April 5, 2018 pat frisk and April 6, 2018 search |
| GNE-9922-18 | June 4, 2018 | May 20, 2018 search of plaintiff and his legal papers |

Ordinarily, under the prison mailbox rule, a complaint is deemed to have been filed on the date that is conveyed to prison officials. *Houston v. Lack*, 487 U.S. 266, 276 (1988); *see also Taylor v. Racette*, 709 F. App'x 105, 106 n.1 (2018). Although plaintiff's complaint was signed on February 20, 2018, there is no evidence from which the court can ascertain whether, and on what date, plaintiff provided his pleading to prison officials for mailing. *See generally* Dkt. No. 1. It appears, although this is not entirely clear, that plaintiff instead sent his complaint to a family member, who then mailed the complaint to the court on March 14, 2018. Dkt. No. 1-10 at 1. The court ultimately received and filed the complaint on March 19, 2018.

19

Dkt. No. 1. Based on these circumstances, I decline to conclude that the complaint was "filed" by plaintiff on February 20, 2018, and find instead that the complaint was filed on March 19, 2018.[11]

Turning to plaintiff's first grievance, GNE-9664-17, there is no dispute of material fact that the superintendent of Greene issued a determination on January 8, 2018, and plaintiff thereafter signed an appeal statement on January 9, 2018. Dkt. Nos. 50-2 at 2, 55-3 at 1. The CORC did not acknowledge receipt of plaintiff's appeal, however, until March 12, 2018. *Id*. Accordingly, plaintiff's complaint was mailed to the court a mere two days after the CORC processed and acknowledged plaintiff's grievance appeal, and was filed only seven days after that point.

Because less than thirty days elapsed between the CORC's receipt of plaintiff's appeal—the time period allotted by the regulatory scheme for the CORC to act—and commencement of this action, *see* 7 N.Y.C.R.R. § 701.5(d)(2)(i), (ii), I conclude that plaintiff failed to fully exhaust his administrative remedies regarding plaintiff's claim stemming from the December 9, 2017 incident. *See, e.g.*, *Burgos v. Craig*, 307 F. App'x 469,

---

[11]     As will be seen, whether the court considers the date plaintiff signed the complaint (February 20, 2018) or the date the complaint was filed (March 19, 2018) as the date of "commencement," this distinction is without consequence. Considering either date, it is unlikely if not impossible, given the timeline of plaintiff's grievances, that he would have completed the entire appeals process prior to commencing the present action.

471 (2d Cir. 2008) (observing that subsequent exhaustion "is not enough to save his suit, because [the inmate] is required to have properly exhausted before he sues."); *Rodriguez v. Rosner*, No. 12-CV-958, 2012 WL 7160117, *8 (Dec. 5, 2012) (Baxter, M.J.), *report and recommendation adopted by* 2013 WL 614360 (N.D.N.Y. Feb. 19, 2013) (McAvoy, J.). From the face of plaintiff's complaint and the undisputed facts before the court, it is clear that plaintiff's grievance number GNE-9664-17 was pending, and therefore unexhausted, at the time of commencement of this action. *See, e.g.*, *Shepherd v. Lempke*, No. 10-CV-1524, 2017 WL 1187859, at *3 (N.D.N.Y. Mar. 30, 2017) (McAvoy, J.) (collecting cases).

Likewise, plaintiff failed to fully exhaust his administrative remedies with regard to his other three remaining grievances, GNE-9677-18, GNE9848-18, and GNE-9922-18. It is undisputed that with respect to GNE-9677-18, plaintiff signed his appeal to the CORC on March 21, 2018, after this action was commenced. Plaintiff did not even initiate the grievance process with respect to GNE9848-18 and GNE-9922-18 until after commencement. This chronology is fatal to plaintiff's claims. *See, e.g.*, *Scott v. Miller*, 17-CV-520, 2018 WL 4635710, at *5 (N.D.N.Y. June 25, 2018) (Baxter, M.J.) ("The entire appeals process must be completed prior to filing.") (citing *Casey v. Brockley*, No. 13-CV-1271, 2015 WL 8008728, at

*5 (N.D.N.Y. Nov. 9, 2015) (Dancks, M.J.)).

In opposition to defendant's motion, plaintiff argues that his submission of an amended complaint, which was filed with the court on July 16, 2018, cures this defect. Dkt. No. 9.  Plaintiff's argument is unavailing. Where a plaintiff files an amended complaint, the operative date for an exhaustion analysis is the date of plaintiff's original complaint. *See, e.g.*, *Guillory v. Haywood*, No. 13-CV-01564, 2015 WL 268933, at *11 (N.D.N.Y. Jan. 21, 2015) (D'Agostino, J.) ("[A] post-exhaustion amendment of the complaint cannot cure an exhaustion defect existing at the time the action was commenced."); *see also Shepherd v. Lempke*, No. 10-CV-1524, 2017 WL 1187859, at *3 (N.D.N.Y. Mar. 30, 2017) (discussing post-commencement exhaustion). In other words, because the entire appeals process must be completed prior to filing, plaintiff must have exhausted his available administrative remedies prior to commencing this suit on March 19, 2018. Notably, the conduct complained of in grievance numbers GNE-9848-18 and GNE-9922-18 had not even occurred yet at the time plaintiff commenced this action. *See* Dkt. No. 50-3 at 16-17, 21-22.

The only remaining question to be resolved is whether the IGP was unavailable to plaintiff such that he may be excused from his failure to fully

exhaust the administrative remedies.[12] *Williams*, 829 F.3d at 123 (quoting

*Ross*, 136 S. Ct. at 1858). Plaintiff invites the court to deem his

administrative remedies unavailable—a finding that would excuse his

failure to fully exhaust the administrative remedies—by virtue of the failure

of defendant Mauro, Greene's IGP supervisor, to forward his appeals to the

CORC in a timely manner[13] and subsequent failure by the CORC to issue a

final determination with regard to each of his four grievances. *See generally*

Dkt. Nos. 55-1, 59. However, considering the timing of plaintiff's

grievances, three of which were filed subsequent to plaintiff initiating this

lawsuit, a finding of "unavailability" is inconsequential.

Moreover, there is simply no evidence before the court that would

---

[12]    I note that for each of plaintiff's four grievances at issue, the CORC has yet to issue a decision on plaintiff's appeals. While defendants do not argue that plaintiff has failed to exhaust his administrative remedies on this basis, I am not convinced that such a position would pass muster in the aftermath of *Williams*. *See also* 7 N.Y.C.R.R. § 701.5(d)(2)(i), (ii).

[13]    To the extent plaintiff claims that grievance number GNE-9664-17 would have been exhausted in a timely manner but for Mauro's failure to forward plaintiff's appeal to the CORC within seven days, *see* Dkt. No. 55-1 at 6, I disagree. There is no evidence in this case that plaintiff ever wrote to defendant Mauro or the CORC regarding the timeliness of the CORC's response. *See* 7 N.Y.C.R.R. § 701.5(d)(3)(i) ("If a grievant does not receive a copy of the written notice of receipt within 45 days of filing an appeal, the grievant should contact the IGP supervisor in writing to confirm that the appeal was filed and transmitted to CORC."); *see also Fox v. Lee*, No. 9:15-CV-0390, 2018 WL 8576600, at *21 (N.D.N.Y. Dec. 18, 2018) (Hummel, M.J.). Moreover, even assuming—as plaintiff argues—that the appeal should have been sent to the CORC within one week, or by January 17, 2018, I have found no case deeming the IGP unavailable under *Ross* because the CORC did not issue a decision within 61 days, the time from January 17, 2018 until the filing of plaintiff's complaint.

suggest that the IGP operated a "simple dead end," was "incapable of use," or that plaintiff's efforts were thwarted by "machination, misrepresentation, or intimidation." *Williams*, 829 F.3d at 123 (quoting *Ross*, 136 S. Ct. at 1858). To the contrary, the IGP remained fully available to plaintiff and he was able to successfully and timely navigate each step. After plaintiff received a denial from the superintendent for each of his four grievances, he appealed to the CORC.

In sum, even when all inferences are drawn in plaintiff's favor, based upon the uncontested facts presently before the court, I am unable to conclude that plaintiff's failure to exhaust his administrative remedies should be excused due to unavailability. Accordingly, I agree with defendants that plaintiff prematurely filed this action, and consequently recommend that his federal civil rights claims be dismissed.

IV.    SUMMARY AND RECOMMENDATION

Plaintiff was under no obligation to plead facts demonstrating that he complied with the PLRA's exhaustion requirement prior to filing this action. Nonetheless, given the chronology of events, the face of plaintiff's complaint reveals that he failed to exhaust his administrative remedies prior to commencement and there is no reason that he should be excused from this requirement. Accordingly, it is hereby respectfully

RECOMMENDED that defendants' motion for summary judgment dismissing plaintiff's claims based on the failure to exhaust the available administrative remedies (Dkt. No. 50) be GRANTED, and that plaintiff's federal civil rights claims be DISMISSED WITHOUT PREJUDICE.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report.[14] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court is respectfully directed to modify the court's records to change defendants' names, as reflected in footnote one, above; and it is further respectfully

ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

---

[14]    If you are proceeding *pro se* and are served with this order, report and recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order, report and recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

Dated:     June 27, 2019
           Syracuse, New York

                                        David E. Peebles
                                        U.S. Magistrate Judge

Casey v. Brockley, Not Reported in Fed. Supp. (2015)

2015 WL 8008728

2015 WL 8008728
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Eric CASEY, Plaintiff,

v.

M. BROCKLEY, Correctional Officer, Great
Meadow Correctional Facility; H. Colvin,
Correctional Officer, Great Meadow Correctional
Facility; A. Mayo, Correctional Officer, Great
Meadow Correctional Facility; C. Goodrich,
Correctional Officer, Great Meadow Correctional
Facility; Wanninger, Correctional Officer, Great
Meadow Correctional Facility; H. Clapper,
Registered Nurse, Great Meadow Correctional
Facility; T. Hermance, Registered Nurse,
Great Meadow Correctional Facility; Boyce,
Registered Nurse, Great Meadow Correctional
Facility; and S. Racette, Superintendent, Great
Meadow Correctional Facility, Defendants.

9:13-CV-01271 (DNH/TWD)
|
Signed 11/09/2015

**Attorneys and Law Firms**

Eric Casey, 1881 Pitkin Avenue, Apt. 1C, Brooklyn, NY
11212, pro se.

Hon. Eric T. Schneiderman, Attorney General for the
State of New York, The Capitol, Ryan E. Manley, Esq.,
of Counsel, Albany, NY 12224, for Defendants.

*ORDER AND REPORT-RECOMMENDATION*

THÉRÈSE WILEY DANCKS, United States Magistrate
Judge

## I. INTRODUCTION

**\*1** This pro se prisoner civil rights action, commenced
pursuant to 42 U.S.C. § 1983, has been referred to
me for Report and Recommendation on the issue of
exhaustion of administrative remedies by the Honorable
David N. Hurd, United States District Judge, pursuant to
28 U.S.C. § 636(b) and Local Rule 72.3(c). (Dkt. No. 49.)
Plaintiff Eric Casey asserts the following claims: (1) Eighth

Amendment claim resulting from excessive force used
against him in violation of his right to be free from cruel
and unusual punishment; and (2) Eighth Amendment
violation resulting from the failure to provide adequate
medical care. (Dkt. No. 1 at 10–13.[1])

Currently pending before the Court is Defendants' motion
to dismiss for failure to exhaust administrative remedies,
pursuant to Federal Rule of Civil Procedure 12(b)(6).
(Dkt. No. 37.) For the reasons that follow, the Court
recommends that Defendants' motion to dismiss be
granted without prejudice as to all defendants.

## II. BACKGROUND

At the time this action was commenced Plaintiff was
a prison inmate in Department of Corrections and
Community Supervision ("DOCCS") custody being held
at Great Meadow Correctional Facility ("GMCF"). (Dkt.
No. 1 at 5.) On May 22, 2013, at approximately 5:00 p.m.,
Plaintiff claims that he was returning to his cell and was
"hit from behind in the back of [his] head with a hard
object" as he entered the stairwell area. (Dkt. No. 1 at 7.)
Plaintiff claims that he "fell to the floor and was brutally
beaten" by Defendant correctional officers M. Brockley
("Brockley"), H. Colvin ("Colvin"), A. Mayo ("Mayo"),
C. Goodrich ("Goodrich"), and Wanninger. (Dkt. No.
1 at 7.) Plaintiff claims that he was "kicked, stomped,
sexually humiliated, and beat[en] with sticks all over [his]
body...." (Dkt. No. 1 at 7.) Plaintiff claims that he was
referred to as " 'Rodney King' and other racial and sexual
slurs" while the beating took place. (Dkt. No. 1 at 7.)
Specifically, Plaintiff makes the following claims: Colvin
and Goodrich held Plaintiff's legs open so Brockley could
kick him the groin; Wanninger struck Plaintiff multiple
times with her baton; and Mayo beat Plaintiff's knees,
shins, and ribs with a cudgel. (Dkt. No. 1 at 8.) Plaintiff
claims that the beating lasted approximately five minutes.
(Dkt. No. 1 at 8.)

Plaintiff was taken to a facility hospital and was
treated by Defendant Registered Nurses Boyce ("Boyce")
and Clapper ("Clapper"). (Dkt. No. 1 at 8.) Clapper
prepared an injury report that indicated Plaintiff had
only "superficial abrasions." (Dkt. No. 1 at 30.) Plaintiff
claims that Clapper and Boyce "intentionally downplayed
the severity of [his] injuries while disregarding the more
serious ones ..." since they were not mentioned in the
injury report. (Dkt. No. 1 at 8.) Plaintiff claims that

Casey v. Brockley, Not Reported in Fed. Supp. (2015)

Case 9:18-cv-00339-GTS-ML    Document 60    Filed 06/27/19    Page 28 of 103

2015 WL 8008728

Clapper only "questioned [him] from afar" and that Boyce only "electronically check[ed][his] vital signs." (Dkt. No. 1 at 9.) Plaintiff claims that Defendant Registered Nurse Hermance "utilized her time falsifying business records ..." to indicate that Colvin, Mayo, and Brockley suffered injuries rather than providing medical care. (Dkt. No. 1 at 8.) Photographs of Plaintiff were taken prior to leaving the hospital. (Dkt. No. 1 at 33–39.)

**\*2** Plaintiff claims that, in addition to what was indicated on the injury report, he suffered the following injuries: (1) swelling above his left eye; (2) three linear-shaped abrasions above left eye swelling; (3) bruise on the left side of his face; (4) swelling to the left side of his face; (5) swelling above his right eye; (6) swelling to his upper right forehead; (7) swelling near the center of his back; (8) linear-shaped laceration on his left shin; (9) left shin bone injury; (10) right knee injury; (11) left pinky bone injury; and (12) left rib injury. (Dkt. No. 1 at 10.)

On June 3, 2013, Plaintiff filed Inmate Grievance Complaint GM–55615–13, alleging "cruel and unusual punishment, excessive force, and inadequate medical care." (Dkt. No. 1 at 18–19.) After receiving no response from then GMCF superintendent Defendant S. Racette ("Racette"), within the allotted twenty-five day time period, Plaintiff appealed to the Central Office Review Committee ("CORC"). (Dkt. No. 1 at 4.) On July 22, 2013, S. Pelo ("Pelo"), the grievance supervisor, asked Plaintiff for an extension to the investigation period "to allow for a proper investigation." (Dkt. No. 1 at 22.) Pelo also informed Plaintiff that "CORC will still have to wait for the investigation [to be completed] before they can render a decision." (Dkt. No. 1 at 22.) Plaintiff denied Pelo's extension request citing his "statutory right to appeal." (Dkt. No. 1 at 4.) On August 7, 2013, Pelo confirmed that the appeal had been submitted to CORC and notified Plaintiff that a decision was forthcoming. (Dkt. No. 1 at 23.) On October 15, 2013, after not receiving a response from CORC within the allotted thirty day time period, Plaintiff commenced this action.[2] (Dkt. No. 1 at 4.)

## III. APPLICABLE LEGAL STANDARDS

### A. Rule 12(b)(6) motion

A defendant may move to dismiss a complaint "for failure to state a claim upon which relief can be granted" under Rule 12(b)(6). The motion tests the formal legal sufficiency of the complaint by determining whether it conforms to Federal Rule of Civil Procedure 8(a)(2), which requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." Bush v. Masiello, 55 F.R.D. 72, 74 (S.D.N.Y.1972). Satisfaction of the requirement that a plaintiff "show" that he or she is entitled to relief requires that the complaint "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." Iqbal, 556 U.S. at 679 (internal citation and punctuation omitted).

A complaint may be dismissed, pursuant to Rule 12(b)(6), only where it appears that there are not "enough facts to state a claim that is plausible on its face." Twombley, 550 U.S. at 570. While Rule 8(a)(2) "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-harmed-me-accusation." Iqbal, 556 U.S. at 678 (citation and internal quotation marks omitted). A complaint which 'tenders 'naked assertion[s]' devoid of 'further factual enhancement' " does not suffice. Id. (citation omitted).

**\*3** "In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir.1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

Where a party is proceeding pro se, the court is obliged to "read [the pro se party's] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." See Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir.1994) (citations omitted); see also Harris v. Mills, 572 F.3d 66, 72 (2d Cir.2009) (courts remain obligated to construe pro se complaints liberally even after Twombly).

**Casey v. Brockley, Not Reported in Fed. Supp. (2015)**

2015 WL 8008728

Case 9:18-cv-00339-GTS-ML    Document 60    Filed 06/27/19    Page 29 of 103

Where a pro se complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir.2000) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Id.* (citation omitted).

### B. The Prison Litigation Reform Act of 1996
As succinctly outlined by my colleague, Magistrate Judge David E. Peebles:

> The Prison Litigation Reform Act of 1996 ("PLRA"), Pub.L. No. 104–134, 110 Stat. 1321 (1996), which imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, expressly requires that no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. The PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. An inmate plaintiff's complaint is subject to dismissal if the evidence establishes that he or she failed to properly exhaust available remedies prior to commencing the action.... Proper exhaustion requires a plaintiff to procedurally exhaust his or her claims by complying with the system's critical procedural rules. Complete exhaustion has not occurred, for purposes of the PLRA,

> until all of the steps of that available process have been taken.

*Bailey v. Fortier*, 09–CV–0742 (GLS/DEP), 2012 WL 6935254, at *4, 2012 U.S. Dist. LEXIS 185178, at *11–13 (N.D.N.Y. Oct. 4, 2012) (citations and punctuation omitted).[3] "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). In order to properly exhaust administrative remedies under the PLRA, inmates are required to complete the administrative review process in accordance with the rules applicable to the particular institution in which they are confined. *Jones v. Bock*, 549 U.S. 199, 218 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). If a prisoner has failed to properly follow each of the applicable steps prior to commencing litigation, he has failed to exhaust his administrative remedies.[4] *Woodford*, 548 U.S. at 93.

### C. Inmate Grievance Program
**\*4** Exhaustion for a prison inmate in DOCCS custody is normally achieved through the Inmate Grievance Program ("IGP"). 7 N.Y. COMP. CODES. R. & REGS. tit. 7, § 701.1 (2012). The IGP involves a three-step process. *Id.* at § 701.5. First, the prison inmate must submit a grievance to the clerk within twenty-one days of the alleged action. *Id.* at § 701.5(a)(1). The Inmate Grievance Program Committee ("IGPC") must hold a hearing within sixteen days and issue a written decision within two days of the hearing. *Id.* at §§ 701.5(b)(2)(i), (ii). Second, the prison inmate may appeal the IGPC's decision, within seven days of receipt, to the facility superintendent. *Id.* at § 701.5(c)(1). Third and finally, the prison inmate may appeal the facility superintendent's decision to CORC, within seven days of receipt. *Id.* at §§ 701.5(d)(i), (ii). CORC has thirty days to review the appeal and issue a decision. *Id.* at § 701.5(d)(2)(ii).

### D. *Hemphill v. State of New York*
Because failure to exhaust is an affirmative defense, defendants bear the burden of showing by a preponderance of the evidence that a plaintiff has failed to exhaust his available administrative remedies. *See Murray v. Palmer*, No. 9:03–CV–1010 (GTS/GHL), 2010 WL

Casey v. Brockley, Not Reported in Fed. Supp. (2015)

2015 WL 8008728

Case 9:18-cv-00339-GTS-ML    Document 60    Filed 06/27/19    Page 30 of 103

1235591, at *4, 2010 U.S. Dist. LEXIS 32014, at *16 (N.D.N.Y. Mar. 31, 2010); *Bailey*, 2012 WL 6935254, at *6 (the party asserting failure to exhaust bears the burden of proving its elements by a preponderance of the evidence); *see also Andrews v. Whitman*, No. 06–2447– LAB (NLS), 2009 WL 857604, at *6, 2009 U.S. Dist. LEXIS 30017, at *16 (S.D.Cal. Mar. 27, 2009) (defendant must prove non-exhaustion of administrative remedies by a preponderance of the evidence).

If a defendant meets that burden, however, a plaintiff's failure to exhaust does not end the review. "[O]nce a defendant has adduced reliable evidence that administrative remedies were available to Plaintiff and that Plaintiff nevertheless failed to exhaust those administrative remedies, Plaintiff must then 'counter' Defendants' assertion by showing exhaustion unavailability, estoppel, or 'special circumstances' [under *Hemphill v. State of New York*, 380 F.3d 680, 686 (2d Cir.2004) ]." *Murray*, 2010 WL 1235591, at *4. *Hemphill* sets forth a three-part inquiry for district courts. First, courts must determine if administrative remedies were in fact available to plaintiff. In *Hemphill*, the Second Circuit stated that "[t]he test for deciding whether the ordinary grievance procedures were available must be an objective one: that is, would 'a similarly situated individual of ordinary firmness' have deemed them available." *Hemphill*, 380 F.3d at 688. Courts have found administrative grievance procedures unavailable where an inmate was prevented from filing a grievance. *See, e.g.*, *Sandlin v. Poole*, 575 F.Supp.2d 484, 488 (W.D.N.Y.2008) (The facility's "failure to provide grievance deposit boxes, denial of forms and writing materials, and a refusal to accept or forward plaintiff's appeals ... effectively rendered the grievance appeal process unavailable to him.").

Second, courts must determine if the defendants are estopped from presenting non-exhaustion as an affirmative defense because they prevented the plaintiff inmate from exhausting his administrative remedies by " 'beating him, threatening him, denying him grievance forms and writing implements, and transferring him to another correctional facility.' " *Hemphill*, 380 F.3d at 688 (citing *Ziemba v. Wezner*, 366 F.3d 161, 162 (2d Cir.2004)). Generally, defendants cannot be estopped from asserting a non-exhaustion affirmative defense based upon the actions or inaction of other individuals. *Murray*, 2010 WL 1235591, at *5 & n.26 (collecting cases); *McCloud v. Tureglio*, No. 07–CV–0650, 2008 WL 1772305, at *12,

2008 U.S. Dist. LEXIS 124388, at *44 (N.D.N.Y. Apr. 15, 2008) (Lowe, M.J.) ("None of those documents allege facts plausibly suggesting that Defendant's own actions inhibited Plaintiff's exhaustion of remedies during the time in question.").

**\*5** Third, the Second Circuit explained in *Hemphill* that there are certain "special circumstances" in which even though administrative remedies may have been available and the defendants may not be estopped from asserting a non-exhaustion defense, the inmate's failure to exhaust may be justified. [5] *Hemphill*, 380 F.3d at 686. "Special circumstances" have been found to include an incorrect but reasonable interpretation of the applicable grievance process or failing to file a grievance in the precise manner prescribed by the process as a result of threats. *See, e.g.*, *Giano v. Goord*, 380 F.3d 670, 675–76 (2d Cir.2004) (failure to exhaust was justified where plaintiff inmate's interpretation of regulations was reasonable and prison official threatened inmate).

## IV. ANALYSIS

### A. Plaintiff Failed to Properly Exhaust Administrative Remedies

If a prison inmate fails to follow each of the applicable steps prior to commencing litigation, he has failed to properly exhaust his administrative remedies. *Woodford*, 548 U.S. at 90 (the PLRA requires "proper exhaustion"—"using all steps that the agency holds out, and doing so properly so that the agency addressed the issues on the merits"). Receiving a decision from CORC *after* commencing litigation does not satisfy PLRA's requirement that administrative remedies be exhausted *before* filing suit, and any claim not exhausted prior to commencement of the suit must be dismissed without prejudice. *Neal v. Goord*, 267 F.3d 116, 122–23 (2d Cir.2001), *overruled on other grounds*, *Porter v. Nussle*, 534 U.S. 516 (2002). Because Plaintiff commenced this action before CORC issued a decision on his appeal, the Court finds that he failed to exhaust his administrative remedies.

### B. *Hemphill* Analysis

As noted above, an exhaustion review does not end when, as in this case, defendants are found to have met the burden of establishing a plaintiff's failure to exhaust because the Court must still undertake an analysis of the *Hemphill* factors. *See Hemphill*, 380 F.3d at 686

Casey v. Brockley, Not Reported in Fed. Supp. (2015)

2015 WL 8008728

Case 9:18-cv-00339-GTS-ML    Document 60    Filed 06/27/19    Page 31 of 103

Here, there is no dispute that at all relevant times, DOCCS had the IGP available for Plaintiff and other prison inmates. *See* 7 N.Y. COMP. CODES. R. & REGS. tit. 7, § 701.1 (2012); *Taylor v. Chalom*, No. 9:10–CV–1494 (NAM/DEP), 2011 WL 6942891, at *4, 2011 U.S. Dist. LEXIS 150512, at *12 (N.D.N.Y. Dec. 13, 2011) (The IGP is "recognized as an 'available' remedy for purposes of the PLRA."). Plaintiff undoubtedly had administrative remedies available to him since, on June 3, 2013, he filed Inmate Grievance Complaint GM–55615–13 alleging "cruel and unusual punishment, excessive force, and inadequate medical care." (Dkt. No. 1 at 18–19.) Plaintiff does not allege that his failure to properly exhaust available administrative remedies was due to administrative remedies being unavailable to him. (Dkt. No. 39.) Plaintiff also does not allege that the named Defendants prevented him from properly exhausting available administrative remedies and should thus be estopped from asserting the defense. (Dkt. No. 39.)

**\*6** Finally, there are no special circumstances that would justify Plaintiff's failure to properly exhaust available administrative remedies. (Dkt. No. 39.) Plaintiff argued that his administrative remedies were sufficiently exhausted because his CORC appeal was not decided in a timely manner. Justification "must be determined by looking at the circumstances which might understandably lead ... uncounseled prisoners to fail to grieve in the normally required way." *Giano*, 380 F.3d at 678. As noted above, generally, the "special circumstances" doctrine is applied where a prisoner has been threatened with physical retaliation for exhausting administrative remedies or where the prisoner reasonably misinterprets the statutory requirements of the appeals process. *Id.* at 676. CORC's failure to act within the time frame set out in the regulations does not constitute a special circumstance justifying the failure to exhaust. *See Ford v. Smith*, No. 9:12–CV–1109 (TJM/TWD), 2014 WL 652933, at *3, 2014 U.S. Dist. LEXIS 20581, at *8–9 (N.D.N.Y. Jan. 16, 2014) (citations omitted). *Rodriguez v. Rosner*, No. 9:12–CV–958, 2012 WL 7160117, 2012 U.S. Dist. LEXIS 186228 (N.D.N.Y. Dec. 5, 2012) (dismissing complaint for failure to exhaust where prisoner filed appeal with CORC on May 4, filed federal civil rights complaint on June 10, and received CORC response dated September 26).

**V. CONCLUSION**

The Second Circuit "has recognized that failure to exhaust administrative remedies is usually a 'curable procedural flaw' that can be fixed by exhausting those remedies and then reinstituting suit." *Neal*, 267 F.3d at 123 (citing *Snider v. Melindez*, 199 F3d 108, 11–12 (2d Cir.1999)). The Court finds dismissal without prejudice for failure to exhaust to be proper in this case.

The parties have not provided information to the Court regarding if and when CORC issued a decision on Plaintiff's appeal. If CORC issued a response to Plaintiff's grievance subsequent to the commencement of this action on October 15, 2013, the Court recommends that the complaint be dismissed without prejudice for failure to exhaust and that Plaintiff be granted leave to refile his complaint upon the filing of a Decision and Order by the District Court on this Court's Report and Recommendation. If CORC has not as yet issued a response, the Court recommends that the complaint be dismissed without prejudice, that CORC be directed to render a decision on Plaintiff's pending grievance appeal within thirty days of the filing of the District Court's Decision and Order on this Report–Recommendation, and that upon CORC's failure to do so, Plaintiff's administrative remedies be deemed unavailable to him and he be allowed to refile this suit indicating such.

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that Defendants' motion to dismiss Plaintiff's complaint (Dkt. No. 37) in this action be **GRANTED**, and that the complaint (Dkt. No. 1) be **DISMISSED WITHOUT PREJUDICE**, based upon Plaintiff's failure to fully exhaust his administrative remedies; and it is further

**RECOMMENDED** that: (1) in the event CORC has rendered a decision on Plaintiff's appeal on Inmate Grievance Complaint GM–55615–13, Plaintiff be granted leave to refile this suit upon the filing of a Decision and Order by the District court on this Court's Report–Recommendation; and (2) in the event CORC has not rendered a decision on Plaintiff's appeal, that CORC be directed to render a decision on Plaintiff's pending grievance within thirty days of the filing of the District Court's Decision and Order on this Report–Recommendation; and (3) if Plaintiff does not receive a decision from CORC within that time, administrative remedies may be deemed unavailable to him and he may

**Casey v. Brockley, Not Reported in Fed. Supp. (2015)**

Case 9:18-cv-00339-GTS-ML    Document 60    Filed 06/27/19    Page 32 of 103

2015 WL 8008728

therefore be excused from exhausting his administrative remedies and may refile this suit indicating such; and it is

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report–Recommendation, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir.2009) (*per curiam* ).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW*. *Roldan v. Racette*, 984 F.2d 85 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72.

**All Citations**

Not Reported in Fed. Supp., 2015 WL 8008728

**Footnotes**

1    Page numbers in citations to the amended complaint refer to the page numbers assigned by the Court's electronic filing system rather than to page numbers in the original document.

2    The Court is unaware whether CORC has issued a response to Plaintiff's grievance.

3    The Court will provide Plaintiff with copies of all unpublished decisions cited in this Order in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir.2009) (*per curiam* ).

4    "[A]n inmate would be well advised to take advantage of internal prison procedures for resolving inmate grievances. When those procedures produce results, they will typically do so faster than judicial processes can. And even when they do not ..., the inmate's task in court will obviously be much easier." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

5    Subsequent to *Hemphill*, the Supreme Court decided *Woodford v. Ngo*, 548 U.S. 81 (2006). The question addressed in *Woodford* was whether "a prisoner can satisfy the [PLRA's] exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Id.* at 83–84. The Supreme Court resolved the question in the negative, explaining that the PLRA requires "proper exhaustion" – "using all steps that the agency holds out, and doing so properly (so that the agency addressed the issues on the merits)." *Id.* at 90 (citation omitted). Although the Second Circuit has acknowledged that there is some question as to whether the estoppel and special circumstances inquiries in *Hemphill* survived *Woodford*, the Court has as yet found it unnecessary to decide the issue and appears to still be considering all three *Hemphill* inquiries in exhaustion cases. *See, e.g.,* *Amador v. Andrews*, 655 F.3d 89, 102–03 (2d Cir.2011) (finding it unnecessary to decide whether *Hemphill* is still good law because plaintiff had failed to establish that defendants were estopped from raising non-exhaustion as an affirmative defense).

End of Document                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 268933
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Patrick GUILLORY, Plaintiff,
v.
Nancy HAYWOOD; Maureen Boll; Timothy
Maher; Michael Graziano; J. Dobbs; Potter; Sgt.
Donovan; and Goppert, Captain, Defendants.

No. 9:13–cv–01564 (MAD/TWD).
|
Signed Jan. 21, 2015.

**Attorneys and Law Firms**

Patrick Guillory, Dannemora, NY, pro se.

Office of the New York, State Attorney General, Albany
Office, Laura A. Sprague, AAG, of Counsel, Albany, NY,
for Defendants.

Hon. Eric T. Schneiderman, Attorney General for the
State of New York, Kevin M. Hayden, Esq., of Counsel,
Albany NY, for Defendant.

**ORDER**

MAE A. D'AGOSTINO, District Judge.

*1 Plaintiff, an inmate in the custody of the New
York State Department of Corrections and Community
Supervision, commenced this action *pro se* under 42
U.S.C. § 1983. *See* Dkt. No. 24. Upon initial review,
Plaintiff's complaint was liberally construed to assert the
following causes of action: (1) denial of access to the courts
in violation of the First Amendment and in retaliation
for his litigation and complaints; (2) interference with
Plaintiff's outgoing legal mail in violation of the First
Amendment and in retaliation for his litigation and
complaints; (3) search of his cell and confiscation of his
property in retaliation for his litigation and complaints;
and (4) denial of equal protection in violation of the
Fourteenth Amendment. *See* Dkt. No. 11 at 6. The Court
dismissed Plaintiff's claims for money damages brought
against Defendants in their official capacities and also
dismissed Plaintiff's equal protection claim as conclusory.

*See id.* Thereafter, Plaintiff was granted leave to amend
his complaint to substitute Defendants Donovan and
Goppert for Defendants John Doe Number 1 and John
Doe Number 2. *See* Dkt. No. 23.

On April 30, 2014, Defendants filed a motion to dismiss.
*See* Dkt. No. 37. In a December 11, 2014 Order
and Report–Recommendation, Magistrate Judge Dancks
recommended that the Court grant in part and deny in
part Defendants' motion. *See* Dkt. No. 48. Specifically,
Magistrate Judge Dancks recommended that the Court
dismiss the following claims: (1) First Amendment denial
of access to courts, interference with legal mail, improper
opening of legal mail, and retaliation claims against
Defendants Maher, Dobbs, and Goppert for failure to
exhaust; (2) First Amendment denial of access to courts
claim against Defendants Potter and Graziano for failure
to state a claim; (3) First Amendment retaliation claim
against Defendant Potter arising out of the destruction
of the microwave oven in Plaintiff's housing unit; (4)
First Amendment claim for retaliation against Defendant
Graziano for failure to state a claim; (5) supervisory
liability claim against Defendant Graziano for failure
to state a claim; (6) supervisory liability claims against
Defendant Haywood for failure to state a claim; (7)
supervisory liability claims against Defendant Boll for
generally failing to remedy wrongs, creating and allowing
to continue customs and policies under which under which
constitutional practices occur, and failure to supervise
and monitor subordinates for failure to state a claim;
(8) supervisory liability claim against Defendant Boll in
connection with Plaintiff's denial of access to court claims
against Defendants Potter and Graziano relating to the
May 6, 2013, law library incident for failure to state a
claim; (9) supervisory liability claim against Defendant
Boll with regard to Plaintiff's denial of access to court,
interference with legal mail, and improper opening of
legal mail claims against Defendants Maher, Dobbs,
and Goppert in connection with the amended complaint
withheld from mailing to the court, for failure to state
a claim; and (10) retaliation claims against Defendants
Haywood and Boll for failure to state a claim. *See* Dkt.
No. 48 at 42–43. Further, the report recommended that
the Court deny Defendants' motion as to the following
claims: (1) Plaintiff's retaliation claim against Defendant
Potter arising out of the May 6, 2013, law library
incident; (2) Plaintiff's retaliation claim against Defendant
Donovan with regard to taking Plaintiff's legal papers
and kosher food; and (3) Plaintiff's supervisory liability

claim against Defendant Boll with regard to Plaintiff's retaliation claim against Defendant Potter regarding the May 6, 2013, law library incident. *See id.* Finally, Magistrate Judge Dancks recommended that the Court grant Plaintiff leave to amend with regard to all of the claims dismissed without prejudice for failure to exhaust his administrative remedies. *See id.* Neither party objected to the Order and Report–Recommendation. [1]

**\*2** When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a *"de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However, when a party files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir,* No. 9:08–CV–322, 2011 WL 933846, \*1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b) (1).

A litigant's failure to file objections to a magistrate judge's report and recommendation, even when that litigant is proceeding *pro se,* waives any challenge to the report on appeal. *See Cephas v. Nash,* 328 F.3d 98, 107 (2d Cir.2003) (holding that, "[a]s a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point" (citation omitted)). A *pro se* litigant must be given notice of this rule; notice is sufficient if it informs the litigant that the failure to timely object will result in the waiver of further judicial review and cites pertinent statutory and civil rules authority. *See Frank v. Johnson,* 968 F.2d 298, 299 (2d Cir.1992); *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989) (holding that a *pro se* party's failure to object to a report and recommendation does not waive his right to appellate review unless the report explicitly states that failure to object will preclude appellate review and specifically cites 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and former 6(e) of the Federal Rules of Civil Procedure). *See* Dkt. No. 42.

When considering a Rule 12(b)(6) motion, the court accepts the material facts alleged in the complaint as true, drawing all inferences in favor of the non-moving party. *See, e.g., Miller v. Wolpoff & Abramson, LLP,* 321 F.3d 292, 300 (2d Cir.2003) (citing *Patel v. Contemporary Classics of Beverley Hills,* 259 F.3d 123, 126 (2d Cir.2001)). The court is not bound, however, to accept as true legal conclusions with the appearance of factual statements. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The moving party has the heavy burden of showing that the plaintiff is not "entitled to offer evidence in support [his] claims." *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir.1995) (citations omitted). Thus, the court should only dismiss a 12(b) (6) motion where the plaintiff provides no "plausible" basis to support his claims. *See Twombly,* 550 U.S. at 556–57. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 556).

**\*3** When a party proceeds *pro se,* the court must liberally construe his pleadings, holding them to a standard less stringent than formal pleadings drafted by lawyers. *See Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). If a *pro se* plaintiff's complaint alleges civil rights violations, the court must construe his pleadings with "particular generosity." *Davis v. Goord,* 320 F.3d 346, 350 (2d Cir.2003) (quoting *Morales v. Mackalm,* 278 F.3d 126, 131 (2d Cir.2002)). Further, when a *pro se* plaintiff faces a motion to dismiss, the court may consider "materials outside the complaint to the extent they are consistent with the allegations in the complaint." *Donhauser v. Goord,* 314 F.Supp.2d 119, 121 (N.D.N.Y.2004).

Having reviewed the thorough and well-reasoned Order and Report–Recommendation and the parties submissions, the Court finds that Magistrate Judge Dancks correctly determined that the Court should grant in part and deny in part Defendants' motion to dismiss the amended complaint. Accordingly, the Court hereby

**ORDERS** that Magistrate Judge Dancks' Order and Report–Recommendation is **ADOPTED** in its entirety for the reasons set forth therein; and the Court further

**ORDERS** that Defendants' motion to dismiss (Dkt. No. 37) is **GRANTED in part and DENIED in part** as set forth herein; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

### ORDER AND REPORT–RECOMMENDATION

THÉRÈSE WILEY DANCKS, United States Magistrate Judge.

Plaintiff, Patrick Guillory, an inmate presently confined in Clinton Correctional Facility ("Clinton"), has commenced this *pro se* action civil rights action under 42 U.S.C. § 1983 against Defendants Nancy Haywood (Haywood), an attorney in the Department of Corrections and Community Supervision ("DOCCS"); Maureen Boll ("Boll"), DOCCS Deputy Commissioner and Counsel; Timothy Maher ("Maher"), Deputy Superintendent of Programs at Greene Correctional Facility ("Greene"); Michael Graziano ("Graziano"), Deputy Superintendent of Administration at Greene; J. Dobbs ("Dobbs"), a corrections counselor at Greene; Rowland Potter ("Potter"), incorrectly sued as "Roland Potter," a corrections officer at Greene; Sergeant Donovan ("Donovan"), a corrections sergeant at Greene; and Captain Goppert ("Goppert"), a corrections captain at Greene. (Dkt. No. 24.)

Defendants have moved pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Plaintiff's Amended Complaint (Dkt. No. 24) for failure to state a claim, failure to exhaust, and on the grounds that two of Plaintiff's retaliation claims are duplicative of a claim pending in a separate action. (Dkt.Nos.37, 37–5.) Plaintiff has opposed Defendants' motion (Dkt. No. 41), and Defendants have filed a reply (Dkt. No. 42.) For reasons explained below, the Court recommends that Defendants' motion be granted in part and denied in part.

## I. BACKGROUND [1]

### A. May 6, 2013, Library Call–Out
**\*4** On May 6, 2013, Plaintiff's name was on the law library call-out list for 1:00 p.m. (Dkt. No. 24 at ¶¶ 6– 7.) Plaintiff had signed up for copying and notary service so that he could comply with the mailbox rule with

regard to a May 7, 2013, court imposed deadline for filing a supplemental brief in an Article 78 proceeding entitled *Guillory v. Fischer,* Case No. 516282, that had been transferred to the New York State Supreme Court, Appellate Division Third Department ("Third Department"). [2] *Id.* at ¶¶ 6, 9, 21 and p. 39.

At approximately 12:05 pm on May 6th, Defendant Potter sent Plaintiff to the package room to pick up kosher food from his parents, and Plaintiff reported back to his housing unit at 12:35 pm. *Id.* at ¶ 8. At approximately 1:03 pm, the phone in Plaintiff's housing unit rang and Plaintiff heard Potter tell Kim Ann Johnson ("Johnson"), the law library officer, "Guillory is in the package room." *Id.* at ¶ 9. At the time, Plaintiff was standing twenty feet away from Potter and walked up to him and asked if the call was from the law library. *Id.* Potter denied Plaintiff's request for a pass to the law library despite his name being was on the library call-out list. *Id.* Potter denied the request even after Plaintiff showed him the filing deadline for the supplemental brief. *Id.*

Defendant Graziano arrived to conduct an inspection of the housing unit to ensure compliance with DOCCS regulations at around 1:20 pm. *Id.* at ¶ 10. When Graziano and Potter passed near Plaintiff's cube, Plaintiff told Graziano that he was on the law library call-out list; that Johnson had called for him to report to the library; that he had a court imposed deadline; and that Potter had refused to permit him to report to the library. *Id.* Potter stood behind Graziano shaking his fist at Plaintiff while Plaintiff spoke with Graziano. *Id.* at ¶ 11. When Graziano asked Potter if what Plaintiff had told him was true, Potter responded that Plaintiff could go to the law library the next day. *Id.* at ¶ 12. Graziano told Plaintiff he would look into the matter but according to Plaintiff "did nothing but brush [him] off." *Id.* at ¶¶ 12, 17.

Plaintiff claims he missed the court imposed deadline because he was not allowed to go to the law library on May 6, 2013. *Id.* at ¶ 17. He alleges in his Amended Complaint that Potter did not want him to the go to the law library because Plaintiff had a lawsuit pending against him. *Id.*

### B. Refusal to Send Out Plaintiff's Amended Complaint
Pursuant to an April 17, 2013, Order issued by the Hon. Randolph F. Treece, M.J., in *Guillory v. Weber,* No. 9:12– CV–00280 (LEK/RFT) (N.D.N.Y.) (*"Weber"* ), Plaintiff

was given a deadline of April 30, 2013, to file an amended complaint. (Dkt. No. 24 at ¶ 3 and p. 35.) Plaintiff gave his very large amended complaint to the law library officer on April 25, 2013, so that the officer could type a letter memorandum to the mail room indicating that the amended complaint had to be sent out forthwith. *Id.* at ¶ 4. The letter memorandum was taped to the top of the bulk legal mail and sent to the mail room by the law library officer. *Id.* at ¶ 4.

 **\*5** On May 7, 2013, Plaintiff's corrections counselor, Defendant Dobbs, called Plaintiff to his office regarding Defendant Maher's refusal to send out the amended complaint in *Weber* that was supposed to be mailed on April 25, 2013. *Id.* at ¶ 22. Plaintiff learned that the amended complaint had sat in the Greene administrative office from April 25, 2013, to May 7, 2013, despite the court imposed deadline, and that it had been opened and read by the security staff. *Id.* at ¶ 23. Maher gave the opened amended complaint to Dobbs to be returned to Plaintiff when they met on May 7, 2013. *Id.* at ¶¶ 23–24. The amended complaint was never received by the court. *Id.* at ¶ 33.

Plaintiff sent a letter to Maher on May 7, 2013, demanding to know why his legal mail had not been sent out. *Id.* at ¶ 24. Maher responded by letter memorandum of May 8, 2013, informing Plaintiff his legal mail had been under investigation by security staff. *Id.* at ¶ 25 and p. 41. According to Maher, the Business Office had received seven envelopes that were taped shut with "Legal" stamped on them and an authorized advance request form for $168.40 dated April 25, 2013, with Plaintiff's name and din number. *Id.* at p. 43. There was a second advance request for postage. *Id.* The format of the letter from the law library accompanying the envelopes and authorized advance request forms was different than those previously seen by Maher. *Id.* In addition, the letter was dated Sunday, April 25, 2013, although April 25th was a Thursday, the signature was not legible, and it did not match law library officer Johnson's signature. *Id.*

Maher consulted with Superintendent Brandon Smith who recommended a security investigation. *Id.* The envelopes were forwarded to Defendant Goppert for investigation, and Maher contacted Library Services Central Office and was referred to Counsels Office. *Id.* Goppert returned the envelopes the following day, and they were given to Dobbs to return to Plaintiff. *Id.*

Plaintiff filed a grievance against Maher, Dobbs, and the security staff regarding the opening and destruction of his legal mail. *Id.* at ¶ 41 and pp. 53–59.

### C. Retaliation by Donovan and Potter for Plaintiff's Parent's Complaint Call to Defendant Boll, and Plaintiff's Filing of Grievances Against Potter

The late afternoon of May 9, 2013, Plaintiff's parents called Defendant Boll to report that Plaintiff was being harassed by Potter and that the facility had sat on his legal mail for two weeks, knowing that he had a court imposed deadline. (Dkt. No. 24 at ¶ 28.) The next day, Plaintiff's cell was searched by Corrections Officer J. Manchester on the direct order of Defendant Donovan. *Id.* at ¶ 29. Donovan took half of Plaintiff's kosher food and half of his legal mail. [3] *Id.* Plaintiff later received a contraband slip that said "no contraband found no property damaged." *Id.* Donovan told Plaintiff if he received any complaints about the search and had to come back to Plaintiff's unit, "we will take a trip to the Special Housing Unit ("SHU")." *Id.* Plaintiff has alleged that Donovan took his legal mail and kosher food in retaliation for his parents contacting DOCCS and previous grievances filed against Potter. *Id.*

 **\*6** On May 18, 2013, Potter intentionally destroyed the microwave in Plaintiff's housing unit. *Id.* at ¶ 35. While looking directly at Plaintiff and another inmate whose family had contacted Defendants Boll and Haywood, Potter said: "This is what inmates get when they call DOCCS on me!! Make another phone call and I will destroy the T.V. and Hot–Pot!" *Id.* A few minutes later, Potter called his supervisor and told him that the microwave had slipped out of his hands while he was doing a search. *Id.* at ¶ 36. Shortly thereafter, when he let Plaintiff out to report to the law library, Potter allegedly said "I have not forgot about what you did, you will be out of this jail soon when my buddies set your ass up, you bitch!" *Id.* at ¶ 37.

### D. Boll and Haywood

According to Plaintiff, after his parents called the DOCCS Office of Counsel and spoke to Boll, (Dkt. No. 24 at ¶ 28), Boll "apparently ordered more retaliation which is the custom, policy and procedure of [Boll and Defendant Haywood], resulting in Donovan's theft of his legal papers and kosher food and Potter's destruction of the microwave

and threats to destroy the T.V. and hot-pot on May 18, 2013." *Id.* at ¶¶ 29, 35.

Plaintiff filed an Article 78 proceeding against Boll and Acting DOCCS Commissioner Anthony Annucci on or about May 18, 2013, in New York State Supreme Court, Greene County, regarding their refusal to address and investigate the withholding and confiscation and destruction of Plaintiff's legal mail and kosher food simply because his parents had contacted Boll. *Id.* at ¶ 38 and pp. 47–49. In his May 19, 2013, letter memorandum to Boll and Annucci regarding the Article 78 proceeding, Plaintiff accused Boll and Annucci of advising facilities to retaliate against inmates whose parents call DOCCS Office of Counsel to complain. *Id.* at p. 49.

In a July 2, 2013, letter from Boll to Plaintiff in response to his June 11, 2013, correspondence concerning his legal mail being destroyed, Boll informed Plaintiff that a letter written to Office of Counsel does not replace the formal or informal channels of problem resolution at Greene and recommended that Plaintiff use the grievance procedure set forth in DOCCS Directive 4040 for his complaints. *Id.* at pp. 68–69. Boll also informed Plaintiff that the Office of Counsel had investigated his complaints and found no evidence that his mail was being destroyed or that he had been denied access to the law library. Boll elaborated on the findings of the investigation. *Id.*

Plaintiff contends that DOCCS counsel Defendant Haywood conducted an investigation into the actions of Defendants Dobbs, Maher, and Goppert with regard to Plaintiff missing his court deadline. *Id.* at ¶ 42. According to Plaintiff, Haywood admitted to conducting an investigation regarding his letters to her office and responded in a May 22, 2013, letter memorandum asserting that she would not comment on his concerns. *Id.* at ¶ 56. It is unclear whether Haywood's investigation is the investigation referenced in Boll's July 2, 2013, letter.

**\*7** Plaintiff claims that Boll and Haywood are in the habit of using threats and retaliation to frighten inmates whose parents call the Office of Counsel to report prison staff misconduct. *Id.* at ¶ 67. Plaintiff likens Boll and Haywood to "high ranking gang-bangers who put out hits upon prisoners who piss them off," and claims "these reckless defendants have a 100 man 'hit squad' who can retaliated (sic) in a matter of hours." *Id.*

## II. PROCEDURAL HISTORY
Plaintiff commenced this lawsuit in the United States District Court, Western District of New York on June 6, 2013. (Dkt. No. 1.) The action was transferred to the Northern District of New York by order of the Hon. William M. Skretny, Chief District Court Judge in the Western District of New York, on December 13, 2013. (Dkt. No. 8 .)

Plaintiff's application to proceed *in forma pauperis* was granted on February 10, 2014, by the Hon. Mae A. D'Agostino, D.J. (Dkt. No. 11 at 2.) Upon initial review under 28 U.S.C. §§ 1915(e) and 1915A, Plaintiff's Complaint, liberally construed, was found to have asserted claims for: (1) denial of access to the courts in violation of his First Amendment rights and in retaliation for his litigation and complaints; (2) interference with Plaintiff's outgoing legal mail in violation of his First Amendment rights and in retaliation for his litigation and complaints; (3) search of his cell and confiscation of his property in retaliation for his litigation and complaints; and (4) denial of equal protection in violation of his Fourteenth Amendment rights. *Id.* at 6.

Plaintiff's claims for money damages against the Defendants in their official capacities were dismissed with prejudice on initial review by Judge D'Agostino. *Id.* at 8. Plaintiff's equal protection claim was dismissed without prejudice because the claim was entirely conclusory. *Id.* The remainder of Plaintiff's claims against Defendants in their individual capacities survived initial review and were found to require a response. *Id.* at 9.

Plaintiff thereafter moved for leave to file an amended complaint substituting Defendants Donovan and Goppert for Defendants John Doe Number 1 and John Doe Number 2. (Dkt. Nos. 17; 17–1 at 1.) Plaintiff's motion to amend was granted, and Donovan and Goppert were added as party defendants. (Dkt. No. 23 at 3.) Defendants thereafter filed the motion to dismiss now before the Court for review and recommendation. (Dkt. No. 37.)

## III. LEGAL STANDARD GOVERNING RULE 12(b)(6) MOTIONS TO DISMISS
A defendant may move to dismiss a complaint "for failure to state a claim upon which relief can be granted" under Rule 12(b) (6). The motion tests the formal legal

sufficiency of the complaint by determining whether it conforms to Federal Rule of Civil Procedure 8(a)(2), which requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bush v. Masiello,* 55 F.R.D. 72, 74 (S.D.N.Y.1972). Satisfaction of the requirement that a plaintiff "show" that he or she is entitled to relief requires that the complaint "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense .... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged but it has not shown that the pleader is entitled to relief." *Id.* at 679 (internal citation and punctuation omitted).

**\*8** A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim that is plausible on its face." *Id.* at 570. While Rule 8(a) (2) "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-harmed-me-accusation." *Iqbal,* 556 U.S. at 678 (citation and internal quotation marks omitted). A complaint which "tenders 'naked assertion[s]' devoid of 'further factual enhancement' " does not suffice. *Id.* (citation omitted)

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor ." *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678.

In considering a Rule 12(b)(6) motion, "the court considers the complaint, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *L–7 Designs, Inc. v. Old Navy, LLC,* 647 F.3d 419, 422 (2d Cir.2011) (citation and internal quotation

marks omitted); *see also Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991) (A court may consider "any written instrument attached [to the complaint] as an exhibit or documents incorporated in it by reference."). "The mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual allegations are consistent with the allegations of the Plaintiff's complaint." *Robles v. Bleau,* No. 07–CV–0464, 2008 WL 4693153, at *6 and n. 41, 2008 U.S. Dist. LEXIS 110029, at *26–27 and n. 41 (N.D.N.Y. Oct. 22, 2008)[4] (collecting cases); *Donhauser v. Goord,* 314 F.Supp.2d 119, 121 (N.D.N.Y.2004) (where a *pro se* is faced with a motion to dismiss, a court may consider materials outside of the complaint "to the extent they are consistent with the allegations in the complaint."), *vacated in part on other grounds,* 317 F.Supp.2d 160 (N.D.N.Y.2004); *see also Gil v. Mooney,* 824 F.2d 192, 195 (2d Cir.1987) (in reviewing district court's dismissal of *pro se* plaintiff's claim, Second Circuit considered plaintiff's affidavit submitted in opposition to motion to dismiss). The Court has taken judicial notice of papers filed in other litigation involving Plaintiff and has considered documents in Plaintiff's submissions in opposition to the extent they are consistent with the allegations in Plaintiff's Amended Complaint.

**\*9** Where a party is proceeding *pro se,* the court is obliged to "read [the *pro se* party's] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *See Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994); *see also Harris v. Mills,* 572 F.3d 66, 72 (2d Cir.2009) (courts remain obligated to construe *pro se* complaints liberally even after *Twombly* ). Where a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco,* 222 F.3d at 112 (citation omitted).

### IV. ANALYSIS

#### A. Failure to Exhaust with Regard to Claims Against Defendants Maher, Dobbs, and Goppert

Plaintiff claims that Defendants Maher, Dobbs, and Goppert violated his First, Fifth, Sixth, and Fourteenth Amendment rights by: (1) refusing to send out his amended complaint in *Guillory v. Weber,* thereby denying him access to court; (2) interference with his outgoing legal mail; (3) improperly reading his legal mail; and (4) doing the foregoing in retaliation for grievances and lawsuits filed by him. (Dkt. No. 24 at ¶¶ 48–53, 62.) Defendants seek dismissal of the claims on the grounds that at the time this lawsuit was commenced, Plaintiff had not completed exhaustion of his administrative remedies. (Dkt. No. 37–5 at 9–10.) Plaintiff asserts that he had exhausted his administrative remedies before commencing the action because the Central Office Review Committee ("CORC") failed to decide his appeal in a timely manner. (Dkt. No. 41 at 12–15.) Plaintiff further asserts that because his grievance had been administratively exhausted by the time he filed his Amended Complaint, his commencement of the lawsuit prior to the exhaustion of his administrative remedies should be excused. *Id.* at 12.

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002).

A plaintiff's failure to exhaust administrative remedies is an affirmative defense. *Jones v. Bock,* 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007). Thus, a prisoner has no independent duty to plead facts plausibly suggesting that he exhausted his available administrative remedies in order to state an actionable civil rights claim. *Jones,* 549 U.S. at 211–17. "[T]his is not to say that failure to exhaust cannot be a basis for dismissal for failure to state a claim." *Id.* at 216. If a prisoner chooses to plead facts regarding exhaustion, and those facts show that he failed to exhaust his available administrative remedies, then his complaint may be dismissed for failure to state a claim.[5] *Id.* at 215–16.

**\*10** In order to properly exhaust administrative remedies under the PLRA, inmates are required to complete the administrative review process in accordance with the rules applicable to the particular institution to which they are confined. *Jones,* 549 U.S. at 218 (citing *Woodford v. Ngo,* 548 U.S. 81, 88, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006)). In New York state prisons, DOCCS has a well-established three-step inmate grievance program. N.Y. Comp.Codes R. & Regs. tit. 7, § 701.5 (2013).

Generally, the DOCCS Inmate Grievance Program ("IGP") involves the following procedure for the filing of grievances. First, an inmate must file a complaint with the facility's IGP clerk within twenty-one calendar days of the alleged occurrence. *Id.* at § 701.5(a) (2010). A representative of the facility's inmate grievance resolution committee ("IGRC") has sixteen calendar days from receipt of the grievance to informally resolve the issue. *Id* . at 701.5(b)(1). If there is no such informal resolution, the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance (*Id.* at § 701.5(b)(2)), and issues a written decision within two working days of the conclusion of the hearing. *Id.* at § 701.5(b)(3).

Second, a grievant may appeal the IGRC decision to the facility's superintendent within seven calendar days of receipt of the IGRC's written decision. *Id.* at 701.5(c)(1). If the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the superintendent must issue a written decision within twenty calendar days of receipt of the grievant's appeal. *Id.* at § 701.5(c)(3) (ii). Grievances regarding DOCCS-wide policy issues are forwarded directly to the central office review committee ("CORC") for a decision under the process applicable to the third step. *Id.* at 701.5(c)(3)(i).

Third, a grievant may appeal to CORC within seven working days of receipt of the superintendent's written decision. *Id.* at 701.5(d)(1)(i). CORC is to render a written decision within thirty calendar days of receipt of the appeal. *Id.* at 701.5(d)(3) (ii).

If a prisoner has failed to properly follow each of the applicable steps prior to commencing litigation, he has failed to exhaust his administrative remedies. *Woodford,* 548 U.S. at 93. Receiving a decision from CORC *after* filing a federal lawsuit does not satisfy the PLRA's requirement that administrative remedies be exhausted

*before* filing suit, and any claim not exhausted prior to commencement of the suit must be dismissed without prejudice. *Neal v. Goord,* 267 F.3d 116, 122–23 (2d Cir.2001), overruled on other grounds by *Porter v. Nussle,* 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002).

Here, Plaintiff filed his original Complaint on June 6, 2013. (Dkt. No. 1.) Plaintiff filed his Amended Complaint on March 27, 2014. (Dkt. No. 24.) Papers related to Plaintiff's grievance against Maher, Dobbs, and unnamed security personnel, are annexed as an exhibit to Plaintiff's Amended Complaint. (Dkt. No. 24, Exh. G. at 53–59.) Plaintiff's Grievance No. GNE–7816–13 naming Maher, Dobbs and security staff involved in holding his legal mail is dated May 20, 2013. *Id.* at 53. The IGRC denied Plaintiff's grievance on June 10, 2013. *Id.* at 55. Plaintiff appealed to the Superintendent on June 11, 2013, *id.,* and the appeal was denied on June 18, 2013.[6] *Id.* at 56. By the time Plaintiff appealed to CORC on June 19, 2013, he had already commenced this action. *Id.* In fact, according to the grievance papers annexed to Plaintiff's Amended Complaint, he commenced this action before the IGRC had decided the grievance. *Id.* at 55. Therefore, the fact that CORC did not decide the appeal until October 16, 2013, *id.* at 57, well beyond the thirty days provided for in § 701.5(d)(3)(ii), does not excuse Plaintiff's failure to exhaust prior to commencement of this action.

**\*11** As noted above, Plaintiff has argued in his opposition that since CORC has now rendered a disposition unfavorable to him, he has properly exhausted. (Dkt. No. 41 at 12.) However, the Second Circuit has held that "[s]ubsequent exhaustion after suit is filed ... is insufficient." *Neal v. Goord,* 267 F.3d 116, 122 (2d Cir.2001), overruled on other grounds, *Nussle* 534 U.S. at 523. While this may not be the most efficient outcome, as noted in *Mendez v. Artuz:*

> [T]he Court of Appeals has ruled that from the broader perspective of Congress and appellate judges, the greater good forbids allowing a case to proceed where administrative remedies have been exhausted while the complaint is pending, and requires in such a case dismissal of the complaint, to be re-filed, if the plaintiff wishes, with the

> addition of paragraphs explaining how administrative remedies have been exhausted.

No. 01 CIV. 4157(GEL), 2002 WL 313796, at \*2, 2002 U.S. Dist. LEXIS 3263, at \*4–5 (S.D.N.Y. Feb 27, 2002) (holding that prisoner failed to exhaust administrative remedies when he commenced civil rights action before receiving decision from CORC) (citing *Neal,* 267 F.3d at 123). Furthermore, a post-exhaustion amendment of the complaint cannot cure an exhaustion defect existing at the time the action was commenced. *See Kasiem v. Switz,* 756 F.Supp.2d 570, 575 (S.D.N.Y.2010) (citing *Neal,* 267 F.3d at 122).

Plaintiff's failure to exhaust does not end the review. The Second Circuit has held that a three-part inquiry is appropriate where a prisoner has failed to exhaust his available administrative remedies. *Hemphill v. New York,* 380 F.3d 680, 686, 691 (2d Cir.2004).[7] First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner." *Hemphill,* 380 F.3d at 686 (citation omitted). Second, if those remedies were available, the court should "inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it ... or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Id.* (citations omitted). Third, if remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Id.* (citations and internal quotations omitted).

As to the first question, New York's IGP is "recognized as an 'available' remedy for purposes of the PLRA." *Taylor v. Chalom,* No. 9:10 CV 1494 (NAM/DEP), 2011 WL 6942891, at \*4, 2011 U .S. Dist. LEXIS 150512, at \*12 (N.D.N.Y. Dec.13, 2011). The grievance system was also clearly available to Plaintiff, who was in the process of utilizing the IGP at the time he filed his original Complaint. (Dkt. No. 24 at 53–59.)

**\*12** Second, Defendants are not estopped from asserting this defense, inasmuch as Plaintiff has pleaded no facts indicating Defendants interfered in any way with the grievance process that was ultimately completed. (Dkt. No. 24.)

Third, there are no 'special circumstances' here to excuse Plaintiff's failure to exhaust, because:

> Justification "must be determined by looking at the circumstances which might understandably lead ... uncounselled prisoners to fail to grieve in the normally required way." Generally, the 'special circumstances' doctrine is applied where a prisoner has been threatened with physical retaliation for exhausting administrative remedies or where the prisoner reasonably misinterprets the statutory requirements of the appeals process.

*Ford v. Smith,* No. 9:12 CV 1109 (TJM/TWD), 2014 WL 652933, at \*3, 2014 U.S. Dist. LEXIS 20581, at \*8–9 (N.D.N.Y. Jan.16, 2014) (citations omitted). While Plaintiff has argued that his administrative remedies were exhausted because his CORC appeal was not decided for four months, that argument does not support a finding of special circumstances, particularly when Plaintiff commenced the action before CORC even received the appeal. Furthermore, although regulations require CORC to respond within thirty days, its failure to do so is not a 'special circumstance' which might defeat an exhaustion defense. *Id.*

In sum, Plaintiff had not yet exhausted all administrative remedies with regard to his claims against Maher, Dobbs, and Goppert at the time he filed this suit, and the Second Circuit's three-part inquiry reveals no justification for his failure to exhaust. Therefore, the Court recommends that Plaintiff's claims against Defendants' Maher, Dobbs, and Goppert be dismissed without prejudice for failure to exhaust administrative remedies. [8]

### B. Plaintiff's First Amendment Claims for Denial of Access to Court Against Defendants Potter and Graziano

Plaintiff claims that Defendants Potter and Graziano, prevented him from mailing a supplemental brief in an Article 78 proceeding transferred to the Third Department in a timely manner by refusing to allow him to go to the law library for necessary copying and notary services. (Dkt. No. 24 at ¶¶ 6, 9, 21 and p. 39.)

The Supreme Court has long held that inmates are guaranteed a right of access to the courts under the First Amendment of the Constitution. *See Lewis v. Casey,* 518 U.S. 343, 350, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996); *Bounds v. Smith,* 430 U.S. 817, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *see also Washington v. James,* 782 F.2d 1134, 1138 (2d Cir.1986) ("A prisoner has a constitutional right of access to the courts for the purpose of presenting his claims, a right that prison officials cannot unreasonably obstruct and that states have affirmative obligations to assure."). In order to state a claim for denial of access to the courts, a plaintiff must assert non-conclusory allegations demonstrating that the defendant acted deliberately and maliciously. *Lewis,* 518 U.S. at 349, 351; *Gonzales v. Carpenter* No. 9:08–CV–629 (LEK/ATB), 2011 WL 768990, at \*7, 2011 U.S. Dist. LEXIS 18806, at \*26 (N.D.N.Y. Jan.3, 2011) (Baxter, M.J.). Plaintiff's Amended Complaint, liberally construed, satisfies that requirement.

**\*13** However, Plaintiff must also assert non-conclusory allegations showing that the interference with his right of access to court resulted in actual injury. *Lewis,* 518 U.S. at 348349. To do that, Plaintiff must describe the underlying claim allegedly frustrated by the interference well enough to establish that it is "nonfrivolous" and "arguable" in nature. *Christopher v. Harbury,* 536 U.S. 403, 415–16, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002) (underlying cause of action "is an element that must be described in the complaint."); *Rosario v. Fischer,* No. 11 Civ 4717, 2012 WL 4044901, at \*7, 2012 U.S. Dist. LEXIS 133502, at \*19–20 (S.D.N.Y. Aug.28, 2012) ("To satisfy the requirement that the underlying claim not be frivolous, a plaintiff must describe the claim well enough for the court to determine whether the claim had an arguable basis in either law or fact."). Plaintiff must set forth sufficient facts to suggest that success on the underlying claim is found on "more than hope." *Christopher,* 536 U.S. at 416.

The only "actual injury" alleged by Plaintiff as a result of Potter and Graziano's alleged refusal to allow him to go to the law library on May 6, 2013, is that he was unable to file his supplemental brief by the deadline imposed by the Third Department. (Dkt. No. 24 at ¶ 44.) Plaintiff's Amended Complaint includes no description of the claim(s) asserted in the Article 78 proceeding, and includes no facts suggesting that the claim(s) were

found on "more than hope." *Christopher,* 536 U.S. at 416. Plaintiff has done nothing more than allege in conclusory fashion that his claim was non-frivolous and that it was frustrated by his inability to mail his supplemental brief in a timely manner. *Id.* A missed deadline, without showing the frustration of a non-frivolous claim as a result, is insufficient to demonstrate actual injury. *See Cisnevas–Garcia v. Shipman,* No. 9:10–CV–179 (FJS/RFT), 2010 WL 5094637, at *1, 2010 U.S. Dist. LEXIS 129657, at *4 (N.D.N.Y. Dec.8, 2010).

In light of the foregoing, the Court recommends that Plaintiff's claims for denial of access to court against Potter and Graziano be dismissed for failure to state a claim. The fact that Plaintiff had already submitted a lengthy legal brief to the Third Department in the Article 78 proceeding (Dkt. No. 39), and the Third Department's confirmation of the DOCCS administrative determination being challenged based upon the evidence in the Article 78 record, *see Guillory v. Fischer,* 111 A.D.3d 1005, 974 N.Y.S.2d 196, render it highly unlikely that given the opportunity to replead Plaintiff will be able to state a denial of access to court claim against Potter and Graziano. Nonetheless, in light of Plaintiff's *pro se* status, the Court recommends that the dismissal be without prejudice, and that Plaintiff be given the opportunity to amend.

### C. Argument for Dismissal of Plaintiff's Law Library Retaliation Claims Against Defendants Potter and Graziano as Duplicative

**\*14** Defendants Potter and Graziano seek dismissal of Plaintiff's retaliation claim arising out of their refusal to allow him to go to the law library on May 6, 2013, on the grounds that the claim is identical to one asserted against Potter in *Guillory v. Morris, et al.,* 13–CV–0378 (NAM/TWD) (*"Morris"* ), presently pending in the Northern District of New York. (Dkt. No. 37–5.)

On September 4, 2013, this Court issued a Text Order in *Morris* allowing Plaintiff to supplement his complaint with a document entitled "Supplemental Harassment by Correction Officer Potter," which asserted claims against Potter for denial of access to court and retaliation arising out of Potter's refusal to allow Plaintiff to go to the law library on May 6, 2013. (*Morris,* Dkt. No. 6.) Pursuant to the Text Order the supplement was added to Plaintiff's complaint and the supplemented pleading was docketed as an amended complaint." (*Morris,* Dkt. No. 15.)

Plaintiff's supplemental claim against Potter was identified as one for denial of access to court and dismissed without prejudice for failure to state a claim in the September 18, 2013, Decision and Order of the Hon. Norman A. Mordue on initial review pursuant to 28 U.S.C. §§ 1915(e) and 1915A. (Dkt. No. 16.) Plaintiff has not filed an amended complaint since the issuance of that Decision and Order. Defendant Potter's Rule 12(b)(6) motion to dismiss Plaintiff's retaliation claims against him was denied by Judge Mordue based upon the recommendation of this Court. (Dkt.Nos.68, 75.)

It is well-settled that a district court, as "part of its general power to administer its docket," has discretion to "stay or dismiss a suit that is duplicative of another federal court suit." *Curtis v. Citibank, N.A.,* 226 F.3d 133, 138 (2d Cir.2000) (citing *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)). In *Colorado River,* the Supreme Court noted that since "[t]he complex problems that can arise from the multiple federal filings do not lend themselves to a rigid test," *id.,* "no precise rule has evolved" that governs the exercise of that discretion. *Colorado River,* 424 U.S. at 817. Rather, a district court must "consider the equities of the situation when exercising its discretion," *Curtis,* 226 F.3d at 138, "giving regard to conservation of judicial resources and comprehensive disposition of litigation ...." *Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co.,* 342 U.S. 180, 183, 72 S.Ct. 219, 96 L.Ed. 200 (1952).

The Second Circuit has endorsed the principle "that [w]here there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience ... or ... special circumstances ... giving priority to the second." *First City Nat'l Bank & Trust Co. v. Simmons,* 878 F.2d 76, 79 (2d Cir.1989). The Court finds that at this point in the litigation, there are special circumstances that militate against dismissing the law library retaliation claims against Potter and Graziano in this case on the grounds that there are competing lawsuits.

**\*15** The retaliation claim in *Morris* is asserted only against Potter. Graziano is not a defendant in *Morris* but is already before the Court as a party defendant in this action. Because the retaliation claims against Potter and Graziano arise out of the same facts and litigation of the claims would likely involve much of the same evidence,

conservation of judicial resources and comprehensive disposition of litigation favors retaining Plaintiff's law library related retaliation claims against both Potter and Graziano in this action. [9]

Conservation of judicial resources and comprehensive disposition of litigation also favor litigation of Plaintiff's law library retaliation claims and denial of access to court claims against Potter and Graziano in the same lawsuit, since both claims arise out of a common nucleus of facts. There is no denial of access to court claim pending against Potter in *Morris* in light of the dismissal of the claim without prejudice on initial review (*Morris,* Dkt. No. 16), and Plaintiff's failure to amend his complaint in an attempt to state a claim. Although the Court is recommending dismissal of Plaintiff's denial of access to court claim against Potter and Graziano for failure to state a claim in this case, the recommendation is that the dismissal be without prejudice. Therefore, the possibility that Plaintiff will be able to amend his denial of access to court claim cannot be ruled out by the Court at this point.

For the foregoing reasons, the Court recommends that Potter and Graziano's motion to dismiss Plaintiff's law library related retaliation claims on the grounds that a duplicative action is pending be denied without prejudice. [10]

### D. Plaintiff's Retaliation Claims Against Potter

Plaintiff claims that Potter refused to allow him to go to the law library on May 6, 2013, in retaliation for grievances and lawsuits filed by Plaintiff. (Dkt. No. 24 at ¶¶ 17, 60.) Plaintiff also claims that Potter destroyed the microwave in his housing unit in retaliation for his parents' call to Boll. *Id.* at ¶¶ 28, 35, 61. Claims of retaliation find their roots in the First Amendment. *See Gill v. Pidlypchak,* 389 F.3d 379, 380–81 (2d Cir.2004). Central to such claims is the notion that in a prison setting, corrections officials may not take actions that would have a chilling effect upon an inmate's exercise of First Amendment rights. *See Pidlypchak,* 389 F.3d at 381–83. Because of the relative ease with which claims of retaliation can be incanted, however, courts have scrutinized such claims with particular care. *See Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983).

As the Second Circuit has noted,

[t]his is true for several reasons. First, claims of retaliation are difficult to dispose of on the pleadings because they involve questions of intent and are therefore easily fabricated. Second, prisoners' claims of retaliation pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act.

**\*16** *Dawes v. Walker,* 239 F.3d 489, 491 (2d Cir.2001) (citations omitted), *overruled on other grounds, Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

To prevail on a retaliation claim under § 1983, a plaintiff must prove that: (1) the speech or conduct at issue was "protected;" (2) the defendants took "adverse action" against the plaintiff; and (3) there was a causal connection between the protected speech and the adverse action in other words, that the protected conduct was a "substantial or motivating factor" in the defendants' decision to take action against the plaintiff. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Pidlypchak,* 389 F.3d at 380 (citing *Dawes,* 239 F.3d at 492).

Adverse action, used in the prison context, is defined objectively as "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising ... constitutional rights." *Pidlypchak,* 389 F.3d at 381, 383 (quoting *Davis v. Goord,* 320 F.3d 346, 353 (2d Cir.2003)). "Otherwise the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection." *Dawes,* 239 F.3d at 493. In evaluating what constitutes adverse action for purposes of a retaliation claim, a court should be mindful that "[p]risoners may be required to tolerate more than public employees, who may

be required to tolerate more than average citizens, before a [retaliatory] action taken against them is considered adverse." *Id.*

Several factors may be considered in determining whether a causal connection exists between the plaintiff's protected activity and a prison official's actions. *Baskerville v. Blot,* 224 F.Supp.2d 723, 732 (S.D.N.Y.2002) (citing *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995)). Those factors include: (i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his or her motivation. *Id.* (citing *Colon,* 58 F.3d at 872–73). "The causal connection must be sufficient to support an inference that the protected conduct played a substantial part in the adverse action." *Id.*

### 1. *The Law Library Incident*

In paragraph 17 of his Amended Complaint, Plaintiff has alleged that "Defendant Potter does not enjoy me going to the law library at all since he found out about the litigation that is pending before this Court (which he is also a Defendant in *Guillory v. Cheryl Morris,* 9:13 cv 00378)." (Dkt. No. 24 at ¶ 17.) The original complaint in *Morris* was filed on April 4, 2013. (*Morris,* Dkt. No. 1.) Although Potter was named as a John Doe in Plaintiff's original complaint, it can be inferred from the allegations asserted against defendant Doe, *i.e.,* forcing Plaintiff to have his side locks cut off, *id.* at ¶ 13, that Potter may very well have been recognized as Doe and made aware that the suit had been commenced prior to May 15, 2013, when the complaint was supplemented to substitute his name for John Doe. [11] (*Morris,* Dkt. No. 6.) Plaintiff has also alleged that the retaliation was for his filing a grievance against Potter on April 10, 2013. *Id.* at ¶ 32.

**\*17** The filing of lawsuits is protected conduct for purposes of First Amendment claims. *See Colon,* 58 F.3d at 872 ("Prisoners, like non-prisoners have a constitutional right of access to the courts and to petition the government for redress of grievances.") Furthermore, refusing to allow Plaintiff to go to the law library knowing that it would prevent an inmate from filing papers in a pending lawsuit in a timely manner would arguably deter "a similarly situated individual of ordinary firmness from exercising ... constitutional rights." *Pidlypchak,* 389 F.3d

at 381, 383. In addition, the temporal connection between Plaintiff's pending lawsuit against Potter and the April 10, 2013, grievance against Potter, and Potter's refusal to allow Plaintiff to go to the law library, is "sufficient to support an inference that the protected conduct played a substantial part in the adverse action," *see Baskerville,* 224 F.Supp.2d at 732, for purposes of surviving a Rule 12(b)(6) motion.

Therefore, the Court recommends that Potter's motion to dismiss Plaintiff's retaliation claim arising out of his refusal to allow Plaintiff to go to the law library be denied.

### 2. *The Microwave Incident*

In addition to the specific arguments made by Defendants for dismissal of Plaintiff's retaliation claims against Potter and Graziano for not allowing him to go to the law library and the allegedly retaliatory cell search by Donovan, *id.* at 8–10, the Defendants have made a general argument for dismissal of all other retaliation claims that might be asserted in Plaintiff's Amended Complaint. (Dkt. No. 37–5 at 13–15.) Defendants have not identified the specific retaliation claims the argument is intended to address, the defendants involved in each retaliation claim, or specific facts relating to the retaliation claims they seek to have dismissed. *Id.* They have simply argued in conclusory terms that Plaintiff's Amended Complaint fails to include any non-conclusory allegations supporting retaliation and does not allege facts establishing that the Defendants were aware of Plaintiff's grievances and lawsuits at the time of the claimed retaliation, thereby leaving the Court to guess as to particular retaliation claims on which dismissal is sought. [12] *Id.* at 14–15.

Presumably, one of the claims intended to fall within the retaliation argument is Plaintiff's retaliation claim involving Potter's alleged destruction of the microwave in Plaintiff's housing unit, which occurred nine days after Plaintiff's parents called Boll to complain that Plaintiff was being harassed by Potter. (Dkt. No. 24 at ¶¶ 28, 35, 61.) Plaintiff claims that Potter destroyed the microwave while staring at Plaintiff and another inmate whose parents had called DOCCS Office of Counsel, and saying "this is what inmates get when they call DOCCS on me!!" *Id.* at ¶¶ 35. Plaintiff contends that the microwave destruction was in retaliation for the call to Boll and Plaintiff's grievances against Potter, one of which was filed on April 10, 2013. *Id,* at ¶ 32.

**\*18** The filing of a grievance has been found to constitute protected First Amendment conduct for purposes of a retaliation claim. *See Davis v. Goord,* 320 F.3d 346, 352–53 (2d Cir.2003) (the right to file grievances is a constitutionally protected activity for retaliation purposes). Inmate's verbal complaints to corrections officers and prison officials have also been found to constitute activity protected by the First Amendment. *See, e.g., Monko v. Cusak,* No. 9:11–CV–1218 (GTS/TWD), 2013 WL 5441724, \*10, 2013 U.S. Dist. LEXIS 142053, at \*23 (N.D.N.Y. Sept.27, 2013); *Brewer v. Kamas,* 533 F.Supp.2d 318, 329 (W.D.N.Y.2008); *Smith v. Woods,* No. 9:03–CV–480, 2006 WL 1133247, at \*10, 2006 U.S. Dist. LEXIS at 29745 at \*46 (N.D.N.Y. April 24, 2006), *aff'd,* 219 F. App'x 110 (2d Cir.2007).

Plaintiff's parents' call to Boll might arguably be construed as Plaintiff's own conduct for First Amendment protection purposes, since the call was made on Plaintiff's behalf, and it can be inferred at his direction. Defendants do not appear to have argued otherwise in seeking dismissal of Plaintiff's retaliation claims. Moreover, for purposes of this motion, the temporal proximity of the call to Boll and the destruction of the microwave, and Potter's alleged comment connecting the destruction to the call makes a plausible showing of causal connection for purposes of this motion. However, the Court finds that the destruction of the housing unit's microwave does not constitute adverse action "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising ... constitutional rights" for purposes of stating a retaliation claim. *Pidlypchak,* 389 F.3d at 381, 383. Rather, as pleaded by Plaintiff, the destruction of the microwave was *de minimis.*

Plaintiff has alleged that corrections officers like to destroy microwaves because inmates use them to heat chicken purchased from the commissary. *Id.* at ¶ 38. However, Plaintiff's Amended Complaint contains no factual allegations regarding his personal use of the housing unit microwave or the impact of its destruction on him that would suggest the impact was more than *de minimis.* Furthermore, the Amended Complaint is devoid of allegations regarding the period of time the housing unit was without a microwave, although given Plaintiff's allegation that Potter contacted administration about the broken microwave and indicated he had dropped it, one could infer that it was likely replaced. *Id.* at ¶ 36.

Given Plaintiff's failure to make a plausible showing that the destruction of the microwave constituted adverse action for purposes of his retaliation claim against Potter, the Court recommends that the claim be dismissed for failure to state a claim. The Court further recommends that Plaintiff be granted leave to amend his claim in the unlikely event he can plead facts showing the impact of the destruction of the microwave was sufficiently severe so as to deter a "similarly situated individual of ordinary firmness from exercising ... constitutional rights." *Pidlypchak,* 389 F.3d at 381, 383.

### E. Claims Against Graziano

#### 1. *Retaliation*

**\*19** According to Plaintiff, he made Graziano aware of his court imposed deadline and of Potter's refusal to allow him to go to the law library when he came to Plaintiff's housing unit in the early afternoon of May 6, 2013. (Dkt. No. 24 at ¶ 10.) Graziano did not intervene on Plaintiff's behalf but did tell him he would look into it. *Id.* at ¶ 11. Plaintiff claims that instead, Graziano brushed him off. *Id.* at ¶ 17.

Plaintiff has not identified any First Amendment protected conduct engaged in by him for which Graziano might retaliate. Nor are there any other allegations in the Amended Complaint that make a plausible showing that Graziano's failure to intervene on Plaintiff's behalf and alleged failure to look into the law library matter were in retaliation for Plaintiff's First Amendment protected conduct. Therefore, the Court recommends dismissal of Plaintiff's retaliation claim against Graziano for failure to state a claim and further recommends that in light of Plaintiff's *pro se* status he be granted leave to amend.

#### 2. *Supervisory Liability*

Plaintiff has alleged that Graziano knew Potter was violating his constitutional rights and did nothing about it. *Id.* at ¶ 64. Plaintiff describes Graziano's conduct as "the same type of liability that is addressed when a supervisor knew of the subordinate's past misconduct (prior grievances against Defendant Potter, beat ups by Defendant Potter, Set-ups by Defendant Potter), [and] failed to set up policies that help guide subordinate's conduct so that the violations of constitutional rights does (sic) not continue to occur, failed to inform

and train staff (Defendants Potter, Goppert, Donovan, Defendant Dobbs and Maher) on policies designed to avoid the deprivations of constitutional rights; and failed to supervise the said defendants to ensure that they follow policies that are created to protect the said constitutional rights." *Id.*

Those factual allegations suggest an attempt by Plaintiff to assert a claim against Graziano for supervisory liability. The law is clear that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977). "Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal,* 556 U.S. at 676. ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior."* ). "Holding a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement." *Groves v. Davis,* No. 9:11–CV–1317 (GTS/RFT), 2012 WL 651919, at *6, 2012 U.S. Dist. LEXIS 25367, at *22–23 (N.D.N.Y. Feb.28, 2012) (citing *McKinnon,* 568 F.2d at 934); *see also Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003) (a "mere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections ... in a § 1983 claim") (quoting *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985)). Therefore, "a plaintiff must ... allege a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986).

**\*20** The Second Circuit has held that personal involvement by a supervisor necessary to state a claim under § 1983 may be found where: "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that

unconstitutional acts were occurring." *Colon,* 58 F.3d at 873. [13]

The only factual allegations showing direct participation by Graziano in the violation of Plaintiff's constitutional rights are those related to Plaintiff's denial of access to court claim against him, which the Court has recommended be dismissed for failure to state a claim. Vague and conclusory claims that Graziano, as a supervisory official, has failed to provide proper training and supervision or created a policy, without facts showing personal involvement, are legally insufficient to state a claim under any of the categories identified in *Colon. See Bridgewater v. Taylor,* 832 F.Supp.2d 337, 348 (S.D.N.Y.2011); *White v. Fischer,* No. 9:09–CV–240 (DNH/DEP), 2010 WL 624081, at *6, 2010 U.S. Dist. LEXIS 15492, at *19 (N.D.N.Y. Feb.18, 2010) ("Vague and conclusory allegations that a supervisor has failed to train or properly monitor the actions of subordinate employees will not suffice to establish the requisite personal involvement and support a finding of liability."); *see also Pettus v. Morgenthau,* 554 F.3d 293, 300 (2d Cir.2009) (same).

Given the conclusory nature of Plaintiff's supervisory liability claim against Graziano, the Court recommends dismissal for failure to state a claim, with leave to amend granted in deference to Plaintiff's *pro se* status.

### F. Retaliation Claim Against Donovan

According to Plaintiff, the day after Plaintiffs' parents called Boll to complain about Potter and the holding of his legal mail, Defendant Donovan directed a corrections officer to conduct a search of Plaintiff's cell and took either half or all of Plaintiff's legal documents and food. (Dkt. No. 24 at ¶¶ 29, 32.) Plaintiff claims that the cell search and taking of his property were in retaliation for the call to Boll as well as Plaintiff's filing of grievances against Potter. *Id.* at ¶ 32. In his opposition to Defendants' motion to dismiss, Plaintiff has clarified that he is not asserting a property deprivation claim under the Fourth or Fourteenth Amendments, but rather is specifically asserting a retaliation claim, and the Court has taken Plaintiff at his word. [14] (Dkt. No. 41 at 17.)

As noted above, an inmate's verbal complaints to corrections officers and prison officials have been found to constitute activity protected by the First Amendment.

Although Plaintiff has not alleged facts showing that Donovan was aware of his parents' call to Boll, given that the search and confiscation of Plaintiff's property took place only one day after his parents' telephone call to Boll, the Court finds that Plaintiff has made a sufficient showing that there may have been a causal connection for purposes of this motion to dismiss.

**\*21** As to the adverse action requirement, the Supreme Court has held that "prisoners have no legitimate expectation of privacy." *Hudson v. Palmer,* 468 U.S. 517, 530, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). As a result, many of the district courts in the Second Circuit have found that cell searches, even if conducted for retaliatory reasons, cannot constitute an adverse action for purposes of a retaliation claim. *See, e.g., Yofelfang v. Capra,* 889 F.Supp.2d 489, 509 (S.D.N.Y.2012) ("inmate has no right to be free from searches of any kind, including those alleged to be retaliatory.") (quoting *Rodriguez v. McClenning,* 399 F.Supp.2d 228, 239 (S.D.N.Y.2005)) (internal quotation marks omitted). Even though district courts have found that cell searches alone are not actionable under § 1983, even if retaliatory, allegations that a defendant confiscated personal property and/or legal papers during the course of a cell search have been found sufficient to deter an inmate of ordinary firmness from exercising his constitutional rights. *See, e.g., Amaker v. Fischer,* No. 10–CV–0977A, 2014 WL 4772202, at \*10, 2014 U.S. Dist. LEXIS 136117, at \*22 (W.D.N.Y. Sept.27, 2014); *Phelan v. Hersh,* No. 10–CV–0011 (GLS/RFT), 2011 WL 6031940, at \*6, 2011 U.S. Dist. LEXIS 4252 (N.D.N.Y. Sept.13, 2011).

Based upon the foregoing, the Court finds that Plaintiff's allegations that Donovan confiscated his legal documents and kosher food during a cell search in retaliation for Plaintiff's parents' complaints to Boll the day before states a plausible claim for retaliation and recommends denial of Donovan's motion to dismiss Plaintiff's retaliation claim against him.

### G. Supervisory Liability Claims Against Boll and Haywood

Defendants Boll and Haywood seek dismissal of Plaintiff's Amended Complaint on the grounds that he has failed to allege facts showing the personal involvement necessary for supervisory liability. (Dkt. 37–5 at 12–16.) Plaintiff has alleged that Boll and Haywood, "after learning of the violations of [his] constitutional rights failed to remedy the

wrong (Supra at 28); created a custom and policy under which [his] constitutional rights were violated (Supra at 29–30, 35, 38, 42–43); and, was (sic) grossly negligent in that they failed to adequately supervise the subordinates whom (sic) also violated my said rights." [15] (Dkt. No. 24 at ¶ 54.) According to Plaintiff, Boll and Haywood learned of the violation of his constitutional rights through several letters written to their office, Plaintiff's parents' telephone conversation with Boll, Plaintiff's pending lawsuit against Potter and other pending lawsuits, and several grievances filed by Plaintiff. *Id.* at ¶ 55.

"[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Smith v. Local 819 I.B.T. Pension Plan,* 291 F.3d 236, 240 (2d Cir.2002) (citation and internal quotation marks omitted). Conclusory allegations that a supervisory official was aware of alleged constitutional violations and failed to remedy them fail to state a claim for supervisory liability. [16] *See Carter v. Artuz,* No. 95CIV2362CSHKNF, 95CIV4785CSHKNF, 1999 WL 350868, at \*4, 1999 U.S. Dist. LEXIS 8338, at \*11 (S.D.N.Y. June 1, 1999). Furthermore, Plaintiff's wholly conclusory claims that Boll and Haywood, as a supervisory officials, created a custom and policy under which Plaintiff's constitutional rights were violated, are legally insufficient to state a claim under any of the categories described in *Colon. See Koehl v. Bernstein,* No. 10 Civ. 3808(SHS)(GWG), 2011 WL 2436817, at \*19, 2011 U.S. Dist. LEXIS 64466, at \*56 (S.D.N.Y. June 17, 2011) ("While personal involvement of a supervisor may be established by showing that [she or] he created a policy or custom under which the violation occurred ..., conclusory allegations that a defendant was involved in the creation and enforcement of unconstitutional policies cannot sustain a claim of personal involvement.") (internal citations omitted). Likewise, conclusory allegations that a supervisory official has failed to train or properly monitor the actions of subordinate employees do not suffice to establish the requisite personal involvement for a supervisory liability claim. *See Pettus,* 554 F.3d at 300; *Bridgewater,* 832 F.Supp. at 348; *White,* 2010 WL 624081, at \*6.

### 1. Haywood

**\*22** In addition to the conclusory assertions that fail to state a claim, Plaintiff has alleged that Haywood conducted an investigation into the actions of Dobbs,

Maher, and Goppert in withholding his amended complaint from the mail and: (1) stated in a letter to Plaintiff (not included as an exhibit to the Amended Complaint) that she would not comment on Plaintiff's concerns; (2) and when Plaintiff returned Haywood's letter with a demand that she amend it consistent with his demand that an additional investigation be conducted, she refused to accede to the demand. *Id.* at ¶¶ 42–43, 56. Plaintiff also claims that Haywood failed to act on Maher, Dobbs, and Goppert's retaliatory conduct in withholding his mail when she learned of it. *Id.* at ¶¶ 42–43.

Plaintiff has acknowledged that Haywood conducted an investigation of Maher, Dobbs, and Goppert's conduct with regard to the missed filing deadline. *Id.* at ¶ 42. However, his Amended Complaint does not include allegations showing the facts and circumstances surrounding the investigation by Haywood, i.e., whether it was undertaken in response to his direct complaints to her or as a part of her designated duties in the Office of Counsel. Although Plaintiff has included numerous exhibits as a part of his Amended Complaint, he has neither included the letter from Haywood in which she allegedly refused to comment on his complaint, nor has he alleged any specific detail as to its content.

Plaintiff has not alleged facts showing that there was any action Haywood could have taken to remedy the missed filing deadline for the amended complaint by the time she became aware of it. *See Bridgewater,* 832 F.Supp.2d at 348. Plaintiff has not alleged that he attempted to remedy his inability to file the amended complaint in a timely manner by seeking an extension with the district court on the grounds that his amended complaint had been held for a security review. *See Waters v. Sunshine,* No. 07 Civ. 4753(DLI)(LB), 2009 WL 750217, at *6, 2009 U.S. Dist. LEXIS 22445, at *16–19 (E.D.N.Y. Mar. 19, 2009) (plaintiff has not suffered a constitutional deprivation of access to court if he has other avenues available to bring his claims before the court).

Furthermore, a complaint that fails to state a claim for the underlying unlawful conduct also fails to state a claim against supervisory officials with respect thereto. *Delaney v. Zaki,* No. 9:13–CV–0648 (DNH/TWD), 2014 WL 4966914, at *8, 2014 U.S. Dist. LEXIS 137611, at *17 (N.D.N.Y. Sept.2, 2014) (citing *Alston v. Bendheim,* 672 F.Supp.2d 378, 388–89 (S.D.N.Y.2009); *Clarke v. Sweeney,* 312 F.Supp.2d 277, 298 (D.Conn.2004) ("As

there was no underlying deprivation of constitutional rights, accordingly, there can be no supervisory liability ....").

Plaintiff has failed to state a claim for denial of access to court against Maher, Dobbs, and Goppert and, therefore, has failed to state a supervisory liability claim in connection therewith. Plaintiff has failed to alleged facts plausibly showing that his underlying claim for denial of access to court in the federal court action was non-frivolous in nature. His only claimed injury is his inability to file the amended complaint in a timely manner. *See Lewis,* 518 U.S. at 348–349. Furthermore, Plaintiff has failed to describe the underlying claims in his Amended Complaint well enough for the court to determine whether they have any arguable basis in fact or law. *See Christopher,* 536 U.S. at 415–16. In fact, he has not described the claims at all.

**\*23** Plaintiff has likewise failed to state a claim against Maher, Dobbs, and Goppert for interference with legal mail in that as with his claim for denial of access to court, he has failed to allege "actual injury" to a non-frivolous claim. *See Davis,* 320 F.3d at 351 (to state a claim for denial of access to court based upon interference with legal mail, a plaintiff must allege that the interference hindered efforts to pursue a legal claim, i.e., caused actual injury such as the dismissal of an otherwise meritorious claim). While Plaintiff contends that Maher, Dobbs, and Goppert violated his constitutional rights by opening his legal mail outside of his presence, an isolated instance of mail tampering is generally insufficient to establish a constitutional violation. *See Davis,* 320 F.3d at 351. Rather, an inmate must show that prison officials "regularly and unjustifiably interfered with incoming mail." *Id.* (citation and internal quotation marks omitted).

Nor has Plaintiff stated a claim for retaliation against Maher, Dobbs, and Goppert. Plaintiff has alleged in conclusory fashion that the failure to send out his amended complaint was in retaliation for unspecified grievances and lawsuits he had filed against the facility. *Id.* at ¶ 62. "[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." *Flaherty,* 713 F.2d at 13. Therefore, Plaintiff cannot be found to have stated a supervisory liability claim against Haywood for failure to take action with respect to Maher, Dobbs, and Goppert's alleged retaliation. *See Delaney,* 2014 WL 4966914, at *8.

Given the conclusory nature of Plaintiff's failure to remedy, custom and policy, and failure to properly train and monitor subordinates claims against Haywood, the Court recommends that those supervisory claims be dismissed without prejudice. In addition, given Plaintiff's failure to state claims against Haywood for allegedly refusing to accede to his demand for an additional investigation of the withholding of his amended complaint, and failing to take action with respect to Maher, Dobbs, and Goppert's allegedly retaliatory conduct, the Court recommends that Plaintiff's those claims against Haywood be dismissed without prejudice.

### 2. *Boll*

Plaintiff has alleged generally that Boll learned of the violation of his constitutional rights through several letters written to the Office of Counsel, Plaintiff's parents' telephone conversation with Boll, Plaintiff's pending lawsuit against Potter and other pending lawsuits, and several grievances filed by Plaintiff. *Id.* at ¶ 55. However, the only communications specifically identified by Plaintiff are the phone call from Plaintiff's parents on May 9, 2013, and a June 11, 2013, letter from Plaintiff regarding the withholding of his amended complaint from the mail, to which Boll responded on July 2, 2013 (Dkt. No. 24 at 68). Furthermore, Plaintiff has failed to allege facts identifying the grievances, and lawsuits from which Boll allegedly learned of the violations of his constitutional rights and facts from which her awareness can be inferred. [17]

**\*24** Plaintiff has alleged that the subject matter of his parents' May 9, 2013, telephone call with Boll included harassment by Potter and the withholding of his amended complaint by Maher, Dobbs and Goppert. *Id.* at ¶ 28. Plaintiff has failed to describe the specific harassing conduct by Potter that was complained of by his parents in their call with Boll. [18] However, given the temporal proximity between Potter's refusal on May 6, 2013, to allow Plaintiff to go to the law library for copying and notary services necessary to mail out his brief in a timely manner, the Court can infer that incident was raised in the May 9, 2013, telephone conversation. *Id.* at ¶¶ 6–7, 28.

Even if complaints were made to Boll concerning the May 6, 2013, law library incident and the withholding of the amended complaint, Plaintiff has failed to state a supervisory liability claim against her with respect to his denial of access to court claim. As with his claim regarding the amended complaint withheld from mailing, [19] the only injury alleged by Plaintiff with regard to the May 6, 2013, law library incident was his failure file his supplemental brief in a timely manner. Furthermore, as noted above, Plaintiff's Amended Complaint does not describe the underlying claims in his Article 78 proceeding as required to state a claim for denial of access to court and interference with legal mail. *See Christopher,* 536 U.S. at 415–16; *Davis,* 320 F.3d at 351. Therefore, the Court finds that Plaintiff has failed to state a supervisory liability claim against Boll with regard to his denial of access to court arising out of the May 6, 2013, law library incident and the withholding of his amended complaint from the mail.

The Court has concluded that Plaintiff has stated a claim for retaliation against Potter with regard to the May 6, 2013, law library incident. In addition, the Court has inferred that the May 6, 2013, incident was raised by Plaintiff's parents in their May 9, 2013, telephone conversation with Boll. It also appears, given Boll's reference in her July 2, 2013, to a claim by Plaintiff in his June 11, 2013, letter to Boll concerning denial of access to the law library, that Boll had been made aware of and investigated the incident and found Plaintiff had not been denied access to the law library. (Dkt. No. 254 at 68.) Reading the allegations in the Amended Complaint liberally, as it must do, and construing all reasonable inferences in Plaintiff's favor, the Court finds that Plaintiff has stated a supervisory liability claim against Boll with regard to Plaintiff's retaliation claim against Potter in connection with the May 6, 2013, law library incident.

In light of the foregoing, the Court recommends that Plaintiff's conclusory failure to remedy, custom and policy, and failure to properly train and monitor subordinates claims against Boll, as well as supervisory liability claims with regard to Plaintiff's denial of access to court, interference with mail, and improper opening of mail claims be dismissed without prejudice. The Court recommends that Boll's motion to dismiss be denied as to Plaintiff's supervisory liability claim against her with respect to Potter's alleged retaliation in connection with the May 6, 2013, law library incident.

### H. Retaliation Claims Against Boll and Haywood

**\*25** Plaintiff has alleged in wholly conclusory terms that Boll and Haywood had a custom, policy and practice of ordering retaliation against inmates whose parents called the DOCCS Office of Counsel on behalf of their children. (Dkt. No. 24 at ¶ 29.) Wholly conclusory claims of retaliation "can be dismissed on the pleadings alone." *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996). Therefore, the Court recommends that Plaintiff's retaliation claims against Boll and Haywood be dismissed without prejudice.

**ACCORDINGLY,** it is hereby

**RECOMMENDED,** that Defendants' motion to dismiss Plaintiff's Amended Complaint pursuant to Rule 12(b)(6) (Dkt. No. 37) be **GRANTED** in part and **DENIED** in part; and it is further

**RECOMMENDED,** that Defendant Potter and Graziano's motion to dismiss Plaintiff's retaliation claims against them arising out of the May 6, 2013, law library incident, on the grounds that the claim is duplicative of a claim being asserted against Potter in *Guillory v. Morris,* 9:13–CV–0378 (NAM/TWD) (N.D.N.Y.) be denied without prejudice; and it is further

**RECOMMENDED,** that Plaintiff's Amended Complaint **BE DISMISSED WITHOUT PREJUDICE** as to the following claims: (1) First Amendment denial of access to courts, interference with legal mail, improper opening of legal mail, and retaliation claims against Defendants Maher, Dobbs, and Goppert for failure to exhaust; (2) First Amendment denial of access to courts claim against Defendants Potter and Graziano for failure to state a claim; (3) First Amendment retaliation claim against Defendant Potter arising out of the destruction of the microwave oven in Plaintiff's housing unit; (4) First Amendment claim for retaliation against Defendant Graziano for failure to state a claim; (5) supervisory liability claim against Defendant Graziano for failure to state a claim; (6) supervisory liability claims against Defendant Haywood for failure to state a claim; (7) supervisory liability claims against Defendant Boll for generally failing to remedy wrongs, creating and allowing to continue customs and policies under which under which constitutional practices occur, and failure to supervise and monitor subordinates for failure to state a claim; (8) supervisory liability claim against Defendant Boll in connection with Plaintiff's denial of access to court claims against Defendants Potter and Graziano relating to the May 6, 2013, law library incident for failure to state a claim; (9) supervisory liability claim against Defendant Boll with regard to Plaintiff's denial of access to court, interference with legal mail, and improper opening of legal mail claims against Defendants Maher, Dobbs, and Goppert in connection with the amended complaint withheld from mailing to the court, for failure to state a claim; and (10) retaliation claims against Haywood and Boll for failure to state a claim; and it is further

**RECOMMENDED,** that Plaintiff be granted leave to amend with regard to all of the claims dismissed without prejudice for failure to exhaust administrative remedies and/or for failure to state a claim; and it is further

**\*26 RECOMMENDED,** that Defendants' motion to dismiss for failure to state a claim be denied as to the following claims: (1) Plaintiff's retaliation claim against Defendant Potter arising out of the May 6, 2013, law library incident; (2) Plaintiff's retaliation claim against Defendant Donovan with regard to taking Plaintiff's legal papers and kosher food; and (3) Plaintiff's supervisory liability claim against Defendant Boll with regard to Plaintiff's retaliation claim against Potter with regard to the May 6, 2013, law library incident; and it is hereby

**ORDERED,** that the Clerk provide Plaintiff with copies of all unpublished decisions cited herein in accordance with *Lebron v. Sanders,* 557 F.3d 76 (2d Cir.2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15 (2d Cir.1989) (per curiam)); 28 U.S.C. § 636(b)(1) (Supp.2013); Fed.R.Civ.P. 72, 6(a).

Filed Dec. 11, 2014.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 268933

## Footnotes

1    On January 9, 2015, the Court received a submission entitled "Plaintiff's Letter Motion to Correct the Record and Response to Magistrate Judge Dancks' December 11, 2014 Report and Recommendation ." Dkt. No. 49. In the submission, Plaintiff states that he is "not filing any objections to [the Order and Report–Recommendation]," but then states that he finds it necessary to "clarify a few facts in the interest of justice." *Id.* at 2–3. The Court has reviewed this document and has taken into consideration the clarifications that Plaintiff has provided.

1    The Background is taken from the allegations in Plaintiff's Amended Complaint, along with documents the Court may properly consider on a Rule 12(b)(6) motion to dismiss.

2    The sole respondent in the Article 78 proceeding was former DOCCS Commissioner, Brian Fischer. *See Guillory v. Fischer,* 111 A.D.3d 1005, 974 N.Y.S.2d 196 (3d Dep't 2013); *see also* Dkt. No. 37–4.

3    In Paragraph 29 of his Amended Complaint, Plaintiff has alleged that Donovan took half of his legal mail and half of his kosher food on May 10, 2013. (Dkt. No. 24. at ¶ 29.) In Paragraph 32, Plaintiff has alleged that on May 10, 2013, Donovan took all of his legal mail and kosher food. *Id.* at ¶ 32.

4    The Court will provide Plaintiff with copies of all unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders,* 557 F.3d 76 (2d Cir.2009) (per curiam). [Editor's note: Copies of unpublished decisions deleted for Westlaw purposes.]

5    "If nonexhaustion is clear from the face of the complaint (and incorporated documents) a motion to dismiss pursuant to Rule 12(b) (6) for failure to exhaust should be granted." *Fuentes v. Furco,* No. 13–CV–6846, 2014 WL 4792110, at *1, 2014 U.S. Dist. LEXIS 136261, at *2 (S.D.N.Y. Sept.25, 2014) (Nathan, D.J.) (quoting *McCoy v. Goord,* 255 F.Supp.2d 233, 251 (S.D.N.Y.2003)).

6    The Superintendent's determination is erroneously dated June 18, 2014. (Dkt. No. 24 at 56.) It is clear given Plaintiff's June 19, 2013 appeal to CORC that the Superintendent's determination was made on June 18, 2013. *Id.*

7    The Second Circuit has not yet decided whether the *Hemphill* rule has survived the Supreme Court's decision in *Woodford,* 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368. *See Amador v. Andrews,* 655 F.3d 89, 102 (2d Cir.2011).

8    In addition to seeking dismissal for failure to exhaust, Goppert asks that the Amended Complaint be dismissed as against him on the grounds that there are no factual allegations suggesting his involvement in the decision to hold or investigate Plaintiff's mail and no involvement by him in denying Plaintiff access to court. (Dkt. No. 37–5 at 20.) The same could be said of Dobbs, who is alleged to have done nothing more than meet with Plaintiff to return his legal mail after the investigation at Maher's direction. Because the Court is recommending dismissal for failure to exhaust, it makes no determination as to whether Plaintiff has stated a claim against Goppert or Dobbs but does note that in the event Plaintiff amends to reassert his claims against Goppert and Dobbs as they are alleged in the Amended Complaint, the Court will almost certainly recommend dismissal for failure to state a claim.

9    For reasons discussed below, the Court is recommending dismissal without prejudice of Plaintiff's retaliation claim against Graziano for failure to state a claim. If the recommendation is accepted by the District Court, the possibility that Plaintiff will be able successfully amend his claim against Graziano cannot be completely ruled out at present.

10   Presumably, Potter is free to move to dismiss Plaintiff's retaliation claim in *Morris* on the grounds that the same claim has been asserted in this action.

11   Plaintiff has also alleged that Potter refused to allow him to go to the law library in retaliation for informing Graziano about the refusal. *Id.* at 60. Since Plaintiff did not tell Graziano until after Potter had refused to allow him to go to the law library, the facts do not support a retaliation claim based upon Plaintiff's disclosure to Graziano. Furthermore, Plaintiff's conclusory assertion that Potter was retaliating against him for bringing lawsuits against the facility does not support a retaliation claim. *See Friedl v. City of New York,* 210 F.3d 79, 85 (2d Cir.2000) (Claims of retaliation must be "supported by specific and detailed factual allegations" and not stated "in wholly conclusory terms.") (quoting *Flaherty,* 713 F.2d at 13).

12   Defendants' reliance upon a general argument for dismissal of Plaintiff's unspecified retaliation claims is to some degree understandable given the random, disorganized, and largely conclusory nature of much of Plaintiff's Amended Complaint.

13   The Second Circuit has expressly declined to determine whether *Iqbal* eliminated any of the *Colon* bases for liability. *See Grullon v. City of New Haven,* 720 F.3d 133, 139 (2d Cir.2013).

14   The Second Circuit has, in any event, held that "confiscation ... [does] not constitute a Fourteenth Amendment violation for loss of property because of the availability of post-deprivation remedies" in the New York Court of Claims." *Koehl v. Dalsheim,* 85 F.3d 86, 88 (2d Cir.1996).

15   Paragraph 8 of Plaintiff's Amended Complaint, cited in Plaintiff's supervisory liability claim, references his parents' telephone call to Boll on May 9, 2013. *Id.* at ¶ 28. Paragraph 29 (Paragraph 30 is void) deals with the cell search and

Donovan taking Plaintiff's legal mail and kosher food. *Id.* at ¶¶ 29–30. Paragraph 35 contains allegations regarding the destruction of the microwave by Potter. *Id.* at ¶ 35. Paragraph 38 references Plaintiff's Article 78 proceeding against Boll for failing to stop the unspecified reckless retaliation, despite knowledge of the facts; refusal to address the destruction of Plaintiff's legal papers and confiscation of his kosher food in retaliation for his parent's contacting Boll; and destruction of the microwave by Potter. *Id.* at ¶ 38. Paragraphs 42 and 43 allege Haywood's refusal to comment on the findings of her investigation of Dobbs, Maher, and Goppert regarding Plaintiff's missed court deadline, and refusal to do anything after learning of the retaliation by Maher, Dobbs, Goppert, and Donovan. *Id.* at ¶¶ 42–43.

16   District courts in the Second Circuit have held that supervisory liability for failure to remedy constitutional violations after learning of them applies only to ongoing violations, not those which can no longer be remedied. *See, e.g., Bridgewater,* 832 F.Supp.2d at 348 (citing *Odom v. Calero,* No. 06 Civ. 15527(LAK)(GWG), 2008 WL 2735868, at *7, 2008 U.S. Dist. LEXIS 52408, at *18 (S.D.N.Y. July 10, 2008)).

17   Plaintiff's parents' call to Boll occurred prior to Donovan's alleged taking of Plaintiff's legal papers and kosher food (May 10, 2013) and Potter's alleged breaking of the microwave (May 18, 2013). (Dkt. No. 24 at ¶¶ 29, 35.) Therefore, the call cannot be found to have placed Boll on notice of those incidents.

18   It is well-established that verbal harassment alone is insufficient to support a constitutional claim. *See Feldman v. Lyons,* 852 F.Supp.2d 274, 280 (N.D.N.Y.2012).

19   The Court's analysis of Plaintiff's supervisory liability claim against Haywood relating to the withholding of Plaintiff's amended complaint from the mail applies to the same claim against Boll.

---

**End of Document**                              © 2019 Thomson Reuters. No claim to original U.S. Government Works.

JAVELL FOX, Plaintiff, v. SUPERINTENDENT LEE, et al., Defendants., Slip Copy (2018)

2018 WL 8576600

2018 WL 8576600
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

JAVELL FOX, Plaintiff,

v.

SUPERINTENDENT LEE, et al., Defendants.

No. 9:15-CV-0390 (TJM/CFH)
|
Filed 12/18/2018

**Attorneys and Law Firms**

APPEARANCES:

Javell Fox, 12-B-1626, Auburn Correctional Facility, P.O. Box 618, Auburn, New York 13021, Plaintiff pro se

Attorney General for the, State of New York, The Capitol, Albany, New York 12224, Attorney for Defendants, OF COUNSEL: LYNN M. KNAPP BLAKE, ESQ., Assistant Attorneys General

## REPORT-RECOMMENDATION AND ORDER [1]

CHRISTIAN F. HUMMEL U.S. MAGISTRATE JUDGE

**\*1** Plaintiff pro se Javell Fox ("plaintiff"), an inmate who was, at all relevant times, in the custody of the New York Department of Corrections and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983, alleging that defendants Superintendent ("Supt.") Lee, DOCCS Commissioner ("Comm.") Anthony Annucci, Correction Deputy Superintendent of Administration ("Deputy Superintendent") Wendland, Correction Deputy Superintendent Security ("DSS") Russo, Deputy Calao, Captain ("Capt.") Webbe, Lieutenant ("Lt.") Madison, Lt. Simmons, Lt. Sullivan, Sergeant ("Sgt.") Bey, Sgt. Connor, Sgt. Vanacore, Sgt. Barg, Corrections Officer ("C.O.") Kozak, C.O. Waugh, C.O. Miller, C.O. Henry, C.O. Williamson, C.O. S. Cruz, Corrections Steward C. Jennings, and Corrections Steward Diane Labatte – who at all relevant times, were employed at Eastern Correctional Facility ("Eastern") – violated his constitutional rights under the First, Fourth, Eighth, and Fourteenth Amendments. Dkt. No.

76 ("Am. Compl."). Presently pending before the Court is defendants' Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") seeking dismissal of this action on the grounds that plaintiff has failed to exhaust his administrative remedies. Dkt. No. 174. [2] Plaintiff opposed defendants' motion, and defendants filed a reply. Dkt. Nos. 184, 189. For the following reasons, it is recommended that defendants' motion be granted in part and denied in part.

## I. Background

### A. Factual Background

In support of this Motion for Summary Judgment, defendants filed a Statement of Material Facts. [3] Plaintiff was housed at Eastern from September 2014 until October 2015. Dkt. No. 174-2 ¶ 3. While incarcerated at Eastern, plaintiff filed five grievances with the Eastern Inmate Grievance Program ("IGP"). Id. ¶ 5. On December 10, 2014, plaintiff filed grievance ECF-26147-14, alleging that Eastern staff had harassed and retaliated against him because of his religious hairstyle. Id. ¶¶ 6, 7. Grievance ECF-26147-14 "does not address many of the issues raised in this litigation." Id. ¶ 8. Grievance ECF-26147-14 was forwarded to the Superintendent for review; on December 24, 2014, the Superintendent denied plaintiff's grievance. Id. ¶ 9. On December 29, 2014, plaintiff appealed the Superintendent's determination to the Central Office Review Committee ("CORC"). Id. ¶ 10. Plaintiff did not contact Eastern's IGP in writing pursuant to 7 N.Y.C.R.R. § 701.5(d)(3)(i) to determine whether his appeal had been filed and transmitted to CORC. Id. ¶ 11. On April 29, 2015, CORC denied plaintiff's appeal. Id. ¶ 12. In his appeal packet to CORC concerning grievance ECF-26147-14, plaintiff raised issues that he did not raise in his original grievance filed with the Inmate Grievance Review Committee ("IGRC"). Id. ¶ 13. In Fox v. Labatte – a prior case filed by plaintiff addressing many of the same issues – this Court found that "[p]laintiff cannot circumvent the procedures set forth by the facility by submitting a backdoor appeal to CORC by raising the issue for the first time, as he did with grievance number ECF-26147-14." Id. ¶ 14 (citing Dkt. No. 174-5 at 8).

**\*2** On February 23, 2015, plaintiff filed grievance ECF-26217-15, dated February 12, 2015, alleging that

JAVELL FOX, Plaintiff, v. SUPERINTENDENT LEE, et al., Defendants., Slip Copy (2018)
Case 9:18-cv-00339-GTS-ML    Document 60    Filed 06/27/19    Page 54 of 103

2018 WL 8576600

Eastern staff had retaliated against him and harassed him for writing grievances; that he had been sexually touched during frisks; and that an officer had read his legal mail. Dkt. No. 174-2 ¶¶ 16, 17. On April 21, 2015, the Superintendent denied plaintiff's grievance. Id. ¶ 18. On April 24, 2015, plaintiff appealed the Superintendent's determination to CORC; on July 8, 2015, CORC rendered a decision. Id. ¶¶ 19, 20. Of the five grievances plaintiff filed while incarcerated at Eastern, he appealed only grievances ECF-26147-14 and ECF-26217-15 to CORC. Id. ¶ 22. At his deposition, plaintiff testified that some of his grievances had been handled at the facility level, and "if you get your remedy at the facility level it's no need to appeal it and it's no need to go any further." Id. ¶ 23 (quoting Dkt. No. 174-4 [Pl. Dep.] at 30). Plaintiff filed the original complaint in this action on April 2, 2015. Id. ¶ 15 (citing Dkt. No. 1).

### 2. Procedural History

Plaintiff commenced this action on April 2, 2015. Dkt. No. 1. On December 19, 2016, plaintiff filed an amended complaint, which became the operative pleading. Dkt. Nos. 75, 76 ("Am. Compl."). Defendants filed an answer, and raised failure to exhaust administrative remedies as an affirmative defense. Dkt. Nos. 32, 82, 83. On July 17, 2017, plaintiff filed a motion for summary judgment. Dkt. No. 111. On August 18, 2017, defendants cross-moved to dismiss pursuant to Fed. R. Civ. P. 12(c). Dkt. No. 118. On February 2, 2018, the undersigned recommended that plaintiff's motion be denied. Dkt. No. 144. The undersigned further recommended that defendants' cross-motion be denied without prejudice, and with opportunity to renew by way of a motion for summary judgment limited to the issue of exhaustion. See id. On March 6, 2018, Senior District Court Judge Thomas J. McAvoy adopted the undersigned's Report-Recommendation and Order. Dkt. No. 157. In accordance with the Court's ruling, defendants now move for summary judgment on the grounds that he has failed to exhaust his administrative remedies.

### II. Discussion [4]

### A. Legal Standard

"A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party has the burden of showing the absence of disputed material facts by providing the Court with portions of "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which support the motion. FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A fact is material if it may affect the outcome of the case as determined by substantive law, such that "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "In determining whether summary judgment is appropriate, [the Court will] resolve all ambiguities and draw all reasonable inferences against the moving party." Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

To avoid summary judgment, a non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Carey v. Crescenzi, 923 F.2d 18, 19 (2d Cir. 1991) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)) (internal quotation marks omitted). A non-moving party must support such assertions by evidence showing the existence of a genuine issue of material fact. See id. "When no rational jury could find in favor of the non-moving party because the evidence to support is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." Gallo v. Prudential Services, Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

**\*3** Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit has stated,

[t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," ... that a pro se litigant's submissions must be construed "liberally," ... and that such submissions must be read to raise the strongest arguments that they "suggest," .... At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, ... or arguments that the submissions themselves do not "suggest," ... that we should not "excuse frivolous or vexatious filings by pro se litigants," ... and that pro se status "does not

JAVELL FOX, Plaintiff, v. SUPERINTENDENT LEE, et al., Defendants., Slip Copy (2018)
Case 9:18-cv-00339-GTS-ML   Document 60   Filed 06/27/19   Page 55 of 103
2018 WL 8576600

exempt a party from compliance with relevant rules of procedural and substantive law ....

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008).

### B. Procedural Issues

As a threshold matter, the undersigned will address plaintiff's argument that defendants' Motion for Summary Judgment must be denied, as the November 2017 motion deadline has expired. Dkt. No. 184-1 ("Pl. Opp.") at 4-5. On June 19, 2017, the Court issued a text order resetting the case deadlines in the underlying action pursuant to plaintiff's request to file a motion to amend his amended complaint. See Dkt. No. 106; Text Min. Entry dated June 16, 2017. The dispositive motions deadline was set for November 14, 2017. Dkt. No. 106. On June 29, 2017, plaintif f advised the Court that he would not be submitting a motion to amend his amended complaint. Dkt. No. 109. Instead, on July 17, 2017, plaintiff filed a motion for summary judgment. Dkt. No. 111. Defendants opposed plaintiff's motion, and cross-moved to dismiss pursuant to Fed. R. Civ. P. 12(c). Dkt. No. 118.

On February 5, 2018, the undersigned recommended that plaintiff's motion be denied, and defendants' cross-motion be denied without prejudice and with opportunity to renew by way of a combined motion to dismiss and motion for summary judgment limited to the issue of exhaustion. Dkt. No. 144. On March 6, 2017, Judge McAvoy accepted the undersigned's recommendations and remanded the case to set deadlines. Dkt. No. 157. On March 21, 2018, the undersigned established the new motion deadline. Dkt. No. 161. That same day, defendants requested an extension of the motion deadline, and, on March 23, 2018, the undersigned granted defendants' request and ordered that "defendants file their motion no later than May 21, 2018." Dkt. Nos. 162, 163.

On May 21, 2018, defendants filed a motion for summary judgment based on plaintiff's failure to exhaust his administrative remedies. Dkt. No. 174. Thus, the undersigned concludes that defendants' motion is timely and was filed prior to the applicable motion deadline.

### C. Exhaustion

Defendants argue that the underlying action must be dismissed as a matter of law because plaintiff failed to exhaust his administrative remedies. Dkt. No. 174-16 ("Def. Mem. of Law") at 4-7. Plaintiff contends that he exhausted his administrative remedies, and that "DOCCS grievance employees contradict[ed] [ ] grievance policies by intentionally failing to file and forward plaintiff's grievances in an attempt to prevent plaintiff from filing a success [sic] suit and cause the mishaps that[ ] [are] occuring now in reference to whether plaintiff exhausted his administrative remedies[.]" Pl. Opp. at 5-6.

**\*4** The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust any administrative remedies available to him or her before bringing an action for claims arising out of his or her incarceration. See Porter v. Nussle, 534 U.S. 516, 524 (2002); see also Woodford v. Ngo, 548 U.S. 81, 82 (2006). The exhaustion requirement applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter, 534 U.S. at 532. Further, the exhaustion requirement applies even where the prisoner seeks relief not available in the administrative grievance process, such as monetary damages. Id. at 524. To exhaust administrative remedies, the inmate must complete the full administrative review process set forth in the rules applicable to the correctional facility in which he or she is incarcerated. See Jones v. Bock, 549 U.S. 199, 218 (2007) (internal citation omitted).

Although the Supreme Court has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply." Ruggiero v. Cty. of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (citation omitted). The Supreme Court recently held that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement." Ross v. Blake, __ U.S. __,136 S. Ct. 1850, 1862 (2016). Thus, the "special circumstances" exception in Hemphill v. New York, 680 F.3d 680, 686 (2d Cir. 2004) is no longer consistent with the statutory requirements of the PLRA. Williams v. Priatno, 829 F.3d 118, 123 (2d Cir. 2016). [5]

Although Ross eliminates the "special circumstances" exception, courts must still consider the PLRA's "textual exception to mandatory exhaustion." Ross, 136 S. Ct.

at 1858. Under this exception, courts must determine whether administrative remedies were "available" to a prisoner. Id. The Supreme Court identified three circumstances where administrative remedies may be unavailable to a prisoner. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end — with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. at 1859 (citing Booth v. Churner, 532 U.S. 731, 736, 738 (2001)). "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Lastly, administrative remedies are unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

**1. Did Plaintiff Exhaust his Administrative Remedies?**[6]

**\*5** Defendants do not dispute that plaintiff filed five grievances while housed at Eastern. Dkt. No. 174-2 ¶ 5; Dkt. No. 174-13 ("Black Decl.") ¶ 6. However, defendants argue that plaintiff failed to exhaust his administrative remedies prior to commencing this action. See Def. Mem. of Law at 4-7. Defendants proffer the declarations of Assistant Director of the DOCCS IGP Rachael Seguin and current Eastern IGP Supervisor Anthony Black, along with copies of plaintiff's grievances, in support of their argument that plaintiff failed to exhaust his administrative remedies prior to commencing this action. See Black Decl.; Dkt. No. 174-9 ("Seguin Decl."); Dkt. No. 174-14. Mr. Black declared that a review of the inmate grievance records at Eastern demonstrated that plaintiff filed five grievances while housed at Eastern between December 2014 and February 2015. Black Decl. ¶ 6. On December 10, 2014, plaintiff filed grievance ECF-26147-14, alleging that he had received misbehavior reports, was keep locked, and harassed and retaliated against by staff because of his religious hairstyle. Id. ¶ 7; see Dkt. No. 174-14 at 31-34. Plaintiff submitted additional letters of complaint dated December 14, 2014, December 18, 2014, and December 20, 2014 alleging similar types of issues to the original grievance. Id. ¶ 8; see Dkt. No. 174-14 at 35-44. Eastern IGP consolidated these letters with grievance ECF-26147-14. See id. The Superintendent denied plaintiff's grievance on December 24, 2014, and plaintiff submitted an Appeal Statement and supporting exhibits to CORC. Id. ¶¶ 9, 10; see Dkt.

No. 174-14 at 45-48, 50-51, 52-103. Within the attached exhibits submitted to CORC, plaintiff included a letter dated December 25, 2014 stating new allegations against defendant Labatte regarding her failure to send plaintiff's legal mail. Id. ¶ 11; see Dkt. No. 174-14 at 74-75. Plaintiff's allegations against defendant Labatte were not addressed during the facility-level investigation or considered by the Superintendent. Id. CORC decided plaintiff's appeal on April 29, 2015. Seguin Decl. ¶ 16; see Dkt. No. 174-11 at 1.

In correspondence dated December 25, 2014 and January 18, 2015, plaintiff alleged that he had been denied copies of legal documents and/or interference with mail, and that the IGP was not properly processing his grievances. Black Decl. ¶ 12; see Dkt. No. 174-14 at 8-9. Plaintiff further submitted letters dated January 23, 2015 and February 24, 2015 alleging that defendant Labatte had falsified documents in connection with the disbursement of plaintiff's funds for legal copies, which resulted in missing court deadlines. Id. ¶ 13; see Dkt. No. 174-14 at 14-15, 21-23. These letters were consolidated into grievance ECF-26198-15. See id. ¶ 12; see Dkt. No. 174-14 at 8-9. On February 4, 2015, the Eastern Inmate Grievance Review Committee ("IGRC") denied plaintiff's grievance, and the next day, plaintiff appealed the IGRC's decision to the Superintendent. Id. ¶¶ 14, 15; see Dkt. No. 174-14 at 17-18. On April 9, 2015, the Superintendent denied plaintiff's grievance. Id. ¶ 16; see Dkt. No. 174-14 at 1. Plaintiff did not file an appeal with CORC. See Dkt. No. 174-15 at 3.

On January 15, 2016, plaintiff filed grievance ECF-26187-15 alleging that he had been frisked and threatened with a disciplinary ticket if he did not cut his hair; denied food; housed in a cell with no "feed-up slot"; injured himself attempting to retrieve his food tray; intolerable cell conditions. Black Decl. ¶ 18; see Dkt. No. 174-14 at 130-135. He also alleged due process violations. Id. On February 4, 2015, the Eastern IGRC denied plaintiff's grievance, and plaintiff appealed to the Superintendent. Id. ¶ 19; see Dkt. No. 174-14 at 112. On March 19, 2015, the Superintendent denied plaintiff's grievance. Id. ¶ 20; see Dkt. No. 174-14 at 111. Plaintiff did not file an appeal with CORC. See Dkt. No. 174-15 at 3.

On January 26, 2015, plaintiff filed grievance ECF-26197-15 dated January 18, 2015, alleging that he had been issued a misbehavior report because of his hairstyle; staff made false statements against him in a

JAVELL FOX, Plaintiff, v. SUPERINTENDENT LEE, et al., Defendants., Slip Copy (2018)
Case 9:18-cv-00339-GTS-ML    Document 60    Filed 06/27/19    Page 57 of 103
2018 WL 8576600

disciplinary hearing; staff subjected him to harassment, threats, and retaliation; and his hearing officer was biased and racist. Black Decl. ¶ 22; see Dkt. No. 174-14 at 144-48. Plaintiff submitted a letter dated January 23, 2015 alleging complaints similar to those set forth in the January 18, 2015 grievance, and that letter was consolidated with grievance ECF-26197-15. Id. ¶ 23; see Dkt. No. 174-14 at 149-50. On February 2, 2015, the Eastern IGRC "determined that the issues raised in [the grievance] were outside the purview of the IGRC." Id. ¶ 24; see Dkt. No. 174-14 at 141. That same day, plaintiff appealed the IGRC's decision to the Superintendent. See id. On March 19, 2015, the Superintendent denied plaintiff's grievance. Id. ¶ 25; see Dkt. No. 174-14 at 138. Plaintiff did not file an appeal with CORC. See Dkt. No. 174-15 at 3.

**\*6** On February 23, 2015, plaintiff filed grievance ECF-26217-15, dated February 12, 2015, alleging that non-party C.O. Kozak retaliated against him for using the grievance process by filing a misbehavior report; staff moved his cell, harassed him, and sexually harassed him in retaliation for writing grievances; staff sexually touched him during frisks; an officer read his legal mail; his claims were not being investigated. Black Decl. ¶ 27; see Dkt. No. 174-14 at 171-76. Plaintiff submitted a letter dated February 24, 2015 that was consolidated with grievance ECF-26217-15 alleging that plaintiff's letter of complaint to the Superintendent regarding sexual abuse was ignored. Id. ¶ 28; see Dkt. No. 174-14 at 177-78. On April 21, 2015, the Superintendent denied plaintiff's grievance. Id. ¶ 29; see Dkt. No. 174-14 at 170. Plaintiff appealed that determination to CORC on April 24, 2015. Id. ¶ 30; see Dkt. No. 174-14 at 170. CORC issued a decision on plaintiff's grievance on July 8, 2015. Seguin Decl. ¶ 26; see Dkt. No. 174-12 at 41. Plaintiff commenced this action on April 2, 2015. Dkt. No. 1.

It is well-settled that "the PLRA requires that an inmate plaintiff must exhaust his available administrative remedies before commencing a lawsuit in federal court with respect to prison conditions." Peoples v. Beldock, 212 F. Supp. 2d 141, 142 (W.D.N.Y. 2002); see McMillian v. Walters, No. 9:16-CV-0277 (MAD/DJS), 2017 WL 8894737, at \*2 (N.D.N.Y. Dec. 18, 2017) ("The defendant bears the burden of proving that the administrative remedies available to the plaintiff were not exhausted prior to the initiation of a civil action.") (citation omitted); White v. Drake, No. 10-CV-1034 (GTS/DRH), 2011 WL 4478988, at \*3 (N.D.N.Y. Aug. 11, 2011)

("Included within the IGP's exhaustion requirement is the prerequisite that the inmate file an appeal with CORC and receive a response from CORC prior to filing a federal lawsuit.") (citation omitted).

As to the grievances ECF-26147-14 and ECF-26217-15, the record is clear that plaintiff filed this action on April 5, 2015, and, at that time, CORC had yet to issue a decision on plaintiff's CORC appeals. See Dkt. No. 1; Seguin Decl. ¶¶ 16, 26; Dkt. No. 174-12 at 41; Dkt. No. 174-11 at 1. Despite plaintiff's assertions to the contrary, plaintiff did not fully exhaust his administrative remedies prior to filing this lawsuit because the CORC decisions were outstanding. Moreover, that plaintiff ultimately received CORC decisions on grievances ECF-26147-14 and ECF-26217-15 on April 29, 2015 and July 8, 2015 respectively, does not cure plaintiff's failure to exhaust. See Lopez v. Cipolini, 136 F. Supp. 3d 570, 582 (S.D.N.Y. 2015) (internal citation and quotation marks omitted) ("A plaintiff must exhaust his administrative remedies before filing his initial complaint in federal court .... [S]ubsequent exhaustion after suit is filed ... is insufficient."). Accordingly, plaintiff did not fully exhaust his administrative remedies as to grievances ECF-26147-14 and ECF-26217-15 prior to filing this lawsuit. See Peoples, 212 F. Supp. 2d at 142; McMillian, 2017 WL 8894737, at \*2; White, 2011 WL 4478988, at \*3. Further, the undersigned notes that insofar as plaintiff attempted to raise new issues for CORC's consideration in the appeal statements for grievances ECF-26147-14 and ECF-26217-15, this is improper and does not constitute exhaustion. See Fox v. Labatte, No. 9:15-CV-144 (LEK/DJS), 2016 WL 8716662, at \*4 (N.D.N.Y. Mar. 11, 2016) ("Furthermore, [p]laintiff cannot circumvent the procedures set forth by the facility by submitting a backdoor appeal to CORC by raising the issue for the first time, as he did with grievance number ECF 26147-14."); Robinson v. Rome, No. 9:10-CV-0993 (LEK/CFH), 2013 WL 3328222, at 8 (N.D.N.Y. July 2, 2013) ("One appeal raised assault allegations for the first time that were not in the originating grievance. Thus, CORC declined to consider those allegations and advised Robinson to file a separate grievance raising those issues.").

**\*7** As to plaintiff's remaining grievances, the record confirms Ms. Seguin and Mr. Black's statements that plaintiff never appealed grievances ECF-26198-15, ECF-26217-15, and ECF-26197-15 to CORC. See Dkt. No. 174-15 at 3; Black Decl. ¶¶ 17, 21, 26; Seguin Decl. ¶

JAVELL FOX, Plaintiff, v. SUPERINTENDENT LEE, et al., Defendants., Slip Copy (2018)
2018 WL 8576600
Case 9:18-cv-00339-GTS-ML    Document 60    Filed 06/27/19    Page 58 of 103

13; Dkt. No. 174-10 at 2. Therefore, defendants have met their burden of showing that plaintiff has failed to exhaust his administrative remedies.

### 2. Availability of Administrative Remedies

Plaintiff proffers a series of arguments suggesting that administrative remedies were unavailable to him. See generally Pl. Opp.

#### a. CORC Delay

Plaintiff argues that CORC's delay in rendering a decision on his grievances rendered the process unavailable. See id. at 6-7. Courts within this Circuit are split as to whether a delay by CORC constitutes unavailability that would excuse a plaintiff's failure to exhaust his administrative remedies. Compare Casey v. Brockley, No. 9:13-CV-01271 (DNH/TWD), 2015 WL 8008728, at *6 (N.D.N.Y. Nov. 9, 2015), report-recommendation and order adopted by 2015 WL 7864161 (N.D.N.Y., Dec. 03, 2015) ("CORC's failure to act within the time frame set out in the regulations does not constitute a special circumstance justifying the failure to exhaust.") and Ford v. Smith, No. 9:12-CV-1109 (TJM/TWD), 2014 WL 652933, at *3 (N.D.N.Y. Feb. 19, 2014) (concluding that CORC's six month delay in responding to his appeal did not render the grievance process unavailable) with Rossi v. Fischer, No. 13-CV-3167 (PKC)(DF), 2015 WL 769551, at *6 (S.D.N.Y. Feb. 24, 2015) ("Because prison officials failed to respond to plaintiff's grievance within the 30 day time limit set by regulation, administrative remedies were not available to the plaintiff and dismissal for failure to exhaust is not appropriate.") and Peoples v. Fischer, No. 11 Civ. 2694(SAS), 2012 WL 1575302, *6 (S.D.N.Y. 2012) on reconsideration in part, 898 F. Supp. 2d 618 (S.D.N.Y. 2012) ("When a prisoner complies with all of the administrative requirements and makes a good-faith effort to exhaust, he should not be denied the opportunity to pursue his grievance in federal court simply because the final administrative decision maker has neglected to issue a final administrative determination").

The record indicates that approximately four months elapsed between plaintiff's appeal of grievance ECF-26147-14 in December 2014 and when CORC ultimately rendered their decision in April 2015. Black

Decl. ¶¶ 9, 10; Dkt. No. 174-14 at 45-48, 50-51; Seguin Decl. ¶ 16; Dkt. No. 174-11 at 1. The record further demonstrates that approximately three months elapsed between plaintiff's appeal of grievance ECF-26217-15 in April 2015 and when CORC rendered their decision in July 2015. Black Decl. ¶ 30; Dkt. No. 174-14 at 170; Seguin Decl. ¶ 26; Dkt. No. 174-12 at 41. Plaintiff does not proffer evidence that he wrote to the Eastern IGRC or CORC inquiring as to the status of his appeals for grievances ECF-26147-14 and ECF-26217-15; in fact, plaintiff argues that "there is no policy that states that" he is required to "write anyone to see if his grievances were forward." Pl. Opp. at 9. However, pursuant to N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5(d)(3)(i), "[i]f a grievant does not receive a copy of the written notice of receipt within 45 days of filing an appeal [to CORC], the grievant should contact the IGP supervisor in writing to confirm that the appeal was filed and transmitted to CORC." N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(d)(3)(i). The same language regarding plaintiff's ability to contact the IGP supervisor regarding his appeal status appears in DOCCS Directive 4040, a copy of which plaintiff has provided to the Court. Further, Mr. Black declared that based on his review of Eastern's records, plaintiff "never contacted Eastern's [IGP supervisor] in writing ... to confirm that any of his appeals were filed and transmitted to CORC." Black Decl. ¶ 34. Thus, the undersigned concludes that CORC's approximately four-month delay in ECF-26147-14 and three-month delay in ECF-26217-15 does not excuse plaintiff from the exhaustion requirement. Cf. Henderson v. Annucci, No. 14-CV-445A, 2016 WL 3039687, at *10 (W.D.N.Y. Mar. 14, 2016) ("Since plaintiff has been awaiting a decision from CORC for more than two years with respect to his grievance relating to the October 22, 2013 incident, such an administrative remedy is no longer available to him for purposes of exhaustion under the PLRA.").

#### b. Non-Grievable Issue

**\*8** Plaintiff contends that an unspecified person told him that "his claims pertaining to the hearing officers were non-grievable pursuant to Directive 4040 701.3(e)(1) [7] as [he] had an appeal mechanism." Pl. Opp. at 8. Thus, based on plaintiff's interpretation of DOCCS' regulations and procedures, inmates are required to raise claims concerning hearing officer biases, related to disciplinary hearings, during the disciplinary process. See id. Plaintiff's

2018 WL 8576600

argument is misplaced. Courts in this District have held that "[t]hough a disciplinary appeal is sufficient to exhaust a claim that Plaintiff was deprived of due process at a disciplinary hearing, 'allegations of staff misconduct related to the incidents giving rise to the discipline must be grieved.' " Barker v. Smith, No. 16-CV-76, 2017 WL 3701495, at *3 (S.D.N.Y. Aug. 25, 2017) (quoting Scott v. Gardner, 287 F. Supp. 2d 477, 489 (S.D.N.Y. 2003), on reconsideration in part, 344 F. Supp. 2d 421 (S.D.N.Y. 2004), and on reconsideration in part, 2005 WL 984117 (S.D.N.Y. Apr. 28, 2005) ); see also Labounty v. Johnson, 253 F. Supp. 2d 496, 501 (W.D.N.Y. 2003) ("An appeal from a disciplinary hearing does not satisfy the grievance exhaustion requirement for a [constitutional] claim, even if the hearing is based on the same set of facts underlying the grievance."). However, "[w]here an inmate claims both that there was official misconduct in the events leading to the disciplinary hearing and that the hearing itself was constitutionally flowed, he must follow both DOCCS procedures." Kimbrough v. Fischer, No. 9:13-CV-0100 (FJS/TWD), 2014 WL 12684106, at *6 (N.D.N.Y. Sept. 29, 2014) (citing Rosales v. Bennett, 297 F. Supp. 2d 637, 639 (W.D.N.Y. 2004)). An inmate

> cannot satisfy the PLRA's exhaustion requirement as to grievable matters that do not directly relate to the conduct of a hearing simply by alluding to them in his administrative appeal of the hearing decision. For example, if at the hearing the inmate asserts, or attempts to assert, allegations of misconduct by the correction officers involved in the underlying events, the inmate cannot adequately exhaust his remedies for PLRA purposes through his administrative appeal of the hearing decision; he must separately grieve the alleged misconduct of the officers.

Kimbrough, 2014 WL 12684106, at *6 (quoting Rosales, 297 F. Supp. 2d at 639). Thus, plaintiff's argument that his claims regarding hearing officer bias during his disciplinary hearings constituted non-grievable issues is

contrary to well-settled law; plaintiff was required to grieve his claims against the individual hearing officers using the grievance procedure.

Even if the undersigned were to interpret plaintiff's argument as stating that DOCCS' regulations regarding the proper grievance procedures for his claims against the hearing officers were confusing and irreconcilable, plaintiff's excuse would still lack merit. The record demonstrates that plaintiff filed a series of letters that the Eastern IGP consolidated into grievance ECF-26197-15, wherein he suggests that his disciplinary hearing officers were biased against him, and thus, not fair and impartial hearing officers. See Dkt. No. 174014 at 144-48. That plaintiff filed at least one grievance alleging bias on behalf of the hearing officers at his disciplinary hearings casts doubt as to whether plaintiff could attempt to allege that the process was confusing.

*9 As such, plaintiff's argument regarding non-grievable issues lacks merit.

### c. Other Arguments

Plaintiff offers a series of other arguments in an attempt to establish that the grievance procedure was unavailable. First, plaintiff states that "[a]ll confinement issues were handled at the facility level pursuant to Directive 4040 701.5(b)(1)." Pl. Opp. at 8. Directive 701.5(b)(1) concerns the informal resolution of a grievance prior to the commencement of a grievance hearing. See N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(b)(1). [8] Thus, plaintiff seems to suggest that the informal resolution of his conditions of confinement claims at the facility level constituted proper exhausted under PLRA. See Pl. Opp. at 8. Plaintiff specifies that (1) after complaining that he had to climb-up bars to receive his food in his cell, he was transferred to a cell with a "feed-up slot"; (2) when he complained that holes in his cell window caused him to be "very cold," he was moved to a housing unit with heat; and (3) when he complained he did not have clean clothes and only one set of pants, staff gave him the appropriate amount of clothing and his dirty clothes were washed. See Dkt. No. 18-2 at 3. However, plaintiff filed grievance ECF-26187-15 alleging these claims; grievance ECF-26187-15 was denied at both the IGRC level an the Superintendent's level. See Black Decl. ¶¶ 18, 19; Dkt.

JAVELL FOX, Plaintiff, v. SUPERINTENDENT LEE, et al., Defendants., Slip Copy (2018)
Case 9:18-cv-00339-GTS-ML    Document 60    Filed 06/27/19    Page 60 of 103
2018 WL 8576600

No. 174-14 at 112, 130-135. Plaintiff never appealed that grievance to CORC. See Dkt. No. 174-15 at 3.

Section 701.5(b)(1) refers to an informal resolution that occurs after plaintiff files his grievance, but *before* the full committee conducts a hearing to either answer the grievance or make a recommendation. See N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(b)(1). Thus, plaintiff's argument that his conditions of confinement claims were handled at the facility-level pursuant to section 701.5(b)(1) is misplaced as it is clear that plaintiff filed a grievance regarding these claims, and appealed the initial denial of that grievance to the Superintendent. See Black Decl. ¶¶ 18, 19; Dkt. No. 174-14 at 112, 130-135. There is no indication that the Eastern IGRC administratively closed plaintiff's grievance if he, in fact, received his requested relief. As section 701.5(b)(1) provides for informal resolution to occur up to sixteen calendar days after a grievance is filed, and because plaintiff's grievances were not informally resolved during that time, but, at the earliest, after the Superintendent's decision on grievance ECF-26187-15, it cannot be said that plaintiff's grievances were "handled at the facility level pursuant to Directive 4040 701.5(b)(1)." Pl. Opp. at 8; cf. Pellis v. Hobbs, No. 16 CV 4023 (VB), 2018 WL 3212463, at *5 (S.D.N.Y. June 29, 2018) (denying the defendants' motion for summary judgment where the plaintiff's grievance was informally resolved during the sixteen-day time frame set forth in section 701.5(b)(1)).

 *10 The undersigned reaches a similar result as to plaintiff's excessive force claims against C.O. Cruz. Plaintiff claims that Lt. Simmons told him not to file a grievance against C.O. Cruz because plaintiff would "only make things worse on [him]self"; instead, Lt. Simmons transferred plaintiff to a different housing unit away from C.O. Cruz. Pl. Opp. at 8-9. Although these facts, on their face, would suggest that the grievance was informally resolved pursuant to section 701.5(b)(1), plaintiff has failed to provide enough information to defeat defendants' motion. At first read, it seems as though plaintiff's excessive force claim against C.O. Cruz encompasses the same conduct as his sexual harassment claim, [9] see Dkt. No. 144 at 55-61, and, therefore, was grieved pursuant to grievance ECF-26217-15. Black Decl. ¶ 27; see Dkt. No. 174-14 at 171-76. However, plaintiff states that he did not file a grievance against C.O. Cruz for this conduct, see Pl. Opp. at 8-9; thus the undersigned is unsure as to whether the pat frisk that forms plaintiff's

excessive force claim is the same incident as his sexual harassment claim. Even if plaintiff's excessive force claim was grieved in grievance ECF-26217-15, the undersigned is unable to determine if this informal resolution occurred within the sixteen-day time frame set forth in section 701.5(b)(1) as plaintiff does not provide dates as to when the conversation with Lt. Simmons occurred. Thus, plaintiff has failed to demonstrate that his excessive force claim against C.O. Cruz should be excused from the exhaustion requirement.

Second, plaintiff argues that his "sexual harassment issues were handled pursuant to 701.3(i)(1)," and that he "does not have to exhaust any remedies pertaining to sexual harassment claims [because] all [he] had to do was file a complaint pursuant to the PREA Act." Pl. Opp. at 8. Plaintiff is correct that "an inmate is not required to file a grievance concerning an alleged incident of sexual abuse or sexual harassment to satisfy [PLRA] exhaustion requirement ... before bringing a lawsuit regarding an allegation of sexual abuse as long as the matter was reported." N.Y. COMP. CODES R. & REGS. tit. 7, § 701.3(i)(1).

> For purposes of the Prison Rape Elimination Act (PREA) Standards (28 C.F.R. § 115.52) and the exhaustion requirement, any allegation concerning an incident of sexual abuse or sexual harassment ... shall be deemed exhausted if official documentation confirms that:
>
> > (1) an inmate who alleges being the victim of sexual abuse or sexual harassment reported the incident to facility staff; in writing to Central Office Staff; to any outside agency that the Department has identified as having agreed to receive and immediately forward inmate reports of sexual abuse and sexual harassment to agency officials under the PREA Standards (28 C.F.R. § 115.51(b)); or to the Department's Office of the Inspector General;
>
> or
>
> > (2) a third party reported that an inmate is the victim of sexual abuse and the alleged victim confirmed the allegation upon investigation.

Id. The record indicates that plaintiff filed grievance ECF-26217-15 alleging that C.O. Cruz sexually harassed him during a pat frisk. See Dkt. No. 174-14 at 173-74.

The undersigned finds that by virtue of plaintiff filing a grievance concerning the alleged sexual harassment, he has "report[ed] the incident to facility staff" pursuant to section 701.3(i)(1). N.Y. COMP. CODES R. & REGS. tit. 7, § 701.3(i)(1). Further, defendants have proffered an email from former Eastern IGP Supervisor Thomas Mauro to defendant Russo that, in discussing plaintiff's grievance ECF-26217-15, states, "[t]his complaint was also forwarded to you to be logged in PREA book." Dkt. No. 174-14 at 159. Defendants also proffer a memorandum from the director of the IGP to the Office of Special Investigations ("OSI") stating that plaintiff's grievance alleging sexual harassment was being investigated by OSI. See Dkt. No. 174-12 at 50. Thus, because official documentation exists that plaintiff reported his claims of sexual harassment to Eastern facility staff, the undersigned finds that plaintiff has exhausted his sexual harassment claim against C.O. Cruz.

**\*11** Next, plaintiff seems to suggest that he was prevented from filing grievances because "DOCCS grievance employees contradict [the] grievance policies by intentionally failing to file and forward plaintiff's grievances in an attempt to prevent plaintiff from filing a success[ful] suit and cause the mishaps that[ are] occur[r]ing now." Pl. Opp. at 5. "Administrative remedies are not available if prison officials 'interfere[ ] with an inmate's pursuit of relief' by, for example, misinforming an inmate as to the applicability of the grievance process to the inmate's claims." Kendall v. Cuomo, No.1:12-CV-3438 (ALC)(RLE), 2017 WL 4162338, at \*3 (S.D.N.Y. Sept. 19, 2017) (citing Ross, 136 S.Ct. at 1860); see also Veloz v. New York, 339 F. Supp. 2d 505, 515-16 (S.D.N.Y. 2004) (noting that "[w]hen an inmate's reasonable attempts to exhaust administrative remedies are impeded by a correctional officer" the remedy is unavailable). The undersigned concludes that there is no evidence in the record that any of the defendants interfered with plaintiff's pursuit of the grievance procedure. In fact, the record clearly establishes that plaintiff was able to access the grievance process as he filed five grievances while housed at Eastern. See Black Decl. ¶ 6. Moreover, plaintiff does not allege what claims defendants allegedly prevented him from filing. Thus, plaintiff's bare assertions that defendants thwarted his attempts to file grievances are insufficient to render the grievance process unavailable.

Finally, plaintiff argues the filing of his amended complaint cured the exhaustion issue as his claims were exhausted at the time his amended complaint was filed. Pl. Opp. at 9-10. Plaintiff's argument lacks merit. It is well-settled that "a post-exhaustion amendment of the complaint cannot cure an exhaustion defect existing at the time the action was commenced." Guillory v. Haywood, No. 9:13-CV-1564, 2015 WL 268933, \*11 (N.D.N.Y. Jan. 21, 2015) (citing Kasiem v. Switz, 756 F. Supp. 2d 570, 575 (S.D.N.Y. 2010); see Shepherd v. Lempke, No. 9:10-CV-1524, 2017 WL 1187859, at \*3 (N.D.N.Y. Mar. 30, 2017) (citing cases). Thus, plaintiff's filing of an amended complaint does not cure his exhaustion defect.

Accordingly, it is recommended that defendants' motion be denied as to plaintiff's sexual assault claim against C.O. Cruz as plaintiff has demonstrated that he exhausted his administrative remedies with respect to that claim. It is further recommended that defendants' motion as to all other claims be granted for failure to exhaust. [10]

### III. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby

**RECOMMENDED**, that defendants' Motion for Summary Judgment (Dkt. No. 174) be **GRANTED IN PART**:

> (1) Insofar as it seeks dismissal of plaintiff's First Amendment freedom of expression and free exercise claims against defendants Lee, Russo, Madison, Simmons, Sullivan, Wendland, Webbe, Bey, Vanacore, Waugh, Miller, Williamson, and Cruz for failure to exhaust
>
> (2) Insofar as it seeks dismissal of plaintiff's First Amendment retaliation claims against defendants Simmons, Madison, Cruz, Williamson, Bey, Wendland, Kozak, Waugh, Webbe, Russo, Lee, Miller, Vanacore, Sullivan, Connor, and Barg for failure to exhaust,
>
> (3) Insofar as it seeks dismissal of plaintiff's First Amendment interference with mail claims against defendants Calao, Jennings, and Labatte for failure to exhaust,

JAVELL FOX, Plaintiff, v. SUPERINTENDENT LEE, et al., Defendants., Slip Copy (2018)
Case 9:18-cv-00339-GTS-ML    Document 60    Filed 06/27/19    Page 62 of 103
2018 WL 8576600

(4) Insofar as it seeks dismissal of plaintiff's claim that defendants Webbe, Simmons, and Lee denied him access to magazines for failure to exhaust,

(5) Insofar as it seeks dismissal of plaintiff's Fourth Amendment claims pursuant to a search/strip search and cell search against defendants Connor, Williamson, and Cruz for failure to exhaust,

**\*12**  (6) Insofar as it seeks dismissal of plaintiff's Eighth Amendment conditions of confinement claims against defendants Lee, Webbe, Simmons, Sullivan, and Henry for failure to exhaust,

(7) Insofar as it seeks dismissal of plaintiff's Fourteenth Amendment due process claims against defendants Lee, Webbe, Russo, Simmons, Wendland, and Sullivan for failure to exhaust,

(8) Insofar as it seeks dismissal of plaintiff's supervisory liability claims against defendants Lee and Annucci for failure to exhaust,

the motion be **GRANTED**, and plaintiff's claims be **DISMISSED** with prejudice; and it is further

**RECOMMENDED**, that defendants' Motion for Summary Judgment (Dkt. No. 174) be **DENIED IN PART**:

(1) Insofar as it seeks dismissal of plaintiff's Eighth Amendment sexual harassment claims against C.O. Cruz,

the motion be **DENIED**; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED R. CIV. P. 6(a), 6(e), 72. [11]

**All Citations**

Slip Copy, 2018 WL 8576600

Footnotes

1   This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

2   Plaintiff's Motion for Contempt, Dkt. No. 200, will be addressed in a subsequent decision.

3   Local Rule 7.1(a)(3) states:
    Summary Judgment Motions
    Any motion for summary judgment shall contain a Statement of Material Facts. The Statement of Material Facts shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established. The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits.
    The opposing party shall file a response to the Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute. Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.

2018 WL 8576600

N.D.N.Y. L.R. 7.1(a)(3).

4    All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

5    In Williams v. Priatno, the Second Circuit debated Ross's effect on Hemphill's estoppel exception. See Williams, 829 F.3d at 123. The Williams Court stated that "Ross largely supplants our Hemphill inquiry by framing the exception issue entirely within the context of whether administrative remedies were actually available to the aggrieved inmate." Id. (citing Ross, 136 S. Ct. at 1858-59).

6    First, the inmate must file a complaint with an inmate grievance program ("IGP") clerk within twenty-one days of the alleged incident. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(a)(1). An IGP representative has sixteen calendar days to informally resolve the issue. Id. § 701.5(b)(1). If no informal resolution occurs, the IGRC must hold a hearing within sixteen days of receipt of the grievance and must issue a written decision within two working days after the conclusion of the hearing. Id. §§ 701.5(b)(2)(i)-(ii). If the determination is unfavorable to the inmate, the inmate may appeal the IGRC's determination to the facility superintendent within seven calendar days of receipt of the determination. Id. § 701.5(c)(1). If the superintendent's determination is unfavorable, the inmate may appeal to CORC within seven days after receipt of the superintendent's determination. Id. §§ 701.5(d)(i)-(ii). CORC must "review each appeal, render a decision on the grievance, and transmit its decision to the facility, with reasons stated, for the [inmate], the grievance clerk, the superintendent, and any direct parties within thirty (30) calendar days from the time the appeal was received." Id. § 701.5(d)(3)(ii). Parties do not dispute that at all relevant times, DOCCS had in place a three-step inmate grievance program. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5.

7    A list of "non grievable" issues is set forth in Section 701.3(e) and DOCCS' Directive # 4040:

     e) Non-grievable issues.

     (1) An individual decision or disposition of any current or subsequent program or procedure having a written appeal mechanism which extends review to outside the facility shall be considered non-grievable.

     (2) An individual decision or disposition of the temporary release committee, time allowance committee, family reunion program or media review committee is not grievable. Likewise, an individual decision or disposition resulting from a disciplinary proceeding, inmate property claim (of any amount), central monitoring case review or records review (freedom of information request, expunction) is not grievable. In addition, an individual decision or disposition of the Commissioner, or his designee, on a foreign national prisoner application for international transfer is not grievable.

     (3) The policies, rules, and procedures of any program or procedure, including those above, are grievable.

     Note: If an inmate is unsure whether an issue is grievable, he/she should file a grievance and the question will be decided through the grievance process in accordance with section 701.5 of this Part.

     N.Y. COMP. CODES R. & REGS. tit. 7, § 701.3.

8    Section 701.5(b)(1) and DOCCS Directive 4040 states: "Informal resolution. The representatives of the IGRC shall have up to 16 calendar days after a grievance is filed to resolve it informally. If the matter is resolved to the satisfaction of the grievant, the resolution and the grievant's consent must be entered on the inmate grievance complaint form." N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(b)(1).

9    Because excessive force is a separate cause of action, plaintiff's claim is not deemed exhausted through the filing of his PREA complaint. See Allen v. Graham, No. 9:16-CV-47 (GTS/ATB), 2017 WL 9511168, at *7 (N.D.N.Y. Sept. 26, 2017) ("Because DOCCS created this exception solely for sexual abuse and sexual harassment claims, plaintiff's complaint to mental health staff would not exhaust other claims arising from the July 30, 2014 incident, such as an Eighth Amendment excessive force claim."); see also supra, at 23-24.

10   To the extent that the undersigned recommends dismissal of plaintiff's claims, those claims should be dismissed with prejudice as he would be barred by the three-year statute of limitations from reinstating this suit, and "[b]ecause this and any subsequently amended or reinstituted complaint is subject to dismissal for failure to exhaust administrative remedies, it would be futile to grant plaintiff leave to amend or allow him to reinstitute the suit." Baez v. Kahanowicz, 469 F. Supp. 2d 171, 180 (S.D.N.Y. 2007); see Bridgeforth v. Bartlett, 686 F. Supp. 2d 238, 240 (W.D.N.Y. 2010) ("Since the time limits for plaintiff to file an administrative appeal have long since passed, administrative remedies are no longer available to him[.]").

11   If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(C).

2018 WL 8576600

**End of Document**                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 7160117
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Jesus RODRIGUEZ, Plaintiff,

v.

David ROSNER, Medical Doctor,
Watertown Correctional Facility, Defendant.

No. 9:12–CV–958 (TJM/ATB).
|
Dec. 5, 2012.

**Attorneys and Law Firms**

Jesus Rodriguez, pro se.

Christopher W. Hall, AAG, for the Defendants.

**ORDER and REPORT–RECOMMENDATION**

ANDREW T. BAXTER, United States Magistrate Judge.

**\*1** This matter has been referred to me for Report and Recommendation, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N .Y. 72.3(c), by the Honorable Thomas J. McAvoy, Senior United States District Judge.

In this civil rights complaint, plaintiff alleges that defendant Rosner denied plaintiff constitutionally adequate medical care when he refused to prescribe orthopedic boots for plaintiff. (Compl. ¶ 6; Dkt. No. 1). Plaintiff subsequently filed a substantial number of documents in support of his complaint. (Dkt. No. 13). Plaintiff seeks injunctive as well as substantial monetary relief. (Compl.¶ 8).

Presently before the court is defendant's motion to dismiss this action pursuant to Fed.R.Civ.P. 12(b)(6). (Dkt. No. 16). Plaintiff has responded in opposition to the motion to dismiss and has filed a separate motion for appointment of counsel. (Dkt.Nos.19, 20). For the following reasons this court will recommend granting defendant's motion and dismissing this action without prejudice to plaintiff re-filing the action. The court will also order the denial of plaintiff's motion for appointment of counsel without prejudice.

**DISCUSSION**

**I.** *Facts*

In his complaint, plaintiff alleges that he is a Type II diabetic, who has had skin grafts taken from the soles of his feet, leaving him with abnormally thin skin on the bottom of his feet. (Compl. Facts ¶¶ 2–3). Plaintiff states that he is in constant discomfort due to his condition, and in May of 2011, while he was incarcerated at Oneida Correctional Facility, he was referred to Dr. Baldauf, a podiatrist, who determined that plaintiff suffered from plantar fasciitis. (*Id.* ¶¶ 8–9). Plaintiff states that Dr. Baldauf recommended that plaintiff be fitted for orthopedic boots. (*Id.* ¶ 11). Impressions of plaintiff's feet were taken while he was still at Oneida, and the boots were ordered in July of 2011. (*Id.* ¶ 12).

Prior to receiving his boots, plaintiff was transferred to Watertown Correctional Facility, where he was examined by defendant Dr. Rosner. (*Id.* ¶¶ 13–15). Plaintiff states that he made several requests, but was never given the boots. (*Id.* ¶ 14). Dr. Rosner, who is not a podiatrist, conducted his own examination of plaintiff's feet and determined that plaintiff did not require orthopedic boots. (*Id.* ¶ 16). Plaintiff claims that the medical records supporting Dr. Baldauf's diagnosis and prescription of orthopedic boots was missing from plaintiff's file. (*Id.* ¶ 20). Plaintiff believes that defendant Rosner has intentionally destroyed or hidden these records. (*Id.* ¶ 21).

Plaintiff states that defendant Rosner refused to locate these records, even though plaintiff filed a grievance. (*Id.* ¶ 22). Plaintiff also claims that defendant Rosner "deflects" all investigations by stating that plaintiff refused new state-issued boots, but never mentions that these "new" boots were not the orthopedic boots that plaintiff had been prescribed at Oneida. (*Id* .¶ 23).

**II.** *Motion to Dismiss*

**A. Legal Standards**

**\*2** To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

WESTLAW © 2019 Thomson Reuters. No claim to original U.S. Government Works.

"[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Id.* (citing *Bell Atl. Corp.,* 550 U.S. at 555). Plaintiff's factual allegations must also be sufficient to give the defendant " 'fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atl. Corp.,* 550 U.S. at 555 (citation omitted).

When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 71 (2d Cir.1995). The court must heed its particular obligation to treat pro se pleadings with liberality. *Phillips v. Girdich,* 408 F.3d 124, 128 (2d Cir.2005); *Tapia–Ortiz v. Doe,* 171 F.3d 150, 152 (2d Cir.1999) (*per curiam* ).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Id.* (citing *Bell Atl. Corp.,* 550 U.S. at 555). Plaintiff's factual allegations must also be sufficient to give the defendant " 'fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atl. Corp.,* 550 U.S. at 555 (citation omitted).

When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 71 (2d Cir.1995). The court must heed its particular obligation to treat pro se pleadings with liberality. *Phillips v. Girdich,* 408 F.3d 124, 128 (2d Cir.2005); *Tapia–Ortiz v. Doe,* 171 F.3d 150, 152 (2d Cir.1999) (*per curiam* ).

In deciding a motion to dismiss, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits and any statements or documents incorporated into the complaint by reference. *Rothman v. Gregor,* 220 F.3d 81, 88 (2d Cir.2000); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d at 72 (the court may take into consideration documents referenced in or attached to the complaint in deciding a motion to dismiss, without converting the proceeding to one for summary judgment).

### B. Application

**\*3** Subsequent to the filing of his complaint, plaintiff submitted documents in support of the complaint, including a substantial number of medical records, many of which address the issue of his request for special boots. (Dkt. No. 13). Among the records submitted by plaintiff are his grievance documents. (Dkt. No. 13 at 34–43). Plaintiff also included a complaint that he made to the New York State Department of Health, Office of Professional Misconduct, [1] regarding defendant's denial of orthopedic boots and a complaint to the New York State Office of the Inspector General. (Dkt. No. 13 at 44–47, 48). On October 25, 2012, plaintiff filed a letter, attaching a copy of the final response to his grievance by the Central Office Review Committee. (Dkt. No. 15). This court may consider all of the documents attached to the complaint, or submitted in conjunction with the complaint in its decision, although it need not consider all of them in order to decide this motion.

### III. *Exhaustion of Administrative Remedies*

#### A. Legal Standards
The Prison Litigation Reform Act, (PLRA), 42 U.S.C. § 1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action. This requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim. *See Giano v. Goord,* 380 F.3d 670, 675–76 (2d Cir.2004) (citing *Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) (exhaustion requirement applies, *inter alia,* to excessive force claims)). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675.

The failure to exhaust is an affirmative defense that must be raised by the defendants. *Jones v. Bock,* 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); *Johnson v. Testman,* 380 F.3d 691, 695 (2d Cir.2004). As an affirmative defense, it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements. *See, e.g, Key v. Toussaint,* 660 F.Supp.2d 518, 523 (S.D.N.Y.2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *Jones v. Bock,* 549 U.S. at 218–19 (citing *Woodford v. Ngo,* 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006)). In *Woodford,* the Court held that "proper" exhaustion means that the inmate must *complete* the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. 548 U.S. at 90–103. In *Neal v. Goord,* 267 F.3d 116, 122 (2d Cir.2001), *overruled on other grounds by Porter v. Nussle,* 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002), the Second Circuit specifically held that completion of the administrative review process includes receiving the decision on the final appeal of a grievance prior to filing the federal action.

**\*4** The grievance procedure in New York is a three-tiered process. The inmate must first file a grievance with the Inmate Grievance Resolution Committee (IGRC). N.Y. Comp.Codes R. & Regs., tit. 7 §§ 701.5(a)(1) and (b). An adverse decision of the IGRC may be appealed to the Superintendent of the Facility. *Id.* § 701.5(c). Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee (CORC). *Id.* § 701.5(d). The court also notes that the regulations governing the Inmate Grievance Program encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance." *Id.* § 701.3(a) (Inmate's Responsibility).

At the same time that the Second Circuit decided *Giano,* it also decided four other related cases, clarifying the law in the Second Circuit regarding the PLRA's exhaustion requirement, and specifying various instances in which the requirement could be waived or excused.[2] Based on these cases, the Second Circuit developed a "three part

inquiry" to determine whether an inmate has fulfilled the PLRA exhaustion requirement. *See Brownell v. Krom,* 446 F.3d 305, 311–12 (2d Cir.2006) (citing *Hemphill,* 380 F.3d at 686). The inquiry asks (1) whether the administrative remedies are available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement. *Id.*

Although the Second Circuit has not explicitly held that *Hemphill* remains good law after *Woodford,* it has applied the three-part inquiry in recent cases. *See, e.g., Macias v. Zenk,* 495 F.3d 37 (2d Cir.2007); *Davis v. State of New York,* 311 F. App'x 397, 399 (2d Cir.2009); *Snyder v. Whittier,* 428 F. App'x 89, 91 (2d Cir.2011).[3]

### 2. Application

Defendant argues that plaintiff has admittedly failed to exhaust his administrative remedies. In his complaint, signed on June 10, 2012, and filed on June 13, 2012, plaintiff states that he filed his grievance on April 2, 2012, received an adverse decision and appealed to the Superintendent on April 26, 2012. (Compl.

¶ 4(b)(i)). Plaintiff states that he appealed the Superintendent's decision to the CORC on May 4, 2012, but that "[n]o decision [was] rendered to date." (*Id.* ¶ 4(b)(ii)). Plaintiff specifically states that the "appeal [is] still pending at CORC in Albany." (*Id.*) Thus, at the time plaintiff filed his complaint, he had not exhausted his administrative remedies.

In the complaint, plaintiff cited no reason for failing to wait for the CORC's decision. The first two *Brownell* factors do not apply to this case. Plaintiff does not claim that the grievance procedure was not "available," nor does he claim that defendant's actions prevented plaintiff from utilizing the available procedures. Thus, the court must consider whether there are "special circumstances" justifying plaintiff's failure to exhaust. Based on the facts in this case, the inquiry will be whether there are special circumstances justifying plaintiff's failure to await the CORC decision.

**\*5** Plaintiff ultimately received a decision by the CORC, dated September 26, 2012, accepting his grievance to the extent that "a referral was submitted for a consult for

special boots for the grievant on 9/18/12." (Dkt. No. 15). Plaintiff filed the CORC decision with the court on October 25, 2012. (*Id.*) While it is true that this decision means that plaintiff has now exhausted his administrative remedies, the Second Circuit has held that a plaintiff must exhaust his remedies *before* filing his federal action, and that the court must dismiss plaintiff's complaint notwithstanding his subsequent exhaustion. 267 F.3d at 122–23.

In plaintiff's response to the motion to dismiss, he argues that he did everything he could to exhaust his remedies, and that he should be excused from obtaining the final decision of the CORC because he had already filed the appeal to the CORC when he filed his federal action, and there were "extenuating medical circumstances." (Dkt. No. 19 at 1–2). The court understands that plaintiff claims he was in pain, however, he received the CORC decision before the court even had an opportunity to rule on any of the merits of his claims. Thus, plaintiff's premature filing of this federal action did not benefit plaintiff or solve his medical problem. The CORC noted that plaintiff was referred for his medical boots in September of 2012. In fact, if plaintiff had waited, he would not have had to request injunctive relief because it appears that he will be afforded his special boots if medically appropriate.

Because plaintiff failed to exhaust his administrative remedies by failing to wait for the CORC's decision, this court is constrained to recommend dismissing this complaint without prejudice. Plaintiff may immediately re-file his action for damages because he has now exhausted his remedies. As in *Neal,* plaintiff may find that requiring him to initiate a new law suit is "judicially inefficient." 267 F.3d at 123. However, the Second Circuit specifically rejected such an argument, finding that "if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court will have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset." *Id.* The scenario envisioned by the court in *Neal* occurred in this case, even before the CORC accepted the grievance because plaintiff received the referral to the specialist in September of 2012. This is true, notwithstanding that plaintiff may still file a complaint for damages alone if he chooses to do so.

### IV. *Appointment of Counsel*
Because this court is recommending dismissal without prejudice at this time, plaintiff's motion for appointment of counsel (Dkt. No. 20) is denied as moot. If plaintiff re-files his action, he may request appointment of counsel at the appropriate time.

**WHEREFORE,** based on the findings above, it is

**\*6 RECOMMENDED,** that defendant's motion to dismiss (Dkt. No. 16) be **GRANTED,** and the complaint **DISMISSED WITHOUT PREJUDICE TO REFILING,** and it is further

**ORDERED,** that plaintiff's motion for appointment of counsel (Dkt. No. 20) is **DENIED AS MOOT AT THIS TIME.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72.

### All Citations

Not Reported in F.Supp.2d, 2012 WL 7160117

---

Footnotes

1    This set of documents includes plaintiff's complaint, the Department's response, plaintiff's letter objecting to the Department's conclusion, and the Department's review of its action. (Dkt. No. 13 at 44–47).

2    *See Hemphill v. State of New York,* 380 F.3d 680 (2d Cir.2004) (remanding case to determine if defendant's alleged threats constituted "special circumstances" justifying plaintiff's failure to exhaust); *Abney v. McGinnis,* 380 F.3d 663 (2d Cir.2004) (whether failure to exhaust may be justified because plaintiff obtained favorable rulings on his grievances, but the relief that he was supposed to obtain was never forthcoming); *Johnson v. Testman,* 380 F.3d 691 (2d Cir.2004) (whether including claims in a disciplinary appeal may suffice for the exhaustion requirement); *Ortiz v. McBride,* 380

Rodriguez v. Rosner, Not Reported in F.Supp.2d (2012)
Case 9:18-cv-00339-GTS-ML    Document 60    Filed 06/27/19    Page 69 of 103
2012 WL 7160117

F.3d 649 (2d Cir.2004) (complete dismissal is not required when plaintiff brings both exhausted and unexhausted civil rights claims).

3   This court also notes that, based upon the concurring opinion in *Woodford,* it appears that the Second Circuit decisions have *not* been overruled in that respect. In his concurring opinion in *Woodford,* Justice Breyer specifically noted that two circuits, the *Second* Circuit and the Third Circuit that have interpreted the PLRA "in a manner similar to that which the [Supreme] Court today adopts [in *Woodford* ] have concluded that the PLRA's proper exhaustion requirement is not absolute." *Woodford,* 548 U.S. at 104 (citing *Spruill v. Gillis,* 372 F.3d 218, 232 (3d Cir.2004); *Giano v. Goord,* 380 F.3d 670, 677 (2d Cir.2004)) (Breyer, J. concurring). Justice Breyer then stated that on remand, the lower court should "similarly" consider any claims that the inmate might have concerning whether his case "falls into a *traditional exception that the statute implicitly incorporates.*" *Id.* (emphasis added). This statement implies that there are still exceptions that a court may consider.

---

**End of Document**                              © 2019 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:18-cv-00339-GTS-ML    Document 60    Filed 06/27/19    Page 70 of 103

2013 WL 614360
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Jesus RODRIGUEZ, Plaintiff,
v.
David ROSNER, Medical Doctor,
Watertown Correctional Facility, Defendant.

No. 9:12–CV–958.
|
Feb. 19, 2013.

**Attorneys and Law Firms**

Jesus Rodriguez, Wallkill, NY, pro se.

Christopher W. Hall, Office of Attorney General, Albany, NY, for Defendant.

***DECISION & ORDER***

THOMAS J. McAVOY, District Judge.

**\*1** This matter brought pursuant to 42 U.S.C. § 1983 was referred to the Hon. Andrew T. Baxter, United States Magistrate Judge, for a Report–Recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).

No objections to the December 5, 2012 Report–Recommendation were raised by the parties. After examining the record, the Court determined that the ReportRecommendation is not subject to attack for plain error or manifest injustice. Accordingly, the Court adopts the Report–Recommendation for the reasons stated therein.

Thus, it is ordered that: (1) Defendant's motion to dismiss be **GRANTED;** (2) Plaintiff's complaint be **DISMISSED WITHOUT PREJUDICE**; and (3) Plaintiff's motion for appointment of counsel be **DENIED** as moot.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 614360

2018 WL 4635710
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Randolph SCOTT, Plaintiff,
v.
Christopher MILLER, et al., Defendants.

9:17-CV-520 (MAD/ATB)
|
Signed 06/25/2018

**Attorneys and Law Firms**

RANDOLPH SCOTT, Plaintiff, pro se.

DAVID A. ROSENBERG, Asst. Attorney General for
Defendants.

**REPORT-RECOMMENDATION**

Hon. Andrew T. Baxter, U.S. Magistrate Judge

**I. Background and Procedural History**

**\*1** Plaintiff brought this action as the result of conduct
which occurred at Great Meadow Correctional Facility.
(Complaint ("Compl.") ) (Dkt. No. 1). Plaintiff's original
complaint generally alleged claims of excessive force
and denial of constitutionally adequate medical care in
violation of 42 U.S.C. § 1983, [1] together with violations of
Title II of the Americans with Disabilities Act ("ADA"),
42 U.S.C. § 12101 et seq. and Section 504 of the
Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 794.

Plaintiff alleges that he suffers from severe and painful
medical conditions in his feet, resulting in difficulty
walking, and requiring the use of a cane. (Compl. at 4, 7).
Judge D'Agostino conducted an initial review of plaintiff's
complaint and issued a Decision and Order, dated June
29, 2017. (Dkt. No. 8). In that order, Judge D'Agostino
reviewed the plaintiff's stated facts and grounds for relief,
and after a lengthy analysis, ultimately dismissed some of
plaintiff's claims while allowing others to go forward. (*Id.*
at 7-19). Judge D'Agostino also denied plaintiff's request
for preliminary injunctive relief. (*Id.* at 19-22).

The following claims survived Judge D'Agostino's initial
review:

(1) ADA and RA claims against Superintendent Miller
in his official capacity.

(2) Eighth Amendment excessive force claims against
defendants Brady and Reynolds. [2]

(3) Eighth Amendment claims arising out of an alleged
denial of recreation by defendant Miller.

On September 27, 2017, defendants filed a motion to
dismiss in this action pursuant to Fed. R. Civ. P. 12(b)(6).
(Dkt. No. 28). After reviewing the file, together with the
motion, I determined that the motion should be converted
into one for summary judgment, and both parties should
be given the opportunity to supplement their papers. (Dkt.
No. 39).

On April 12, 2018, defendants filed their "Submission in
Support" of the summary judgment motion, including
various exhibits and declarations. (Dkt. No. 47). Included
in these submissions are declarations together with
related exhibits by Joseph Bonacci, the DOCCS Assistant
Director of Classification & Movement (Dkt. Nos. 47-3,
47-4); Dr. David Karandy, M.D., the Facility Health
Services Director at Great Meadow (Dkt. Nos. 47-5,
47-6); Phil Malecio, the Deputy Superintendent for
Programming at Great Meadow (Dkt. Nos. 47-7, 47-8);
Jeffrey Hale, the IGP Supervisor for DOCCS (Dkt. Nos.
47-9, 47-10); Rachael Seguin, the Assistant Director of the
IGP for DOCCS (Dkt. Nos. 47-11, 47-12); and defendant
Superintendent Miller (Dkt. Nos. 47-13, 47-14). On May
4, 2018, plaintiff filed his response to the defendants'
submission. (Dkt. No. 51). The case is now ready for
decision on the motion for summary judgment, and
the court may consider the declarations and exhibits
submitted by both parties. [3]

**II. Summary Judgment**

**\*2** Summary judgment is appropriate where there exists
no genuine issue of material fact and, based on the
undisputed facts, the moving party is entitled to judgment
as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*,
467 F.3d 263, 272–73 (2d Cir. 2006). "Only disputes over
["material"] facts that might affect the outcome of the suit
under the governing law will properly preclude the entry of
summary judgment." *Anderson v. Liberty Lobby*, 477 U.S.
242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It must be
apparent that no rational finder of fact could find in favor

of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Salahuddin*, 467 F.3d at 272.

### III. Exhaustion of Administrative Remedies

#### A. Legal Standards
The Prison Litigation Reform Act, (PLRA), 42 U.S.C. § 1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action. The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim. *See Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004) (citing *Porter v. Nussle*, 534 U.S. 516, 532 (2002) ). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675.

The failure to exhaust is an affirmative defense that must be raised by the defendants. *Jones v. Bock*, 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004). As an affirmative defense, it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements. *See, e.g., Key v. Toussaint*, 660 F.Supp.2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *Jones*, 549 U.S. at 218-19, 127 S.Ct. 910 (citing *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006) ). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. 548 U.S. at 90-103, 126 S.Ct. 2378.

The grievance procedure in New York is a three-tiered process. The inmate must first file a grievance with the Inmate Grievance Resolution Committee ("IGRC"). N.Y. Comp. Codes R. & Regs., tit. 7 §§ 701.5(a)(1) and (b). An adverse decision of the IGRC may be appealed to the Superintendent of the Facility. *Id.* § 701.5(c). Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee ("CORC"). *Id.* § 701.5(d). The court also notes that the regulations governing the Inmate Grievance Program encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance." *Id.* § 701.3(a) (Inmate's Responsibility). There is also a special section for complaints of harassment. *Id.* § 701.8. Complaints of harassment are handled by an expedited procedure which provides that such grievances are forwarded directly to the superintendent of the facility, after which the inmate must appeal any negative determination to the CORC. *Id.* §§ 701.8(h) & (i), 701.5.

**\*3** Until recently, the Second Circuit utilized a three-part inquiry to determine whether an inmate had properly exhausted his administrative remedies. *See Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006) (citing *Hemphill v. State of New York*, 380 F.3d 680, 686 (2d Cir. 2004) ). The *Hemphill* inquiry asked (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement. *Id.*

The Supreme Court has now made clear that courts may not excuse a prisoner's failure to exhaust because of "special circumstances." *Ross v. Blake*, —— U.S.

——, 136 S.Ct. 1850, 1857, 195 L.Ed.2d 117 (June 6, 2016). " '[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion.' " *Riles v. Buchanan*, 656 F. App'x 577, 580 (2d Cir. 2016) (quoting *Ross*, —— U.S. ——, 136 S.Ct. at 1857). Although *Ross* has eliminated the "special circumstances" exception, the other two factors in *Hemphill* – availability and estoppel – are still valid. The court in *Ross* referred to "availability" as a "textual exception" to mandatory exhaustion, and "estoppel" has become one of the three factors in determining availability. *Ross*, —— U.S. ——, 136 S.Ct. at 1858. Courts evaluating whether an inmate has exhausted his or her administrative remedies must focus on whether those remedies were "available" to the inmate. *Id. See also Riles*, 2016 WL 4572321 at *2, 656 Fed.Appx. 577. Defendants bear the burden of proving the affirmative defense of failure to exhaust. *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016).

**B. Application**

**1. Alleged Assault on April 27, 2017**

In his complaint, plaintiff alleges that on April 27, 2017, he was on the first floor stairway to the school building, when he "accidentally" fell down the stairs, injuring his right knee. (Complaint ("Compl.") at 4). Plaintiff states that two inmates, who witnessed the incident took plaintiff to emergency sick call. (Compl. at 5). Plaintiff claims that he was in an examination room in the medical department, when he was "assaulted" by defendant Brady, who slapped and punched plaintiff in the head and body while plaintiff sat on the examination table. (*Id.*) Plaintiff claims that defendant Brady kept asking him what he was "doing," and "can't you walk." Plaintiff states that he managed to get off the examination table, and defendant Brady put him in a headlock, punched and slapped him in the head, slammed plaintiff to the floor and handcuffed him. Plaintiff states that the assault lasted for fifteen minutes, and he did not resist, but tried to shield himself the best that he could. Plaintiff claims that, in order to "justify" the beating, defendant Brady wrote a misbehavior report against plaintiff, accusing plaintiff of being the aggressor. (*Id.*)

Plaintiff also claims that following the assault by Brady, and after Brady left the room, defendant Reynolds

"appeared" in the examination room while plaintiff was still lying on the floor. (*Id.*) Plaintiff states that "a couple" of subordinates picked plaintiff up off the floor and placed his face against the wall. At that point, plaintiff alleges that defendant Reynolds deliberately threw plaintiff's glasses on the floor, "stomped" on them and broke them into small pieces. (Compl. at 5-6). Defendant Reynolds allegedly said "see that ass hole, now grieve that...." Defendant Reynolds then allegedly slapped and punched plaintiff in the face, head, and body, while he was still handcuffed. The "subordinates" dared plaintiff to come off the wall, and they held plaintiff up while defendant Reynolds assaulted plaintiff for approximately fifteen minutes. (Compl. at 6). Defendant Reynolds then took photos of plaintiff's injuries, claiming that plaintiff initiated the assault. (*Id.*)

**\*4** In the body of his complaint, plaintiff alleges that he filed "grievances" for transfer to another facility, and for "assaults, batteries [sic] within last month," specifically by C.O. Brady and his destroyed eyeglasses, but claims that there was no investigation into his claims. (*Id.*) Plaintiff stated that he was attaching "a number of exhibit(s) of grievances...." (*Id.*)

As an exhibit to the complaint, plaintiff attached a document entitled: "Inmate Grievance Complaint," dated April 27, 2017, complaining about his fall down the stairs and the alleged beating in the medical building. (Compl. at 25). In this grievance, plaintiff identified defendant Brady, but referred to defendant Reynolds as "John Doe." (Compl. at 25). In the grievance, plaintiff also described a prior incident with defendant Brady, which allegedly occurred on April 5, 2017. (*Id.*) Plaintiff then stated that he suffered from bilateral foot issues and severe neurological damage in his lower extremities. At the end of the grievance, plaintiff stated that because of his medical issues, the beating, and the misbehavior report, written to "justify beating," he wished to be transferred to a "Disabled Facility." (*Id.*) The grievance indicates that copies went to "RS/Filed," "Court of Claims," "U.S.C. 42 1983," and "Family." (*Id.*) However, there are no further documents attached to plaintiff's complaint that relate to this grievance, and there is no stamp on the document which indicates that it was ever received by the IGRC.

With his complaint, plaintiff also included a letter that he wrote to D.S.A. Peacock on May 5, 2017 regarding the April 25th incident. (Compl. at 26). In the letter to

D.S.A. Peacock, plaintiff complained that it had been one week since the incident, that he filed a grievance, but that there had been no investigation, nor had he been informed of the second officer's name. [4] Plaintiff's statements in the letter are a little unclear, but it appears that he was asking for an investigation "and/or" that the incident be "put ... behind us...." Plaintiff stated that he was "willing to cooperate with [the] administration," and asked D.S.A. Peacock to "drop the Tier III fraudulent disciplinary infraction 'Bull' ...." (Compl. at 27). There were no further documents attached to plaintiff's complaint that were associated with the alleged April 27th grievance.

Defendants argue that if the alleged assault occurred on April 25, 2017, and even if plaintiff had filed the grievance on April 27, 2017, he could not possibly have exhausted his administrative remedies by the time that he signed his federal complaint on May 5, 2017 or by the time the complaint was filed on May 10, 2017.

In the declaration of IGP Supervisor Hale, he states that the Great Meadow IGP "has no record of any grievance filed by inmate Scott relating to his allegations that he was subjected to excessive force or harassment on April 5, 2017 or April 25, 2017 by defendants Brady or Reynolds." (Hale Decl. ¶ 49 & Ex. A). Grievance records indicate that plaintiff filed two grievances on April 17, 2018, and then did not file another grievance until May 16, 2017. (Hale Decl. Ex. A). The May 16, 2017 grievance was entitled "Retaliation for Grieving." (*Id.*) Plaintiff's next grievance was dated June 16, 2017 and was entitled "Cane and Medical Boots." (*Id.*)

**\*5** Plaintiff's complaint in this action was signed on May 5, 2017 and received by the court on May 10, 2017. [5] Plaintiff could not have, and did not, completely exhaust his administrative remedies prior to filing this action. Even if plaintiff completed the exhaustion process after he filed the action, the court would still be constrained to recommend dismissal for failure to exhaust. The entire appeals process must be completed prior to filing. *See Casey v. Brockley*, No. 9:13-CV-1271, 2015 WL 8008728, at \*5 (N.D.N.Y. Nov. 9, 2015) (citing *Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001) (subsequent exhaustion after suit is filed is insufficient), *overruled on other grounds, Porter v. Nussle*, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) ). Thus, plaintiff has failed to exhaust his administrative remedies with respect to his

claims of excessive force as against defendants Brady and Reynolds. [6]

Although, as stated above, exhaustion may still be excused if the administrative remedies were "unavailable" or if defendants' actions prevented plaintiff from utilizing or completing those procedures. *Ross*, 136 S.Ct. at 1859-60. The administrative remedy process was available to plaintiff in this case, and it is clear that he used the grievance procedure multiple times for many other grievances. [7] (Hale Decl. & Ex. A). Plaintiff also cannot claim that the defendants prevented him from using the grievance procedure in this instance because there was insufficient time for them to do so. Thus, plaintiff's failure to exhaust his administrative remedies may not be excused.

## 2. ADA/RA Claims

Plaintiff's surviving claim under the ADA and/or RA is that he was denied a "reasonable accommodation" for his "disabilities." The PLRA exhaustion requirement applies to cases brought by inmates under either of these federal statutes. *Carrasquillo v. City of New York*, 324 F.Supp.2d 428, 442-43 (S.D.N.Y. 2004). Defendants argue that plaintiff has also failed to exhaust his administrative remedies with respect to his ADA and/or RA claims. This court agrees with defendants.

**\*6** Plaintiff filed various grievances which are related to his medical condition/disability claims. (Statement of Material Facts ("SOF") ¶ 54 (Dkt. No. 47-1); Hale Decl. Ex. A). These include: (1) GM-61903-17 - "Recreation Restriction," filed on March 9, 2017; (2) GM-61935-17 - "Transfer to a Facility with Handicap Accessible Areas," filed on March 21, 2017; (3) GM-62018-17 - "Treatment for Legs and Feet" filed on April 17, 2017; (4) GM-62218-17 - "Cane and Medical Boots," filed on June 15, 2017; and (5) GM-62239-17 - "Wants ADA Items" on June 23, 2017. (*Id.*)

The last two grievances - GM-62218-17 and GM-62239-17 would not be relevant to exhaustion in this case because the grievances themselves were not filed until after this action was filed. Thus, the court must examine the first three grievances listed above to determine whether plaintiff exhausted his administrative remedies relative to the issues he raises in this action.

Plaintiff's first grievance dealing with the restriction on his recreation was filed on March 9, 2017. He filed a second grievance on April 18, 2017, alleging that he was denied recreation, and on April 19, 2017, he filed a third grievance, also stating that he was denied recreation without cause. (Hale Decl. ¶¶ 15-17, Seguin Decl. ¶ 16, Melecio Decl. ¶ 22). The grievances filed on April 18 and 19 were consolidated with the grievance filed on March 9, 2017. (Hale Decl. ¶ 18). Plaintiff's March 9, 2017 grievance, GM-61903-17, stated that on March 4, 2017, the Block Officer on the morning shift "took it upon himself" to place plaintiff on "Restricted Recreation" without medical authorization. (Hale Decl. Ex. B).

Plaintiff stated that he had three medical permits: to be locked on the "flats;" to be fed in-cell; and to have a walking cane. (*Id.*) Plaintiff stated that there was no mention of restricted recreation "by medical permit dated 2/24/17." [8] (*Id.*) Plaintiff claimed that he had a constitutional right to recreation, and that he was being "punished" for being a "qualified disabled inmate." [9] (*Id.*) Plaintiff then stated that, as a "Federal[ly] funded facility," if Great Meadow was "not equipped" to "accommodate" a "qualified disabled inmate," then he should be transferred to a facility that could accommodate him with all the appropriate "services" and "programs" in accordance with the ADA and the RA. (*Id.*)

The "Case History and Record" for this grievance contains a summary of the grievance and the "action requested." [10] (Hale Decl. Ex. C). The Superintendent's Response is dated May 25, 2017. (*Id.*) (*See also* Pl.'s Ex. E-2) (Dkt. No. 34-2 at 19) (Superintendent's Response to GM-61,903-17). In her declaration, Rachael Seguin, the Assistant Director of the IGP, included a list of grievances that plaintiff has appealed to the CORC. (Seguin Decl. ¶¶ 12, 13 & Ex. A). As shown in Exhibit A to the Seguin Declaration, plaintiff appealed the Superintendent's adverse decision, and plaintiff's appeal was received by the CORC on June 5, 2017. (Seguin Decl. ¶ 17 & Ex. A). As of March 18, 2018, the CORC had not issued a decision on plaintiff's appeal. (Seguin Decl. ¶ 18 & Ex. A at 1). As stated above, plaintiff filed this action on May 10, 2017, even before he received the Superintendent's decision.

**\*7** The next grievance pertaining to plaintiff's ADA/RA claims was GM-61935-17, entitled "ADA Transfer to Handicap Accessible Facility." (Seguin Decl. ¶ 19 & Ex. A at 1). Plaintiff filed this grievance on March 21, 2017, and that the CORC received the plaintiff's appeal of the Superintendent's decision on May 26, 2017. (Seguin Decl. ¶¶ 19-20). As of March 18, 2018, the CORC had not issued a decision on plaintiff's appeal. (Seguin Decl. ¶ 21 & Ex. A at 1).

Plaintiff filed another grievance on April 17, 2017, entitled "Treatment for Legs/Feet." (Seguin Decl. ¶ 22). The CORC received plaintiff's appeal of the Superintendent's decision on May 31, 2017. (Seguin Decl. ¶ 23 & Ex. A at 1). As of March 18, 2018, the CORC had not issued a decision on the appeal. (*Id.*) On June 15, 2017 plaintiff filed GM-62218-17, entitled "Cane & Medical Boots," and on June 23, 2017, plaintiff filed GM-62239-17, entitled "Wants ADA Items." (Seguin Decl. ¶¶ 25, 28). The CORC received plaintiff's appeal for GM-62218-17 on July 21, 2017, and the appeal for GM-62239-17 on August 3, 2017. (Seguin Decl. ¶¶ 25, 26, 28, 29 & Ex. A at 1). The CORC had not issued a decision on either grievance when the Seguin Declaration was signed. (Seguin Decl ¶¶ 27, 30).

Because plaintiff filed his federal action **before** he completed the appeals of any of the grievances relating to his federal claim, he has failed to exhaust his administrative remedies with respect to any of his ADA/RA claims and with respect to his related constitutional challenge to the denial of recreation.

Plaintiff has submitted materials relative to the summary judgment motion. However, based on some of his arguments, he appears to misapprehend the procedure employed by the court in "converting" the defendants' motion. When the defendants filed their motion to dismiss, they included various exhibits. (Dkt. No. 28). When plaintiff filed his response to the defendants' motion to dismiss for failure to state a claim, (Dkt. No. 34), he also included exhibits. (*Id.*) In a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court could not have considered material outside the complaint, with some exceptions. Although some of the materials included in the motion to dismiss could potentially have been considered in conjunction with such a motion, in order to consider all the responses and exhibits filed by both parties, the court converted the motion to one for summary judgment and allowed both parties to submit additional argument. This

procedure is specifically authorized in the Federal Rules. Fed. R. Civ. P. 12(d). Thus, the court may consider the information submitted by both plaintiff and defendants.

Plaintiff now argues that the defendants have failed to show that the plaintiff's remedies were "available," and that the CORC has taken over thirteen months to decide his appeals. (Dkt. No. 51 at 1-3). The plaintiff is correct that if the IGRC, the Superintendent or the CORC fail to provide a timely response, plaintiff may appeal to the next level. *Williams v. Priatno*, 829 F.3d 118, 124 (2d Cir. 2016) (citing 7 NYCRR §§ 701.6(g)(2), 701.8(g) ). However, plaintiff in this case did not wait until the time for the CORC to decide had run before filing this action. In fact, the CORC did not receive any of plaintiff's appeals of the grievances discussed above until after he filed this action. Plaintiff must file his federal action after he *completes* the appeal procedure and he receives a decision or the time listed in the regulations for a response by the CORC has expired and no extensions have been given. Plaintiff filed a multitude of grievances. Clearly, the remedies were "available" at the time that he filed his federal action.

**\*8** The exhibits submitted by plaintiff only reinforce this court's findings. On April 25, 2017, plaintiff signed his appeal to the Superintendent from the IGRC response to GM-61,935-17. (Pl.'s Ex. A) (Dkt. No. 34-2 at 2). On May 3, 2017, Grievance Supervisor, A. Kuinlan sent a Memorandum to the IGRC which stated that "[p]er medical records, a request for reasonable accommodation (requesting to be sent to a facility with handicap accessible cells and showers and with out stairs) has been submitted to medical for review by Dr. Karandy." (Pl.'s Ex. B-1) (Dkt. No. 34-2 at 4). Plaintiff has included the Request for Reasonable Accommodation, dated April 25, 2017. (Pl.'s Ex. B-3) (Dkt. No. 34-2 at 6). On June 5, 2017, Dr. Karandy recommended a flats facility. (*Id.*) Plaintiff indicated on the form that he "disagreed" with the

determination because he needed a "handicap" facility for a disabled inmate. (*Id.*)

Plaintiff's exhibits show that his appeals were either ongoing or had not been filed as of the date that he filed this action. In fact, some of the grievances that arguably relate to his medical condition were not filed at all until after this action was filed. Thus, since the court has been able to consider all the evidence, it is clear that plaintiff failed to exhaust his administrative remedies with respect to any of his ADA/RA claims. Plaintiff also asks in his recent submission that the court "stay" the action. However, the case law makes it clear that the court may not stay the action. The court *must dismiss* a prematurely filed action, and plaintiff may file again after he exhausts his administrative remedies. [11] *Neal v. Goord, supra.*

**\*9** **WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' converted motion for summary judgment (Dkt. No. 28) be **GRANTED**, and the action be **DISMISSED IN ITS ENTIRETY WITHOUT PREJUDICE** for failure to exhaust administrative remedies.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989) ); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

**All Citations**

Slip Copy, 2018 WL 4635710

---

Footnotes

1    Plaintiff's constitutional claims arose under the First, Eighth, and Fourteenth Amendments of the United States Constitution. (Compl. at 9).

2    Sgt. Reynolds was originally named by plaintiff as a "John Doe" defendant, but was later identified and the complaint amended to substitute Reynolds for John Doe.

3    The court will also consider the materials originally filed with the motion to dismiss, together with any materials that plaintiff filed with his complaint. (Dkt. Nos. 1, 28).

4    The court notes that there is clearly a typographical error in the letter because plaintiff refers to an "accidental fall 5/25/17." (Compl. at 26). However, he must be referring to the April 25th incident because the letter is dated May 5, 2017.

5    Plaintiff mentions the alleged assault in an appeal of Grievance No. GM-61,903-17, dated May 15, 2017. (Hale Decl. Ex. F). Oddly, Grievance GM-61,903-17 was initially filed in March of 2017, long before the alleged assault took place, so the initial grievance could not have included facts relating to an assault that had not yet taken place. The fact that plaintiff included the alleged assault in his May 15, 2017 appeal, to the extent that it would have been procedurally correct to do so, shows that at the time he filed this complaint on May 10, 2017, he had not exhausted his administrative remedies with respect to the assault claims because an appeal was still pending.

6    To the extent that plaintiff might argue that the defendants' conduct formed the basis of his disciplinary hearing, and an appeal of the disciplinary hearing would have been sufficient to exhaust his administrative remedies, he would also be incorrect. *See Waters v. Melendez*, No. 9:15-CV-805, 2018 WL 3079764, at *7-8 (N.D.N.Y. May 18, 2018) (inmate must separately exhaust his administrative remedies through the grievance procedure, even though the disciplinary hearing may be based on the same set of facts underlying the grievance) (citations omitted) (Rep't-Rec.) (adopted 2018 WL 3069209 (N.D.N.Y. June 21, 2018) ). In addition, in this case, as stated above, plaintiff filed this action ten days after the incident and did not have had time to have his disciplinary hearing and exhaust those remedies.

7    The records indicate that between March and August of 2017, plaintiff filed 24 grievances at Great Meadow. (Hale Decl. ¶ 12 & Ex. A).

8    A second page which looks very similar to the first has some slightly different language in it. (Hale Decl. Ex. B at 2). This grievance, which is also dated March 4, 2017 and in plaintiff's handwriting, indicates that it was filed on March 6, 2017, states that plaintiff's medical permits did not mention restricted recreation "nor" did they mention "no climbing stairs." (*Id.*) Plaintiff's request was that he be afforded "all 'Programs' and 'Services' ... and/or a T.V. ... or to be transferred." (*Id.*)

9    The court notes that this grievance would also be related to plaintiff's third claim - that he was subjected to cruel and unusual punishment due to the lack of recreation for more than seventy days. For the same reasons that plaintiff's ADA/RA claim is unexhausted, plaintiff's constitutional challenge to the denial of recreation would also be unexhausted.

10   The transfer request was not included in this summary of the action requested.

11   Although the court is not making any findings on the merits in this case due to plaintiff's failure to exhaust, the court notes that defendants have filed substantial documentation, indicating that plaintiff's request for accommodation -submitted April 25, 2017 - was addressed in a timely manner and fully investigated. Dr. Karandy concluded that plaintiff was an appropriate candidate for transfer to a "flats" facility on June 5, 2017. (Karandy Decl. ¶¶ 14-17). Dr. Karandy also determined, based on plaintiff's medical condition, that walking to the recreation yard would have been difficult and could have been dangerous for plaintiff. (Karandy Decl. ¶¶ 26). The doctor stated that it was the good-faith opinion of the medical staff that plaintiff's "medical needs necessitated restricted navigation of the stairwell to ensure his safety and well-being." (Karandy Decl. ¶ 26). It was not possible at Great Meadow to access the recreation yard without traveling up two flights of stairs and down one additional flight, together with the remainder of the general population "moving in concert." (*Id.* ¶ 25). The "reasonable accommodations" afforded to plaintiff included residing in a first floor cell, being provided meals in his cell, the use of a cane, and the use of medical boots. (*Id.* ¶¶ 19, 27 & Ex. E). Plaintiff was also placed on a no lifting restriction. (*Id.*) DSS Malecio states that the doctor's recommendation was issued June 5, 2017, and plaintiff was "referred to an Unscheduled Transfer Review" based on Dr. Karandy's recommendation **on June 6, 2017.** (Malecio Decl. ¶ 33 & Exs. I, J). On June 7, 2017, DSS Malecio approved the request for reasonable accommodation and "sought the generation of a Request for Transfer to a "flats" facility." (Malecio Decl. ¶ 36 & Ex. G). However, plaintiff "disagreed" with the determination and noted "Handicap Facility" on the form. (Malecio Decl. ¶ 37 & Ex. G). Because plaintiff disagreed with the recommendation, the request was sent to DOCCS Office of Diversity Management for review. (*Id.*) DSS Malecio states that he reviewed plaintiff's second request for reasonable accommodation on July 21, 2017. (*Id.* & Ex. H). While the request was again approved, plaintiff continued to object because he believed he needed a handicap facility, and noted that he would grieve again. (*Id.* ¶ 45). The appeal was again sent to the DOCCS Office of Diversity Management. (*Id.* ¶ 46). At the time, plaintiff was still serving an SHU sentence (related to the April 25th incident). Plaintiff was ultimately transferred to a "flats facility" on August 15, 2017. (Malecio Decl. ¶ 48 & Ex. L).

---

End of Document    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2019 Thomson Reuters. No claim to original U.S. Government Works.    7

Case 9:18-cv-00339-GTS-ML    Document 60    Filed 06/27/19    Page 78 of 103

Shepherd v. Lempke, Not Reported in Fed. Supp. (2017)

2017 WL 1187859

2017 WL 1187859
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Eon SHEPHERD, Plaintiff,
v.
Superintendent LEMPKE, et al., Defendants.

9:10-CV-1524
|
Signed 03/30/2017

**Attorneys and Law Firms**

George H. Lowe, Upnit Kaur Bhatti, Bond, Schoeneck Law Firm, Syracuse, NY, for Plaintiff.

Eon Shepherd, Romulus, NY, pro se.

Cathy Y. Sheehan, New York State Dept. of Corrections, Auburn, NY, Oriana L. Carravetta, New York State Attorney General, Albany, NY, for Defendants.

### DECISION & ORDER

THOMAS J. McAVOY, Senior United States District Judge

## I. INTRODUCTION

**\*1** This *pro se* action brought pursuant to 42 U.S.C. § 1983 was referred to the Hon. David E. Peebles, Chief United States Magistrate Judge, for the purpose of holding an evidentiary hearing and issuing a report and recommendation addressing exhaustion of administrative remedies. In his October 28, 2016 Report and Re commendation, Dkt. No. 252, Magistrate Judge Peebles provides a thorough review of the numerous claims in this matter that are based on events occurring between April 2008 and November 2010 at five separate prison facilities operated by the New York State Department of Corrections and Community Supervision ("DOCCS"), [1] and of the procedural history of this case. [2] Magistrate Judge Peebles also placed the claims potentially implicated by defendants' exhaustion defense, together with the circumstances surrounding plaintiff's efforts to exhaust available administrative remedies, into four groupings, "each of which includes common circumstances insofar as exhaustion is concerned." Rep. Rec. p. 13.

Based upon the evidence adduced at the hearing, Magistrate Judge Peebles recommends:

(1) The following claims should be deemed exhausted and remain pending for trial:

| Claim No. | Defendant | Nature of Claim | Facility | Amended Complaint ¶ |
|---|---|---|---|---|
| 3 | Artus | Medical Indifference | Clinton | 31, 104-05, 108-09 |
| 4 | Artus | Religious Interference | Clinton | 31, 104-05, 108-09 |
| 13 | Carlee | Retaliation | Five Points | 18 |
| 15 | Cioffa | Excessive Force | Five Points | 19, 20 |
| 16 | Colvin | Excessive Force | Upstate | 86, 105, 108 |
| 17 | Colvin | Religious | Upstate | 86, 105, 108 |
| 18 | Colvin | Retaliation | Upstate | 86, 105, 108 |
| 19 | Cunningham | Due Process | Green | 107 |
| 20 | Evans | Excessive Force | Five Points | 20 |
| 23 | Jones | Failure to Protect | Five Points | 21 |
| 26 | Lempke | Excessive Force | Upstate | 86, 105, 108 |

Shepherd v. Lempke, Not Reported in Fed. Supp. (2017)
Case 9:18-cv-00339-GTS-ML   Document 60   Filed 06/27/19   Page 79 of 103
2017 WL 1187859

| 27 | Lempke | Religious | Upstate | 86, 105, 108 |
| 28 | Lempke | Retaliation | Upstate | 86, 105, 108-09 |
| 32 | Prebalick | Retaliation | Five Points | 19-22 |
| 34 | Prebalick | Excessive Force | Five Points | 35 |
| 35 | Ramus | Due Process | Five Points | 107 |

**\*2** (2) The following claims proceed to trial based on the parties' failure to address them in connection with defendants' exhaustion defense:

| Defendant | Cause of Action | Prison Facility |
| --- | --- | --- |
| Amatucci | Medical Indifference | Downstate |
| Barber | Failure to Protect | Five Points |
| N. Bezio | Due Process | DOCCS Hq. |
| Cambria | Excessive Force | Unknown |
| Chesbrough | Retaliation | Upstate |
| Holmes | Retaliation | Upstate |
| Rock | Religious Interference | Upstate |
| Lashway (formerly sued as Hawthorne) | Medical Indifference | Clinton |

(3) The following claims should be dismissed based upon plaintiff's representation that they are not being asserted in this action:

| Claim No. | Defendant | Nature of Claim | Facility | Amended Complaint ¶ |
| --- | --- | --- | --- | --- |
| 10 | Bower | Failure to Protect | Five Points | 15 |
| 11 | Bower | Retaliation | Five Points | 15 |
| 1 | Evans | Religious Interfer. | Five Points | |

(4) The following claims should be dismissed based upon the fact that complete exhaustion occurred only after this action was filed:

| Claim No. | Name | Nature of Claim | Facility | Amende Complaint ¶ |
| --- | --- | --- | --- | --- |
| 6 | Belsio | Religious Interference | Upstate | 41, 42 |
| 8 | Atkinson | Retaliation | Upstate | 90, 91 |

2017 WL 1187859

| | | | | |
|----|----------|------------------------|------------|--------|
| 25 | Lashway | Medical Indifference | Clinton | 75, 76 |
| 31 | Prebalick | Religious Interference | Five Points | 35 |
| 36 | Rowe | Failure to Protect | Upstate | 43 |
| 37 | Rozwell | Excessive Force | Upstate | 43 |
| 38 | Rozwell | Religious Interference | Upstate | 43 |

(5) The following claims should be dismissed based upon plaintiff's failure to fully exhaust them:

| Claim No. | Name | Nature of Claim | Facility | Amended Complaint ¶ |
|-----------|------|-----------------|----------|---------------------|
| 5 | Belsio | Excessive Force | Upstate | 41, 42 |
| 7 | Belsio | Religious Interference | Upstate | 41, 42 |
| 9 | Bower | Excessive Force | Five Points | 15 |
| 12 | Carlee | Religious Interference | Five Points | 34 |
| 14 | Carlee | Excessive Force | Five Points | 34 |
| 22 | Fairchild | Retaliation | Upstate | 92 |
| 24 | Jones | Medical Indifference | Five Points | 87 |
| 29 | Menard | Excessive Force | Clinton | 28 |
| 30 | Menard | Religious Interference | Clinton | 28 |
| 33 | Prebalick | Excessive Force | Five Points | 16 |

and,

(6) The matter should be set down for trial involving the remaining claims.

Plaintiff filed objections through appointed counsel, Dkt. No. 253, and on a *pro se* basis, Dkt. No. 255; and defendants filed objections. Dkt. No. 254.

## II. STANDARD OF REVIEW

When objections to a magistrate judge's report and recommendation are lodged, the district court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *See* 28 U.S.C. § 636(b)(1); *see also United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997) (The Court must make a *de novo* determination to the extent that a party makes specific objections to a magistrate's findings.). General or conclusory objections, or objections which merely recite the same arguments presented to the magistrate judge, are reviewed for clear error. *Farid v. Bouey*, 554 F. Supp. 2d 301, 306 n. 2 (N.D.N.Y. 2008); *see Frankel v. N.Y.C.*, 2009 WL 465645 at *2 (S.D.N.Y. Feb. 25, 2009). After reviewing the report and recommendation, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b).

## III. DISCUSSION

### a. Plaintiff's Objections

Shepherd v. Lempke, Not Reported in Fed. Supp. (2017)

2017 WL 1187859

Case 9:18-cv-00339-GTS-ML    Document 60    Filed 06/27/19    Page 81 of 103

#### 1. Post-Commencement Exhaustion

**\*3** Plaintiff objects through counsel and on a *pro se* basis to Magistrate Judge Peebles's conclusion that plaintiff's claims that were exhausted after the action was commenced but before an amended complaint was filed ("Group Two", Claim Nos. 6, 36, 37 and 38) are nonetheless unexhausted under the holding of *Neal v. Goord*, 267 F.3d 116, 121-22 (2d Cir. 2001), *abrogated in part on other grounds by Porter v. Nussle*, 534 U.S. 516 (2002). Plaintiff argues that although the Second Circuit stated in *Neal* that "exhausting administrative remedies after a complaint is filed will not save a case from dismissal," the Circuit's decision did not specifically address situations where, as here, a claim is exhausted after commencement but prior to the filing of an amended complaint. Pl. Obj., p. 2. The Court finds no basis to reject Magistrate Judge Peebles's conclusion in this regard.

As Magistrate Judge Peebles explained:

> It is not clear from the court's decision in *Neal* that the plaintiff had included new claims in his amended complaint that were not asserted in his original complaint. In his *amicus curiae* brief to the Second Circuit, however, the New York State Attorney General explained that the plaintiff's amended complaint included newly asserted deliberate medical indifference causes of action that were not originally pleaded. Amicus Brief, *Neal v. Goord*, 267 F.3d 116 (2d Cir. 2001) (No. 99-0253), 2001 WL 34121400, at \*2-4. The Second Circuit affirmed the district court's dismissal of all of the plaintiff's claims, including the deliberate medical indifference causes of action, because none of them had been fully exhausted by the time the plaintiff filed his original complaint. *Neal*, 267 F.3d at 121-23.

Rep. Rec. p. 21, n. 16.

Thus, Magistrate Judge Peebles concluded that "[w]hile some circuits analyzing this fact pattern have permitted plaintiffs to litigate the causes of action that were newly included in an amended complaint and fully exhausted by the time the plaintiffs filed the amended complaint, the Second Circuit squarely addressed those facts in *Neal* and concluded otherwise." *Id.* p. 22 (citing *Rhodes v. Robinson*, 621 F.3d 1002 (9th Cir. 2010); *Barnes v. Briley*, 420 F.3d 673 (7th Cir. 2005)). The Court agrees with Magistrate Judge Peebles's conclusion. Moreover, the courts in this District have almost uniformly held that "a post-exhaustion amendment of the complaint cannot cure an exhaustion defect existing at the time the action was commenced." *Guillory v. Haywood*, 2015 WL 268933, \*11 (N.D.N.Y. Jan. 21, 2015) (citing *Neal*, 267 F.3d at 122) (other citation omitted); *see Thousand v. Corrigan*, 2017 WL 1093275, at \*3 (N.D.N.Y. Mar. 23, 2017)(quoting *Guillory*); *Reid v. Marzano*, 2017 WL 1040420, at \*2 (N.D.N.Y. Mar. 17, 2017)(quoting *Guillory*); *Kearney v. Gebo*, 2017 WL 61951, at \*2 (N.D.N.Y. Jan. 4, 2017)(quoting *Guillory*); *Toliver v. Fischer*, 2016 WL 3351974, at \*4 (N.D.N.Y. Mar. 22, 2016)(quoting *Guillory*), report and recommendation adopted *sub nom. Toliver v. Stefinik*, 2016 WL 3349316 (N.D.N.Y. June 15, 2016); *Klein v. Fischer*, 2015 WL 5174031, at \*19 (N.D.N.Y. Sept. 2, 2015) ("Furthermore, a post-exhaustion amendment of the complaint cannot cure an exhaustion defect existing at the time the action was commenced.")(citing *Kasiem v. Switz*, 756 F. Supp.2d 570, 575 (S.D.N.Y. 2010) in turn citing *Neal*, 267 F.3d at 122); *see also Stimpson v. Comm'r Correction Off.*, 2017 WL 326314, at \*2 (D. Conn. Jan. 23, 2017).[3] The Court finds that under *Neal*, post-exhaustion amendment of the complaint does not cure an exhaustion defect existing at the time the action was commenced. Thus, plaintiff's objection on this ground is overruled.

#### 2. Challenge to Credibility Assessment

**\*4** With respect to Groups 3 and 4, Magistrate Judge Peebles recommended dismissal of claim nos. 5, 7, 9, 12, 14, 24, 29, 30 and 33, because he did not find plaintiff's testimony relative to exhaustion of those claims to be credible. Rep. Rec. at 26, *see id.*, pp. 24-26.[4] Plaintiff argues through counsel that because the Court

2017 WL 1187859

must conduct a *de novo* determination when objections are filed, the Court has discretion to conduct its own hearing in order to make its own assessment of credibility. Plaintiff himself, in his *pro se* submission, also challenges Magistrate Judge Peebles's credibility determinations, arguing that all of his testimony should have been deemed credible.

**\*5** Neither plaintiff's counsel nor plaintiff himself have presented sufficient reasons for the Court to exercise its discretion and conduct its own hearing. Because Magistrate Judge Peebles was in a position to view plaintiff's testimony and assess his credibility based on his demeanor and in light of the other evidence presented in the case, *see* Rep. Rec. 24-26, and because plaintiff has not presented sufficient reasons to conclude that Magistrate Judge Peebles erred in his credibility determination, the Court adopts those determinations and overrules plaintiff's objection on this ground.

### 3. Burden of Proof

Plaintiff argues in his *pro se* submission that Magistrate Judge Peebles improperly placed the burden upon him to prove that he exhausted his administrative remedies. There is no merit to this contention. As Magistrate Judge Peebles explained, the Prison Litigation Reform Act imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, including a mandatory requirement that the inmate exhaust his administered of remedies. While exhaustion is a condition precedent to bringing suit by an inmate, Magistrate Judge Peebles indicated that "[i]n the event *a defendant establishes* that the inmate plaintiff failed fully comply with the administrative process prior to commencing an action in federal court, the plaintiff's complaint is subject to dismissal." Rep. Rec., p. 8 (emphasis added). In light of this statement clearly placing the burden on the defendants to establish plaintiff's failure to comply with administrative exhaustion procedures, plaintiff's objection on the ground that he was required to prove exhaustion in the first instance is disingenuous. The objection is overruled.

### b. Defendants' Objections

### 1. Claim 4 against Artus

Claim 4 is a religious freedom claim in Group One against defendant Artus stemming from incidents spanning from October-December 2009 at Clinton Correctional Facility. Defendants argue that because plaintiff's grievance list from 2009 at Clinton Correctional Facility reveals only two grievances, neither of which asserted denial of religious freedom, plaintiff could not have exhausted his administrative remedies on this claim. Def. Mem. Law, p. 2. For the reasons that follow, the objection is overruled.

Magistrate Judge Peebles addressed defendants' contention that plaintiff failed to exhaust the available administrative remedies against defendant Artus (as well as against defendants Colvin and Lempke) on the Group One claims because plaintiff did not file any grievances that specifically identified Artus or complained of his conduct. In denying the argument, Magistrate Judge Peebles correctly recognized that "the weight of authority ... suggests that inmate-plaintiffs need not file grievances identifying particular individuals or articulating a particular theory of liability (much less specifically grieve a supervisor theory of liability)." Rep. Rec. p. 19 (citing, *inter alia*, *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006)("In determining whether exhaustion has been achieved, we have drawn an analogy between the contents of an administrative grievance and notice pleading, explaining that as in a notice pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming.")(interior quotation marks and alteration omitted)). However, Magistrate Judge Peebles also indicated in a footnote: "In attacking the claims falling into group one, defendants have not argued that plaintiff failed to file grievances regarding the underlying constitutional deprivations. Accordingly, I have not scoured the available record to determine whether plaintiff did, in fact, file grievances addressing those violations." Rep. Rec. p. 19, n. 15. Thus, defendants appear to be raising an issue that was not presented to Magistrate Judge Peebles.

**\*6** While the question of "[w]hether a party may raise a new legal argument ... for the first time in objections to [a magistrate judge's report and recommendation] has not yet been decided in this Circuit, ... [s]ome courts in

Shepherd v. Lempke, Not Reported in Fed. Supp. (2017)

2017 WL 1187859

this circuit have stated, as a general matter, that a 'party waives any arguments not presented to the magistrate judge. *Levy v. Young Adult Institute, Inc.*, 2015 WL 1958889, at *4 (S.D.N.Y. Apr. 30, 2015). Other courts have held that district courts should not consider belatedly made arguments because doing so negates "efficiencies gained through the Magistrates Act and would permit litigants to change tactics after the issuance of [a report and recommendation]." *Amadasu v. Ngati*, 2012 WL 3930386, at *5 (E.D.N.Y. Sept. 9, 2012). District Judge D'Agostino has held that "[l]egal arguments may not be raised for the first time in an objection." *Lewyckyj v. Colvin*, 2014 WL 3534551, at *2 (N.D.N.Y. July 17, 2014)(citing *Abu–Nassar v. Elders Futures. Inc.*, 1994 WL 445638, *5 n. 2 (S.D.N.Y. Aug. 17, 1994))("If the Court were to consider ... untimely contentions, it would unduly undermine the authority of the Magistrate Judge by allowing litigants the option of waiting until a Report is issued to advance additional arguments.").

The Court finds that the defendants have waived the argument that plaintiff's grievances from 2009 at Clinton Correctional Facility failed to assert the basis of a denial of religious freedom claim against Artus. Defendants could have raised the argument before Magistrate Judge Peebles who conducted an extensive review of the claims in this matter and a thorough fact-finding hearing. To allow defendants to raise the matter now would undermine the authority of Magistrate Judge Peebles, negate the judicial efficiencies gained through the report and recommendation procedure, and seemingly allow defendant to raise a new argument in a forum that does not ordinarily invite adversarial responses. Moreover, defendants failed to attach to their objections the two grievances to which they refer, nor do they point the Court to where in the record the grievances could be found. Thus, efficiency and fairness does not militate in favor of considering the matter now. Still further, the defendants fail to provide any reason why the issue was not raised before Magistrate Judge Peebles, and the Court does not find that manifest injustice will result if the new argument is not considered. Accordingly, defendants' objection in this regard is overruled.

### 2. Claims against Colvin & Lempke

Claims 16, 17, and 18 against defendant Colvin, and claims 26, 27, 28 against defendant Lempke, are for

excessive use of force, denial of religious freedom, and retaliation allegedly occurring at Upstate Correctional Facility. *See* Am. Comp. ¶¶ 86, 105 and 108. Defendants argue that because (1) the Amended Complaint "generally reads in chronological order; (2) paragraph 86 is embedded in the section entitled "Denial of Medical Care;" and, (3) paragraph 86 encompasses paragraphs 62-109, "it is clear from reading this section of the amended complaint as a whole that plaintiff is referring to a time period prior to, or at most, to June 22, 2010. This is such because the subsequent paragraph, 87, clearly begins with allegations stemming from June 22, 2010." Def. Mem. L. p. 2. Defendants further assert that "Plaintiff's movement history shows that between August 7, 2009 and June 22, 2010, he was not housed at Upstate." *Id.* From this, defendants argue that because "supervisors cannot be liable for the conduct, policies or procedures of staff at a different facility," *id.,* Colvin and Lempke cannot be held responsible for claims 16, 17, 18, 26, 27, and 28. *See id.* ("[I]rrespective of whether [plaintiff] filed grievances regarding the underlying claims contained in paragraph 86, plaintiff's claims against Colvin and Lempke are misplaced in their capacity as supervisors because these defendants could not have had any control over the conditions in another facility, and therefore they were not personally involved."). Thus, defendants contend that the Court should "dism iss these claims against Colvin and Lempke." *Id.*

**\*7** Defendants' argument is not addressed to Magistrate Judge Peebles's recommendation that dealt with whether plaintiff exhausted his administrative remedies, but rather to whether claims 16, 17, 18, 26, 27, and 28 are legally viable. Because this objection is not addressed to an alleged error by Magistrate Judge Peebles in recommending whether plaintiff exhausted administrative remedies, but rather appears to be an attempt to convert a 28 U.S.C. § 636(b)(1) objection into a Rule 56 summary judgment motion, the objection is overruled. Defendants can challenge the sufficiency of these claims at the time of trial.

### 3. Claims against Artus, Colvin, and Lempke

Defendants make similar arguments addressed to the legal sufficiency of claims brought against Artus, Colvin, and Lempke in paragraphs 105 and 108. For the reasons discussed above, defendants' objections in this regard are

Shepherd v. Lempke, Not Reported in Fed. Supp. (2017)

2017 WL 1187859

overruled. Again, defendants can challenge the sufficiency
of these claims at the time of trial.

### 4. Claims 15, 20, 23, and 32

Claims 15, 20, 23, and 32 against Defendant Prebalick,
Cioffa, Evans and Jones allege excessive use of force
and the failure to protect on May 6, 2010. With regard
to administrative exhaustion of these claims, Magistrate
Judge Peebles found:

> All of these claims relate to the same incident that
> allegedly occurred on May 6, 2010, and involved the
> use of force by defendants Prebalick, Cioffa, and
> Evans. Dkt. No. 45 at 5. Plaintiff also alleges that
> defendant Jones was present for, and failed to protect
> him from, the use of force. *Id.* In support of plaintiff's
> contention that he filed a grievance, dated May 7, 2010,
> regarding the excessive force and failure to protect
> claims asserted against defendants Prebalick, Cioffa,
> Evans, and Jones, plaintiff adduced, *inter alia*, a letter
> he addressed to Karen Bellamy, the DOCCS Director
> of Inmate Grievance, dated August 13, 2010, inquiring
> about the status of "several grievances [he had filed] in
> May 2010[.]" Exhs. P-E-6, P-G-6. Bellamy responded to
> plaintiff in a letter dated September 22, 2010, pointing
> out that her review of prison records demonstrated
> that plaintiff had filed six grievances at Five Points in
> May 2010. Exhs. P-E-7, P-G-7. By the time plaintiff
> sent his letter to Bellamy on August 17, 2010, he
> had received a response to five other grievances he
> had filed in May 2010. Exhs. D-7, D-8, D-9, D-10,
> D-11. It remains a mystery why some of the grievances
> filed by plaintiff at Five Points in May 2010 were
> processed but not the grievance allegedly relating to the
> incident involving defendants Prebalick, Cioffa, Evans,
> and Jones on May 6, 2010. One possible explanation is
> that plaintiff did not actually file a grievance. Another
> possibility is that, assuming plaintiff filed the grievance,
> prison officials interfered, intentionally or not, in a
> manner that resulted in plaintiff's grievance never being
> processed. Unlike plaintiff's testimony regarding other
> claims in groups three and four, his testimony regarding
> claims 15, 20, 23, and 32 is accompanied by his
> letter to Bellamy, which is stamped as having been
> received by Bellamy's office, and Bellamy's response
> to his letter. Exhs. P-E-6, P-E-7, P-G-6, P-G-7.
> Because the contents of those letters plausibly suggest

> that plaintiff's grievance related to the incident on
> May 6, 2010, involving defendants Prebalick, Cioffa,
> Evans, and Jones was submitted but never processed,
> I have credited plaintiff's testimony regarding the
> claims arising from that incident only. Accordingly, I
> recommend defendants' motion to dismiss be denied
> with respect to claims 15, 20, 23, and 32.

**\*8** Rep. Rec. pp. 28-29.

Defendants argue, *inter alia*, that "[a]lthough the last
line of plaintiff's letter to Bellamy indicates 'please find
the enclosed unanswered grievances,' and even affording
plaintiff the benefit that the letters contained in [the
various exhibits] are the enclosure he is referring to,
plaintiff still falls short of proper exhaustion. Respectfully,
[Magistrate Judge Peebles] did not address the next
inquiry which is whether plaintiff appealed the non-
response to the Superintendent." Def. Mem. L., p. 3.

In *Johnson v. Tedford*, 616 F. Supp. 2d 321 (N.D.N.Y
2007), the court indicated that "in light of the Second
Circuit's [*Hemphill v New York*, 380 F.3d 680 (2d Cir.
2004) ] decision, several Southern District cases have
recognized that when a prisoner asserts a grievance to
which there is no response, and it is not recorded or
assigned a grievance number, administrative remedies
may be completely exhausted, as there is nothing on
record for the next administrative level to review."
*Id.* at 326. However, and despite that the exceptional
circumstance exception of *Hemphill* has recently been
abrogated, [5] *Johnson* has been repeatedly distinguished by
the Northern District. As Chief Judge Suddaby wrote in
*Smith v. Kelly*, 985 F. Supp. 2d 275 (N.D.N.Y. 2013):

> There appears to be a conflict
> in case law regarding whether
> the IGRC's nonresponse must be
> appealed to the superintendent
> where the plaintiff's grievance was
> never assigned a grievance number.
> After carefully reviewing this case
> law, the Court finds that the weight
> of authority (and better-reasoned
> authority) answers this question in
> the affirmative. The Court notes
> that, if the plaintiff adequately
> describes, in his appeal to the

Case 9:18-cv-00339-GTS-ML    Document 60    Filed 06/27/19    Page 85 of 103

Shepherd v. Lempke, Not Reported in Fed. Supp. (2017)

2017 WL 1187859

superintendent, the substance of his grievance (or if the plaintiff attaches, to his appeal, a copy of his grievance), and the plaintiff adequately describes the failure to process the grievance, there is something for the superintendent to review.

*Id.* at 281–82 (N.D.N.Y. 2013)(collecting cases).

**\*9** Based on the weight of authority, the Court agrees with defendants that the failure by the IGRC or the Superintendent to timely respond to a grievance or first level appeal must itself be appealed to the next level, including the CORC, in order to properly complete the grievance process. *See Simmon v. Uhler*, 2015 WL 5655561, at \*4 (N.D.N.Y. Sept. 24, 2015) ("[T]he failure by the IGRC or the Superintendent to timely respond to a grievance or first level appeal must be appealed to the next level, including the CORC, in order to properly complete the grievance process.")(citing *Pacheco v. Drown*, 2010 WL 144400, at \*19 & n. 21 (N.D.N.Y. Jan. 11, 2010); *Smith v. Kelly*, 985 F. Supp.2d at 281–82 & n. 8 (N.D.N.Y. 2013)); *Goodson v Silver*, 2012 U.S. Dist. LEXIS 137177, at \*11, 2012 WL 4449937 (N.D.N.Y. Sept. 25, 2012) (stating that "any failure by the IGRC or the superintendent to timely respond to a grievance or first-level appeal, respectively, can—and must—be appealed to the next level, including CORC, to complete the grievance process"); *Veloz v New York*, 339 F. Supp.2d 505, 516 (S.D.N.Y. 2004) (holding that an inmate in the New York

State system was required to appeal even if he did not get a response to allegedly misplaced or destroyed grievances).

The law is clear that simply writing letters to supervisory officials is insufficient to exhaust administrative remedies, *Simmon*, 2015 WL 5655561, at \*4 n. 5 (citing *Perez v. Blot*, 195 F. Supp.2d 539, 544-45 (S.D.N.Y. 2002) (citing cases)); *Masas v. Conte*, 2015 U.S. Dist. LEXIS 50527 (N.D.N.Y Mar. 25, 2015), so plaintiff's letter to Bellamy does not satisfy his exhaustion obligation. Moreover, there is no evidence that plaintiff, "an experienced *pro se* litigant who has filed multiple actions in this and other courts as a New York State prison inmate," Rep. Rec. 2, who undoubtedly was familiar with the grievance and appeal process, *see* Hear Tr. pp. 113:15 – 116:6,[6] 128:21-129:4,[7] Def. Post-Hearing Mem. L. p. 10,[8] appealed the non-response to his grievance addressed to the facts underlying claims 15, 20, 23, and 32 against Prebalick, Cioffa, Evans and Jones. Accordingly, these claims are dismissed for failure to exhaust administrative remedies.

### IV. CONCLUSION

For the reasons discussed above, Magistrate Judge Peebles's October 28, 2016 Report and Recommendation, Dkt. No. 252, is accepted in part and rejected in part, as follows:

(1) The following claims are deemed exhausted and remain pending for trial:

| Claim No. | Defendant | Nature of Claim | Facility | Amended Complaint ¶ |
| --- | --- | --- | --- | --- |
| 3 | Artus | Medical Indifference | Clinton | 31, 104-05,108-09 |
| 4 | Artus | Religious Interference | Clinton | 31, 104-05,108-09 |
| 13 | Carlee | Retaliation | Five Points | 18 |
| 16 | Colvin | Excessive Force | Upstate | 86, 105, 108 |
| 17 | Colvin | Religious | Upstate | 86, 105, 108 |
| 18 | Colvin | Retaliation | Upstate | 86, 105, 108 |
| 19 | Cunningham | Due Process | Green | 107 |

2017 WL 1187859

| 26 | Lempke | Excessive Force | Upstate | 86, 105, 108 |
|----|--------|-----------------|---------|--------------|
| 27 | Lempke | Religious | Upstate | 86, 105, 108 |
| 28 | Lempke | Retaliation | Upstate | 86, 105, 108-09 |
| 34 | Prebalick | Excessive Force | Five Points | 35 |
| 35 | Ramus | Due Process | Five Points | 107 |

**\*10**  (2) The following claims will also proceed to trial based on the parties' failure to address them in connection with defendants' exhaustion defense:

| Defendant | Cause of Action | Prison Facility |
|-----------|-----------------|-----------------|
| Amatucci | Medical Indifference | Downstate |
| Barber | Failure to Protect | Five Points |
| N. Bezio | Due Process | DOCCS Hq. |
| Cambria | Excessive Force | Unknown |
| Chesbrough | Retaliation | Upstate |
| Holmes | Retaliation | Upstate |
| Rock | Religious Interference | Upstate |
| Lashway (formerly sued as Hawthorne) | Medical Indifference | Clinton |

(3) The following claims are dismissed based upon plaintiff's representation that they are not being asserted in this action:

| Claim No. | Defendant | Nature of Claim | Facility | Amended Complaint ¶ |
|-----------|-----------|-----------------|----------|---------------------|
| 10 | Bower | Failure to Protect | Five Points | 15 |
| 11 | Bower | Retaliation | Five Points | 15 |
| 21 | Evans | ReligiousInterfer. | Five Points | 32 |

(4) The following claims are dismissed based upon the fact that complete exhaustion occurred only after this action was filed:

| Claim No. | Name | Nature of Claim | Facility | Amended Complaint ¶ |
|-----------|------|-----------------|----------|---------------------|
| 6 | Belsio | Religious Interference | Upstate | 41, 42 |
| 8 | Atkinson | Retaliation | Upstate | 90, 91 |
| 25 | Lashway | Medical Indifference | Clinton | 75, 76 |

Case 9:18-cv-00339-GTS-ML    Document 60    Filed 06/27/19    Page 87 of 103

Shepherd v. Lempke, Not Reported in Fed. Supp. (2017)
2017 WL 1187859

| 31 | Prebalick | Religious Interference | Five Points | 35 |
| 36 | Rowe | Failure to Protect | Upstate | 43 |
| 37 | Rozwell | Excessive Force | Upstate | 43 |
| 38 | Rozwell | Religious Interference | Upstate | 43 |

(5) The following claims are dismissed based upon plaintiff's failure to fully exhaust them:

| Claim No. | Name | Nature of Claim | Facility | Amended Complaint ¶ |
| --- | --- | --- | --- | --- |
| 5 | Belsio | Excessive Force | Upstate | 41, 42 |
| 7 | Belsio | Religious | Upstate | 41, 42 |
| 9 | Bower | Excessive Force | Five Points | 15 |
| 12 | Carlee | Religious | Five Points | 34 |
| 14 | Carlee | Excessive Force | Five Points | 34 |
| 22 | Fairchild | Retaliation | Upstate | 92 |
| 24 | Jones | Medical Indifference | Five Points | 87 |
| 29 | Menard | Excessive Force | Clinton | 28 |
| 30 | Menard | Religious | Clinton | 28 |
| 33 | Prebalick | Excessive Force | Five Points | 16 |
| 15 | Cioffa | Excessive Force | Five Points | 19, 20 |
| 20 | Evans | Excessive Force | Five Points | 20 |
| 23 | Jones | Failure to Protect | Five Points | 21 |
| 32 | Prebalick | Retaliation | Five Points | 19-22 |

The Court Clerk's Office shall now schedule three trials for the remaining claims in accordance with the Court's September 22, 2015 Decision and Order, Dkt. No. 202, taking into account claims and defendants that are dismissed from the action by this Decision and Order. To aid the Court Clerk's Office in scheduling these trials, each part shall submit, within thirty (30) days, a status letter indicating the claims and defendants that remain pending and that they contend should be tried in each of the trials ordered by the Court on September 22, 2015, Dkt. No. 202.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2017 WL 1187859

Footnotes

Shepherd v. Lempke, Not Reported in Fed. Supp. (2017)

Case 9:18-cv-00339-GTS-ML    Document 60    Filed 06/27/19    Page 88 of 103

2017 WL 1187859

1    "Generally speaking, Shepherd alleges that he was sexually and physically assaulted, and deprived of his freedom of religion, procedural due process, access to the courts, and adequate medical care." Rep. Rec. p. 3.

2    Part of this procedural history is that the Court adopted Magistrate Judge Peebles's previous recommendation to grant defendants' motion that plaintiff's claims be divided into three categories with each group being tried separately. *See* Rep. Rec. p. 6; *see also* Dkt. No. 202. At the time this decision was entered, the three groups anticipated for purposes of trial were:

     (1) All claims involving events at the Clinton Correctional Facility, plus a medical indifference claim against Dr. Amatucci arising from events at the Downstate Correctional Facility, and related claims against defendants Artus, Amatucci, Lashway, and Menard.

     (2) All claims involving events at the Five Points Correctional Facility against defendants Barber, Bower, Carlee, Cioffa, Jones, Evans, Prebalick, and Ramus, plus plaintiff's due process claim against defendants Cunningham and Bezio arising from the events at the Green Haven Correctional Facility.

     (3) All remaining claims, including those relating to events at the Upstate Correctional Facility, plus an excessive force cause of action against defendant Cambria based upon the events at an undetermined location. This third trial will include the following defendants: Belsio, Cambria, Colvin, Holmes, Fairchild, Atkinson, Chesbrough, Lempke, Rock, Rowe, and Rozwell.

     *See* Rep. Rec. p. 6; *see also* Dkt. No. 202.

3    ("[P]risoners must comply with all procedural rules regarding the grievance process prior to commencing an action in federal court. *See* Woodford v. Ngo, 548 U.S. 81, 83–85 (2006). Thus, completion of the exhaustion process after a federal action has been filed does not satisfy the exhaustion requirement. *See* Neal v. Goord, 267 F.3d 116, 122 (2d Cir. 2001). Accordingly, I instructed Stimpson that any amended complaint must include allegations regarding any attempts by him to exhaust administrative remedies with regard to his claims prior to filing this lawsuit.")

4    In this regard, Magistrate Judge Peebles wrote:

     Having reviewed the evidence and observed his demeanor, I conclude that, with limited exception, which will be discussed more below, plaintiff was not credible insofar as he testified that he submitted grievances concerning the incidents that are the basis for his claims in groups three and four. It is worth noting that, while plaintiff was able to produce alleged copies of the grievances and follow-up letters that relate to the claims in group three at the exhaustion hearing, those documents were not provided to defendants during the course of discovery. Dkt. No. 249-2 at 79. Plaintiff explained that he failed to produce those documents earlier in the litigation because he had sent copies of the grievances and letters to his family members for safekeeping but was only recently able to retrieve them. *Id.* at 83-85. Plaintiff did not offer any explanation as to why copies of some but not all of his grievances and letters were available from his family members. Moreover, his explanation concerning which of his family members possessed those grievances has been inconsistent. At the hearing, plaintiff testified that the copies were retrieved from his son, *id.* at 84, but plaintiff testified under oath during his deposition that his wife was in possession of any document that had not previously been produced during discovery. *Id.* at 85-86.

     Plaintiff's credibility must be measured with his prior grievance history as a backdrop. Plaintiff is no stranger to the grievance process, and there is no evidence that, aside from the grievances related to the claims in groups three and four, plaintiff has experienced any difficulty in filing and pursuing grievances over the course of his incarceration. Indeed, according to Jeffrey Hale, the Assistant Director of the DOCCS Inmate Grievance System, as of one day prior to the start of the hearing, plaintiff had appealed 445 grievances to the CORC, with an additional nine appeals then-pending. Dkt. No. 249-2 at 128-29. The sheer number of grievances that plaintiff has pursued during his incarceration leaves no doubt that he is well-versed in the grievance process.

     In my view, the evidence adduced by the parties with regard to the claims in group three and four support a recommended finding that, except with respect to claims 15, 20, 23, and 32, all of the claims are unexhausted and subject to dismissal on that basis. Although plaintiff adduced purported copies of grievances and/or letters regarding his exhaustion attempts in connection with claims 9, 12, 14, 29, 30, and 33, all of which are part of group three, there is no independent evidence to corroborate plaintiff's testimony in this regard. In addition, there is no record evidence at all to support plaintiff's hearing testimony that he filed grievances regarding claims 5, 7, and 24 in group four. Because I did not find plaintiff's testimony credible for the reasons already discussed above, I recommend the court dismiss claims 5, 7, 9, 12, 14, 24, 29, 30, and 33 as unexhausted.

5    In Ross v. Blake, —— U.S. —— 136 S. Ct. 1850 (2016), the Supreme Court rejected the Second Circuit's "extra-textual" exception to the PLRA's exhaustion requirement which allowed the taking into account of "special circumstances" to justify a prisoner's failure to comply with administrative procedural requirements. *See* Ross, 136 S. Ct. at 1856-57. *Ross* has

Shepherd v. Lempke, Not Reported in Fed. Supp. (2017)

Case 9:18-cv-00339-GTS-ML    Document 60    Filed 06/27/19    Page 89 of 103

2017 WL 1187859

been interpreted as abrogating the special-circumstances exception set forth in *Hemphill*. *See Riles v. Buchanan,* 656 Fed. Appx. 577, 581 (2d Cir. 2016)("Finally, to the extent Riles relies on our decision in *Hemphill* ... to argue that special circumstances excuse his failure to exhaust available remedies, that avenue has been foreclosed.")(citing *Williams v. Priatno,* 829 F.3d 118, 123, 2016 WL 3729383, at *4 (2d Cir. July 12, 2016))(explaining that *Ross* abrogated the special-circumstances exception and "supplant[ed] our *Hemphill* inquiry by framing the exception issue entirely within the context of whether administrative remedies were actually available").

6   Jeffrey Hale, Assistant Director of the Central Office Review Committee, testified at plaintiff's evidentiary hearing that there are safeguards in place in DOCCS' grievance process for inmates specifically for this type of situation, as plaintiff purports to be. Hear Tr. pp. 113:15 – 116:6. That is, if an inmate does not receive a response to a grievance, "[t]hey just write a simple note to the IGRC clerk or they can address it to the inmate grievance program supervisor requesting to appeal that grievance to the next level of review." Hear Tr. p. 113:15-23. Mr. Hale testified that inmates have a two week timeframe within which to file an appeal of a non-response to the Superintendent, and, in addition, inmates also have the same recourse for filing a late appeal as they would a timely appeal. *Id.* 114:9-115:25.

7   Mr. Hale testified that, at the time of plaintiff's hearing, plaintiff had successfully exhausted 445 grievances and had 6 appeals pending. Hear. Tr. p. 113:15-23.

8   Defendants contend that Plaintiff successfully exhausted an estimated 300 grievances at the time he filed this law suit. Def. Post-Hearing Mem. L., p. 10 (citing Hearing Ex. D-3).

---

**End of Document**                                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

2007 WL 957530
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Shawn Michael SNYDER, Plaintiff,
v.
Glenn S. GOORD, et al., Defendants.

Civil Action No. 9: 05-CV-01284.
|
March 29, 2007.

**Attorneys and Law Firms**

Shawn Michael Snyder, Pro Se.

Hon. Andrew M. Cuomo, Attorney General of the State of New York, Christopher W. Hall, Esq., Assistant Attorney General, of counsel, Albany, NY, for Defendants.

**DECISION & ORDER**

THOMAS J. McAVOY, Senior United States District Judge.

**\*1** This *pro se* action brought pursuant to 42 U.S.C. § 1983 was referred by this Court to the Hon. David E. Peebles, United States Magistrate Judge, for a Report-Recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule N.D.N.Y. 72.3(c). The Report, Recommendation and Order dated February 27, 2007 recommended

> that defendants' motion for summary judgment dismissing plaintiff's complaint (Dkt. No. 20) be GRANTED, in part, and that plaintiff's legal mail claim be DISMISSED in its entirety, and further that all remaining claims be DISMISSED as against defendants Goord, Roy, Plescia and Miller, but that it otherwise be DENIED, and that the matter proceed with regard to plaintiff's constitutional claims

> against defendants Whittier and Funnye based upon events occurring at the Washington Correctional Facility.

Rep., Rec. & Ord., p. 33.

Plaintiff and Defendants have filed objections to the Report-Recommendation. When objections to a magistrate judge's Report-Recommendation are lodged, the Court reviews the record *de novo. See* 28 U.S.C. § 636(b)(1). After such a review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge]. The [Court] may also receive further evidence or recommit the matter to the magistrate [judge] with instructions." *Id.*

Having reviewed the record *de novo* and having considered the issues raised in the objections, this Court has determined to accept and adopt the recommendation of Magistrate Judge Peebles for the reasons stated in the February 28, 2007 Report-Recommendation with one modification as set forth below.

In this regard, it is hereby

**ORDERED** that Defendants' motion for summary judgment [dkt. No. 20] is **GRANTED in part and DENIED in part.** Plaintiff's legal mail claim is **DISMISSED in its entirety.** Further all remaining claims against Defendants Goord, Roy, Plescia and Miller are **DISMISSED.** The motion is denied with regard to Plaintiff's constitutional claims against Defendants Whittier and Funnye based upon events occurring at the Washington Correctional Facility, but Defendants are **granted leave to renew** the motion following a period of discovery. Accordingly, Defendants may assert in their renewed motion, should they decide to file one, that Plaintiff failed to exhaust his administrative remedies by failing to promptly file a grievance once at Groveland Correctional Facility.

**IT IS SO ORDERED.**

*REPORT, RECOMMENDATION AND ORDER*

DAVID E. PEEBLES, U.S. Magistrate Judge.

Plaintiff Shawn Michael Snyder, an openly gay New York State prison inmate who is proceeding *pro se* and *in forma pauperis,* has commenced this action pursuant to [42 U.S.C. § 1983](#) to complain principally of a series of occurrences which he attributes to his sexual orientation, including harassment by prison workers and fellow inmates and, in one instance, an assault by a corrections officer. Plaintiff's complaint, which is comprehensive, asserts constitutional claims under the First, Fourth, Eighth and Fourteenth Amendments arising out of those incidents as well as his apparently unsuccessful efforts to contact the National Gay and Lesbian Task Force to elicit that agency's assistance.

**\*2** In lieu of answering his complaint, defendants have instead moved for summary judgment dismissing plaintiff's claims based upon his failure to exhaust available administrative remedies before commencing suit and, in the case of some of the defendants and one entire claim, plaintiff's failure to allege and establish their personal involvement in the constitutional deprivations at issue. For the reasons set forth below I recommend that plaintiff's claims against defendants Goord, Roy, Miller and Plescia, as well as his cause of action for alleged interference with his legal mail, be dismissed on the basis of a lack of sufficient personal involvement in the constitutional violations alleged. Finding the existence of a genuine issue of material fact surrounding plaintiff's efforts to exhaust administrative remedies, however, I recommend that the portion of defendants' motion seeking dismissal of plaintiff's remaining claims on this procedural basis be denied.

## I. *BACKGROUND* [1]

Plaintiff, who at the times relevant to his claims was a prison inmate entrusted to the custody of the New York State Department of Correctional Services ("DOCS"), has over time been confined in various DOCS facilities. Complaint (Dkt. No. 2) at 2. The bulk of plaintiff's claims were precipitated by events which transpired while he was housed in the Washington Correctional Facility ("Washington") although, as will later be seen, certain of the occurrences which followed his transfer out of Washington and ultimately into the Groveland Correctional Facility ("Groveland") are relevant to some of his claims, as well as to the issue of whether he properly exhausted available administrative remedies before commencing this action. *Id.; see also* O'Brien

Aff. (Dkt. No. 20) ¶ 4. The plaintiff is gay, a fact which according to him was common knowledge within Washington during the time of his confinement within that facility. Complaint (Dkt. No. 2) ¶ 2.

The circumstances giving rise to plaintiff's centerpiece claim date back to May of 2005, when he was transferred from another location within Washington into the prison's B-2 housing dormitory. Complaint (Dkt. No. 2) ¶ 1. Immediately following that transfer Snyder began to experience verbal threats and abuse, attributed by the plaintiff to his sexual orientation, at the hands of defendant Whittier, a corrections officer. *Id.* ¶ 1. According to Snyder the abuse spread, fueled by encouragement from defendant Whittier, resulting in harassment from fellow inmates, who engaged in a variety of abusive and hostile acts which included the throwing of trash, objects, debris and body fluids at him. *Id.* ¶¶ 2-27.

Defendant Whittier's ongoing harassment of the plaintiff led to a confrontation between the two on June 1, 2005, during the course of which Snyder was physically assaulted by the officer, who thrust his elbow and forearm into plaintiff's throat, forcing him to the floor. *Id.* ¶¶ 24-36. Once plaintiff was on the floor, defendant Whittier placed his knees on Snyder's middle back area and neck, and pulled his left arm up behind his back. *Id.* Toward the end of the encounter defendant Whittier pulled the plaintiff up by his arm and hair and dragged him out of the area, pushing him into a wall and punching his kidney area several times in the process. *Id.* ¶¶ 33-39.

**\*3** On June 3, 2005 plaintiff was treated for injuries sustained during the encounter with Corrections Officer Whittier, and was transferred into the E-1 dormitory within Washington. Complaint (Dkt. No. 2) ¶¶ 47, 51. While housed in that unit Snyder was approached and advised by several inmates that they had been encouraged by other inmates, as well as by defendant Whittier, to assault him. *Id.* ¶¶ 51-54.

Plaintiff was again transferred within Washington on or about June 20, 2005, on this occasion having been re-assigned to the D-1 housing dormitory. Complaint (Dkt. No. 2) ¶ 57. While residing within that unit, plaintiff had his locker broken into and some of his personal property stolen, an event for which he blames fellow inmates. *Id.* ¶¶ 70.

Out of concern over reprisals which could result from his taking such action, plaintiff did not file a formal grievance regarding the assault by Corrections Officer Whittier while at Washington. Complaint (Dkt. No. 2) ¶¶ 51-54. As justification for that fear, plaintiff cites defendant Whittier's reported efforts to have him harmed by other inmates following his transfer out of the dormitory to which Whittier was assigned. *Id.* Plaintiff did, however, take other steps while at Washington to lodge complaints regarding defendant Whittier's actions. After earlier complaints registered verbally to other prison employees, including Corrections Officers Funnye and Graves, went unaddressed, *see* Complaint (Dkt. No. 2) ¶¶ 21, 42, plaintiff sent a letter dated July 7, 2005 to Corrections Lieutenant Greene, complaining of the assault by defendant Whittier and expressing fear of retribution at the hands of that corrections officer; a copy of that letter was forwarded by Snyder to Corrections Lieutenant Hopkins. [2] Complaint (Dkt. No. 2) ¶ 60 & Exh. 1. Five days later, apparently precipitated by his letter to Lieutenant Greene, plaintiff was asked by Corrections Sergeant Belden to provide a formal, written statement regarding the assault, and was taken by Sergeant Belden to the prison infirmary for a medical evaluation. Complaint (Dkt. No. 2) ¶ 61.

On July 14, 2005, plaintiff was transferred temporarily into the Great Meadow Correctional Facility, where he was interviewed on the following day by defendant Miller, an Assistant Deputy Inspector General for the DOCS, regarding the alleged assault by defendant Whittier. Complaint (Dkt. No. 2) ¶¶ 62-64. During that session, defendant Miller advised Snyder that he had been transferred out of Washington for his safety, and that in light of his sexual orientation and the significant probability that similar acts would recur in the future, his contemplated transfer into the Greene Correctional Facility had been rescinded, and instead he would be moved "West and closer to home [.]" *Id.* ¶ 66. Later that day, plaintiff was transferred into the Groveland Correctional Facility. *Id.* ¶ 67.

Plaintiff reiterated his interest in pursuing his claims against Corrections Officer Whittier by letter dated July 22, 2005 sent to Investigator Miller. Complaint (Dkt. No. 2) Exh. 3. Despite sending subsequent written communications to defendant Miller and others, however, as of the time of commencement of this action plaintiff still had not been apprised of the status of the Inspector General's investigation into his allegations regarding Corrections Officer Whittier. *Id.* ¶¶ 67-69; *see also* Complaint (Dkt. No. 2) Exhs. 9, 17.

**\*4** On August 24, 2005, while at Groveland, plaintiff filed a formal grievance regarding the physical assault involving Corrections Officer Whittier. Complaint (Dkt. No. 2) ¶ 76 and p. 60, ¶ B. That grievance was rejected, however, based upon the fact that it was filed beyond the fourteen day deadline for initiating such grievances, and did not recite any mitigating circumstances which would provide a ground for overlooking its lateness. [3] *Id.; see also* O'Brien Aff. (Dkt. No. 20) ¶ 8 & Exh. 2; Defendants' Local Rule 7.1(a)(3) Statement (Dkt. No. 22) ¶ 27. Plaintiff did not appeal that determination, or any other grievance alleging harassment, excessive force, or other similar claims arising out of events at Washington, to the Central Officer Review Committee ("CORC"). Eagan Aff. (Dkt. No. 20) ¶¶ 5-6.

On August 19, 2005 plaintiff endeavored to send a letter to the National Gay and Lesbian Task Force seeking the assistance of that organization; claiming that it qualified as legal mail, Snyder attempted to forward that communication without paying for postage. Complaint (Dkt. No. 2) ¶ 71. Prison officials rejected plaintiff's efforts, however, concluding that the communication did not fall within the prevailing definition of legal mail, and returned it to the plaintiff on August 22, 2005. *Id.* Plaintiff thereafter resent the letter on August 23, 2005, with proper postage affixed. *Id.* ¶ 72. The letter was later returned to the plaintiff on September 2, 2005, marked as "undeliverable". *Id.* ¶ 73. When the letter was returned plaintiff found that it had been opened, apparently by personnel within the Groveland mailroom. *Id.*

On August 29, 2005 plaintiff filed a grievance at Groveland seeking, as relief, a determination that the National Gay and Lesbian Task Force constituted a legal entity and that, as such, he should be permitted to send and receive correspondence from that organization as "legal mail". *Id.* ¶ 74 & Exh. 16. Plaintiff's grievance was denied at the local level, including by the facility superintendent, and that unfavorable determination was upheld on appeal to the CORC. *Id.* ¶ 75 & Exh. 16.

## II. *PROCEDURAL HISTORY*

2007 WL 957530

Plaintiff commenced this action on or about September 27, 2005. [4] Dkt. No. 2. Named as defendants in Snyder's complaint are DOCS Commissioner Glenn S. Goord; Richard Roy, the DOCS Inspector General; Assistant Deputy Inspector General Mark Miller; James Plescia, the Superintendent at Washington; and Corrections Officers Whittier and Funnye. *Id.* Plaintiff's complaint asserts a variety of claims growing out of the events at Washington and Groveland, alleging deprivation of his rights under the First, Fourth, Eighth and Fourteenth Amendments to the United States Constitution, as well as a host of pendent state statutory and common law claims. [5] As relief, plaintiff seeks both the entry of an injunction and awards of compensatory and punitive damages.

**\*5** In lieu of answering plaintiff's complaint, defendants instead have chosen to interpose a motion seeking the entry of summary judgment. Dkt. No. 20. In that motion, which was filed on March 9, 2006, defendants assert that plaintiff's harassment and excessive force claims are procedurally barred based upon his failure to file and pursue to completion an internal grievance regarding those matters before commencing suit. *Id.* Defendants also argue that defendants Goord, Ray, Plescia, and Miller were not personally involved in any of the violations asserted, and that all of the defendants lack personal involvement with regard to plaintiff's legal mail cause of action. *Id.* Plaintiff responded in opposition to defendants' motion on April 12, 2006, Dkt. No. 23, and defendants have since filed a reply in further support of their motion. Dkt. No. 23.

Defendants' motion, which is now ripe for a determination, has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See also* Fed.R.Civ.P. 72(b).

## III. *DISCUSSION*

### A. *Consequences of Defendants' Failure to Answer or Move to Dismiss*

While plaintiff has not raised this issue, one could argue that by their failure either to answer or to interpose a motion cognizable under Rule 12(b) of the Federal Rules of Civil Procedure within the allotted time, defendants are in default. Defendants' motion is brought under Rule 56 of the Federal Rules of Civil Procedure and does not, as an alternative, seek dismissal under Rule 12(b). While Rule 12(b) of the Federal Rules of Civil Procedure contains a specific provision in effect staying the requirement of answering a complaint during the pendency of a motion brought under its provision, Rule 56 does not contain a parallel provision.

Some courts confronted with this procedural setting have concluded that the interposition of a motion for summary judgment qualifies as otherwise defending against a complaint, and that as such no default is presented under the circumstances. *See, e.g., Rashidi,* 818 F.Supp. at 1355-56. Other courts, however, have noted that there is no automatic entitlement to a delay of the time to answer as a result of the filing of a summary judgment motion, the matter instead being addressed to the discretion of the court to extend that period, as authorized under Rule 6(b) of the Federal Rules of Civil Procedure. [6] *See, e.g., Poe v. Cristina Copper Mines, Inc.,* 15 F.R.D. 85, 87 (D.Del.1953).

Since this is not a situation where a motion to dismiss was initially filed but converted by the court to a summary judgment motion, a circumstance which would warrant a finding that the stay provisions of Rule 12 apply, *see Brooks v. Chappius,* No. 05-CV-6021, 2006 WL559253, at \*1 (W.D.N.Y. Mar. 1, 2006), defendants are technically in default. In light of the circumstances presented, however, I find that the defendants have demonstrated their intention to defend against plaintiff's claims and, concluding that there is good cause for doing so, will order a stay of their time to answer plaintiff's complaint until ten days after a determination by the assigned district judge in connection with the pending motion. *See Rashidi,* 818 F.Supp. at 1355-56.

### B. *Summary Judgment Standard*

**\*6** Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10 (1986); *Security Ins. Co. of Hartford v. Old Dominion*

*Freight Line, Inc.,* 391 F.3d 77, 82-83 (2d Cir.2004). A fact is "material", for purposes of this inquiry, if "it might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *see also Jeffreys v. City of New York,* 426 F.3d 549, 553 (2d Cir.2005) (citing *Anderson).* A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, they must establish more than merely "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986); *but see Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 620-21 (2d Cir.1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process).

When summary judgment is sought, the moving party bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson,* 477 U.S. at 250 n. 4, 106 S.Ct. at 2511 n. 4; *Security Ins.,* 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences from the facts, in a light most favorable to the nonmoving party. *Jeffreys,* 426 F.3d at 553; *Wright v. Coughlin,* 132 F.3d 133, 137-38 (2d Cir.1998). Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." *Treglia v. Town of Manlius,* 313 F.3d 713, 719 (2d Cir.2002) (citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict.").

### C. Failure to Exhaust Administrative Remedies

**\*7** In their motion defendants assert that plaintiff's harassment and assault claims growing out of events which occurred at Washington are procedurally barred, based upon his failure to file and pursue to completion

a timely grievance relating to those claims. Plaintiff responds by asserting that his failure to file a grievance regarding the matter while at Washington was the product of his fear of retaliation, and further argues that the requirement of exhaustion should be excused based upon the fact that his claims were, in fact, investigated by the DOCS Inspector General.

The Prison Litigation Reform Act of 1996 ("PLRA"), Pub.L. No. 104-134, 110 Stat. 1321 (1996), altered the inmate litigation landscape considerably, imposing several restrictions on the ability of prisoners to maintain federal civil rights actions. One such restriction introduced by the PLRA requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 992 (2002). The PLRA's exhaustion requirement thus applies to plaintiff's excessive force claims absent a finding of sufficient basis to find that plaintiff's failure to exhaust was justified or should be excused. *Ruggiero v. County of Orange,* 467 F.3d 170, 175 (2d Cir.2006).

New York prison inmates are subject to an Inmate Grievance Program established by the DOCS, and recognized as an "available" remedy for purposes of the PLRA. *See Mingues v. Nelson,* No. 96 CV 5396, 2004 WL 324898, at \*4 (S.D.N.Y. Feb. 20, 2004) (citing *Mojias v. Johnson,* 351 F.3d 606 (2003) and *Snider v. Melindez,* 199 F.3d 108, 112-13 (2d Cir.1999)). The New York Inmate Grievance Program consists of a three-step review process. First, a written grievance is submitted to the Inmate Grievance Review Committee ("IGRC") within fourteen days of the incident. [7] 7 N.Y.C.R.R. § 701.7(a). The IGRC, which is comprised of inmates and facility employees, then issues a determination regarding the grievance. 7 N.Y.C.R.R. § 701.7(a). If an appeal is filed, the superintendent of the facility next reviews the IGRC's determination and issues a decision. *Id.* § 701.7(b). The third level of the process affords the inmate the right to appeal the superintendent's ruling to the Central Office Review Committee ("CORC"), which makes the final

Snyder v. Goord, Not Reported in F.Supp.2d (2007)
Case 9:18-cv-00339-GTS-ML   Document 60   Filed 06/27/19   Page 95 of 103
2007 WL 957530

administrative decision. *Id.* § 701.7(c). Absent the finding of a basis to excuse non-compliance with this prescribed process, only upon exhaustion of these three levels of review may a prisoner seek relief pursuant to section 1983 in federal court. *Reyes v. Punzal,* 206 F.Supp.2d 431, 432 (W.D.N.Y.2002) (citing, *inter alia, Sulton v. Greiner,* No. 00 Civ. 0727, 2000 WL 1809284, at *3 (S.D.N.Y. Dec. 11, 2000)).

**\*8** The record before the court confirms Snyder's awareness of New York's IGP. Plaintiff in fact grieved the failure of prison officials at Groveland to treat his correspondence to the National Gay and Lesbian Task Force as legal mail and unsuccessfully pursued that grievance through to a determination by the CORC. Accordingly-and defendants do not argue otherwise-plaintiff has fulfilled his obligation to exhaust administrative remedies with regard to his legal mail claim before commencing this action.

Distinctly different circumstances obtain with regard to plaintiff's claims of the use of excessive force and harassment by prison officials and fellow inmates. While plaintiff did file a grievance regarding those matters, the grievance was rejected as untimely, and that determination was neither appealed to the CORC, nor did plaintiff commence a second grievance challenging the untimeliness rejection, a course which was apparently available to him under the IGP. [8]

This is not to say that plaintiff cannot be said to have exhausted available administrative remedies. It should be noted that the three tiered IGP set forth in the controlling regulations does not describe the sole method for a New York State prison inmate to complain of prison conditions including, notably, the use of excessive force. *Heath v. Saddlemire,* No. 9:96-CV-1998, 2002 WL 31242204, at *4 (N.D.N.Y. Oct. 7, 2002). Indeed, the IGP regulations themselves provide that the three tiered mechanism " 'is intended to supplement, not replace, existing formal or informal channels of problem resolution.' " *Id.* (quoting 7 N.Y.C.R.R. § 701.1(a)). One of those alternative methods is a process for informal, expedited review of allegations of harassment by prison officials. 7 N.Y.C.R.R. § 701.11; *Perez,* 195 F.Supp.2d at 543. In this instance, an issue of fact exists surrounding whether plaintiff complied with section 701.11 by submitting a letter regarding Corrections Officer Whittier's actions to Lieutenant Greene. *See Perez,* 195 F.Supp.2d at 543.

Even assuming that plaintiff's efforts to address Corrections Officer Whittier's actions by writing to Lieutenant Green did not suffice to exhaust available remedies, the court must determine whether there is a basis to overlook this deficiency and permit the plaintiff to nonetheless proceed with his excessive force and harassment claims. The situations under which courts have excused an inmate's failure to comply with the IGP's three tier system generally one or more of the categories, including when 1) administrative remedies are not in fact available to the prisoner; 2) the defendants have either waived the defense or engaged in conduct which should estop them from raising it; and 3) other special circumstances, including a reasonable misunderstanding of the grievance procedure, which justify the inmate's failure to comply with the applicable administrative procedural requirements. [9] *Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004); *see also Ruggiero,* 467 F.3d at 175 (citing *Hemphill* ). If the court deems any of these three categories applicable, then plaintiff's claims may be considered exhausted and should not be dismissed. [10] *Hemphill,* 380 F.3d at 690-91.

1. *Availability Of Administrative Remedies*
**\*9** Under certain circumstances the behavior of prison officials may have the legal affect of rendering administrative remedies functionally unavailable. *Abney v. McGinnis,* 380 F.3d 663, 667 (2d Cir.2004). In such cases, the finding that the three tiered IGP was open to the plaintiff inmate does not necessary end the inquiry. *Hemphill,* 380 F.3d at 686-88. Like the plaintiff in *Hemphill,* Snyder argues that he was deterred from filing a grievance while at Washington in light of threats made against him, principally by Corrections Officer Whittier. As was also the situation in *Hemphill,* however, plaintiff did avail himself of other avenues of recourse including to write a letter of complaint to a corrections lieutenant, thereby potentially signaling that his claims of fearing retribution are less than genuine.

When, as in this case, an inmate asserts that his or her resort to the grievance process was deterred based upon conduct such as threats by prison officials, the question of whether a sufficient basis to negate a finding of "availability" has been established entails an objective inquiry, focusing upon whether " 'a similarly situated individual of ordinary firmness' [would] have deemed

them available." *Id.* at 688 (citing *Davis v. Goord,* 320 F.3d 346, 353 (2d Cir.2003)). Plaintiff's complaint and papers in opposition to defendants' motion, in which he asserts that his fears of retribution were based in part upon defendant Whittier's reported efforts to have him harmed by other inmates following his transfer out of the dormitory to which he had been assigned, raises genuine issues of material fact in connection with the objective test to be applied under *Hemphill,* thus precluding the entry of summary judgment.

Urging the court to disregard the strictures associated with evaluation of a summary judgment motion and to proceed to assess plaintiff's credibility, in reliance upon the Second Circuit's decision in *Jeffreys v. City of New York,* 426 F.3d 549, 555 (2d Cir.2005) (characterizing plaintiff's version of the events as so wholly credible that no reasonable jury could believe it), defendants contend that plaintiff's claimed fear of retribution does not suffice under *Hemphill* to serve as a counterweight to the availability of the IGP in New York. I recommend that the court decline defendants' invitation to assure the role of factfinder, and instead find that plaintiff's assertion that he feared reprisal is sufficient to raise a genuine issue of material fact regarding whether administrative remedies were available to him.

### 2. *Waiver and Estoppel*
Since defendants have raised exhaustion of remedies, an affirmative defense, at the earliest available opportunity, they have not waived the defense. The circumstances now presented, however, do provide a basis upon which an estoppel could potentially be predicated.

Prison officials may be estopped from defending against an inmate civil rights action based upon the plaintiff's failure to exhaust available administrative remedies, including when "(1) an inmate was led to believe by prison officials that his alleged incident was not a 'grievance matter' and assured that his claims were otherwise investigated ... (2) an inmate makes a 'reasonable attempt' to exhaust his administrative remedies, especially where it is alleged that corrections officers failed to file the inmate's grievances or otherwise impeded or prevented his efforts, and (3) the state's time to respond to the grievance has expired." *Martinez v. Williams,* 349 F.Supp.2d 677, 683 (S.D.N.Y.2004) (citing and quoting, *inter alia, O'Connor v. Featherston,* No. 01 Civ. 3251, 2002 WL 818085, at *2-*3 (S.D.N.Y. Apr. 29, 2002)). Thus, for example, a defendant

who fails to forward an inmate's complaint to a grievance officer in a timely manner may be estopped from invoking the defense. *Hemphill,* 380 F.3d at 688-89. Similarly, an estoppel may be found where a defendant's use of force or threats inhibit an inmate's ability to utilize grievance procedures. *Ziemba v. Wezner,* 366 F.3d 161, 162-64 (2d Cir.2004).

**\*10** In this instance there is a potential basis for finding an estoppel. Plaintiff's complaints against Corrections Officer Whittier were the subject of an investigation by the DOCS Inspector General, a fact of which the plaintiff was keenly aware. Plaintiff's apparent belief that this investigation obviated the need for him to file a grievance regarding the issue was in all likelihood fortified when, in response to his grievance filed at Groveland, he was advised by the IGP Supervisor at that facility that if the matter had previously been brought "to some administration's attention [,] ... it is not necessary to have this matter readdressed." *See* Complaint (Dkt. No. 2) Exh. 12. This response may well have dissuaded the plaintiff from pursuing the matter further, including to press his otherwise untimely grievance to the CORC or to attempt to convince officials at Groveland that mitigating circumstances existed to accept his otherwise untimely grievance. *See* 7 N.Y.C.R.C. § 701.7(a)(1). Accordingly, in my view a reasonable factfinder could conclude that defendants should be estopped from asserting a defense based upon failure to exhaust.[11]

### 3. *Special Circumstances*
The third category of circumstances under which an inmate's failure to exhaust may be excused was addressed by the Second Circuit in *Giano v. Goord,* 380 F.3d 670 (2d Cir.2004). In *Giano,* the court rejected the concept of a categorical statement regarding the "special circumstances" exception, instead, determining that the court should "[look] at the circumstances which might understandably lead usually uncounselled prisoners to fail to grieve in the normally required way." 380 F.3d at 678.

Defendants claim that plaintiff has not shown special circumstances which might explain why his grievance was late. Plaintiff counters that he should be entitled to the benefit of this special circumstances exception for two reasons. First, Snyder again asserts that his failure to file a grievance was motivated out of fear of retribution, based upon his efforts to seek review of the

matter by the Inspector General's office. Additionally, plaintiff notes that his complaint regarding Corrections Officer Whittier was the subject of at least one letter to prison officials, resulting in an investigation by the DOCS Inspector General. Such efforts can provide a basis for finding exhaustion notwithstanding the technical failure of a prisoner to avail himself or herself of the three tiered IGP set forth in the governing regulations. *See Heath,* 2002 WL 31242204, at *4-*5; *Perez,* 195 F.Supp.2d at 545-46; *see also Marvin v. Goord,* 255 F.3d 40, 43 n. 3 (2d Cir.2001) ("Resolution of the matter through informal channels satisfies the exhaustion requirement, as, under the administrative scheme applicable to New York prisoners, grieving through informal channels is an available remedy."). In order to avail himself of this exception, however, plaintiff must demonstrate that his informal complaints led to a favorable resolution in communication with his charges of misconduct. *Thomas v. Cassleberry,* 315 F.Supp.2d 301, 304 (W.D.N.Y.2004) (rejecting plaintiff's argument that defendants' motion for summary judgment for failure to exhaust should be denied because although plaintiff complained to the Inspector General's Office, there were no allegations that his complaints resulted in a favorable resolution); *Grey v. Sparhawk,* No. 99 CIV. 9871, 2000 WL 815916, at *2 (S.D.N.Y. June 23, 2000) (complaint filed directly with the Inspector General found insufficient to fulfill exhaustion requirement); *cf. Giano,* 380 F.3d at 679 (finding that plaintiff's attempt to expose allegedly retaliatory behavior during a disciplinary hearing which centered upon the same retaliatory act which he complains provided a basis to find justification for plaintiff's failure to exhaust). While plaintiff is unable to make this claim, it is purely the product of the failure of prison officials to notify him of the results of the Inspector General's investigation despite his written requests for this information. I am therefore unable to state with certainty that plaintiff is not entitled to the benefit of the special circumstances exception to the PLRA's exhaustion requirement.

**\*11** In sum, applying the tripartite test announced in the Second Circuit's August, 2004 collection of exhaustion cases and their progeny, I find genuine issues of fact including summary judgment on the issue of plaintiff's alleged failure to exhaust available administrative remedies, and therefore recommend denial of defendants' motion to dismiss on this procedural basis.

#### C. *Personal Involvement*

Turning to the merits of plaintiff's claims, defendants allege that Snyder's complaint discloses potential personal involvement in the events occurring at Washington on the part of only defendants Whittier and Funnye, and that none of them are implicated in the legal mail claims stemming from plaintiff's incarceration in Groveland. This, defendants argue, provides a basis for dismissal of certain of plaintiff's claims.

Personal involvement of a defendant in alleging a constitutional deprivation is a prerequisite to an award of damages against that person under section 1983 against that person. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991) and *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282 (1978)). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant. *See Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986).

#### 1. *Events at Washington*

The only defendants alleged by the plaintiff to have had direct involvement in or knowledge of the events at Washington are two corrections officers directly implicated, defendants Whittier and Funnye, as well as the Assistant Inspector General involved in the investigation of those matters, Mark Miller. Nothing in the record now before the court suggests any actual involvement of or awareness by DOCS Commissioner Goord, Inspector General Roy, or Washington Superintendent Plescia, in any of the relevant events. Instead, plaintiff's claims against those defendants appear to be based purely upon their supervisory positions and Snyder's contention that by virtue of their roles, they must have known about the incident, or the very least should be charged with constructive knowledge of the constitutional violations alleged. These allegations are insufficient to implicate those defendants in the matters involved; it is well established that a supervisor cannot be liable for damages under section 1983 solely by virtue of being a supervisor-there is no *respondeat superior* liability under section 1983. *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003); *Wright,* 21 F.3d at 501.

It is true that a supervisory official can be found liable in a civil rights setting such as that now presented in one of several ways: 1) the supervisor may have directly

2007 WL 957530

participated in the challenged conduct; 2) the supervisor, after learning of the violation through a report or appeal, may have failed to remedy the wrong; 3) the supervisor may have created or allowed to continue a policy or custom under which unconstitutional practices occurred; 4) the supervisor may have been grossly negligent in managing the subordinates who caused the unlawful event; or 5) the supervisor may have failed to act on information indicating that unconstitutional acts were occurring. *Richardson,* 347 F.3d at 435; *Wright,* 21 F.3d at 501; *Williams v. Smith,* 781 F.2d 319, 323-24 (2d Cir.1986). The plaintiff, however, has failed to present any evidence which tends to establish a basis for finding liability on the part of defendants Goord, Roy, or Plescia under any of those theories. Accordingly, I recommend a finding that claims against them based upon lack of personal involvement.

**\*12** Plaintiff's claims against defendant Miller present a slightly different situation. Defendant Miller was charged with investigating the incident implicated in plaintiff's excessive force claims. At the time of the investigation, however, any harassment of him by Whittier had ended, and plaintiff had been transferred out of Washington. Plaintiff does not allege the existence of any lingering effects of the events at Washington, following his transfer out of that prison, which could have been prevented had defendant Miller acted to end the constitutional violations involved. Plaintiff's only quarrel with defendant Miller appears to be his failure, and the failure of his office, to notify him of the status of the investigation conducted in response to his communications inquiring in that regard. This fact alone, however, provides no basis for a finding that defendant Miller was involved in the constitutional violations alleged. *Cf. Greenwaldt v. Coughlin,* No. 93 Civ. 6551, 1995 WL 232736, at \*4 (S.D.N.Y. Apr. 19, 1995) ("It is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations.") (citing *Garrido v. Coughlin,* 716 F.Supp. 98, 100 (S.D.N.Y.1989) (dismissing claim against superintendent of prison where only allegation was that he ignored inmate's request for an investigation)).

### 2. *Plaintiff's Legal Mail Claims*
Plaintiff's legal mail claims involve actions taken by prison officials at Groveland, including those working in the prison mail room. None of the individuals named in plaintiff's complaint, however, was employed at Groveland, and plaintiff has identified no basis to conclude that any of them, including particularly DOCS Commissioner Goord, had any awareness of or involvement in the decision to deny legal mail status to his communications to the National Gay and Lesbian Task Force or to open his returned mail sent to that agency. Plaintiff's legal mail claim is subject to dismissal for failure to name, as a defendant, anyone proven to have been personally involved in that deprivation. *Bass,* 790 F.2d at 263.

### IV. *SUMMARY AND RECOMMENDATION*
While plaintiff failed to file a grievance, and thereby avail himself of the comprehensive inmate grievance program offered to him as a New York State prisoner, to address the harassment allegedly endured at Washington at the hands of defendant Whittier and fellow inmates, in light of the existence of genuine issues of material fact I am unable to state that no reasonable factfinder could discern a proper basis exists to excuse this failure and find that plaintiff should not be barred on this procedural basis from pursuing his claims surrounding the events at Washington. I therefore recommend that defendants' motion for summary judgment dismissing plaintiff's excessive force and harassment claim on this procedural ground be denied. I do find, however, that plaintiff has failed to demonstrate the personal involvement of any of the defendants in his legal mail claim, and of defendants Goord, Roy, Plescia and Miller in connection with the claims growing out of events occurring at Washington, and therefore recommend that defendants' motion for summary judgment dismissing all claims against those defendants be granted.

**\*13** Based on the foregoing, it is hereby

ORDERED that the time within which defendants must answer plaintiff's complaint in this matter is hereby stayed and extended until ten days following the issuance of a decision by Senior District Judge Thomas J. McAvoy deciding the present summary judgment motion, or such other time as Judge McAvoy shall direct; and it is further

RECOMMENDED that defendants' motion for summary judgment dismissing plaintiff's complaint (Dkt. No. 20) be GRANTED, in part, and that plaintiff's legal mail claim be DISMISSED in its entirety, and further that all remaining claims be DISMISSED as against

defendants Goord, Roy, Plescia and Miller, but that it otherwise be DENIED, and that the matter proceed with regard to plaintiff's constitutional claims against defendants Whittier and Funnye based upon events occurring at the Washington Correctional Facility.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

The clerk is directed to promptly forward copies of this order to the parties in accordance with this court's local rules.

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 957530

Footnotes

1    The vast majority of the information serving as a backdrop for the court's decision is drawn from plaintiff's complaint which, as notarized, qualifies as a functional equivalent of an affidavit for purposes of the pending motion. 28 U.S.C. § 1746 (1994); Fed.R.Civ.P. 56(e); *Franco v. Kelly,* 854 F.2d 584, 587 (2d Cir.1998) (citations omitted); *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir .1995); *Yearwood v. LoPiccolo,* No. 95 CIV. 2544, 1998 WL 474073, at *5-*6 & n. 2 (S.D.N.Y. Aug. 10, 1998); *Ketchmore v. Gamache,* No. 96 CIV. 3004, 1997 WL 250453, at *4 n. 1 (S.D.N.Y. May 12, 1997). As required, for the purpose of analyzing defendants' arguments I have drawn all inferences, and resolved any ambiguities, in favor of the plaintiff, as the non-moving party. See *Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2d Cir.1997).

2    Plaintiff's complaint does not provide specifics regarding the official positions of Lieutenants Greene and Hopkins including, notably, whether either could properly be characterized as Corrections Officer Whittier's supervisor, nor does he indicate whether those individuals were officially designated by prison officials at Washington to receive inmate complaints regarding the actions of corrections workers.

3    DOCS Directive 4040, which governs the filing of inmate grievances, permits an Inmate Grievance Program Supervisor ("IGPS") to permit the late filing of grievances when presented with "mitigating circumstances." See O'Brien Aff. (Dkt. No. 20) ¶ 12.

4    This action was initially filed in the United States District Court for the Western District of New York, but was transferred here by order issued by District Judge David G. Larimer on September 29, 2005. See Dkt. No. 4.

5    Plaintiff's complaint, which is comprised of seventy-two typewritten pages and several attached exhibits, is not lacking in detail. Despite its refreshing clarity, however, plaintiff's complaint is in many respects repetitive and fails to comply with the governing provisions of the Federal Rules of Civil Procedure which require, *inter alia,* that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed.R.Civ.P. 8(a). This requirement is more than merely technical, and instead is designed to permit a responding party and the court to accurately gauge the allegations of a complaint and permit the issues in a case to be properly framed. *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 103 (1957); *Phillips v. Girdich,* 408 F.3d 124, 127-29 (2d Cir.2005); *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988); *In re Ferro Corp. ERISA Litig.,* 422 F.Supp.2d 850, 857 (N.D.Ohio 2006); *Rashidi v. Albright,* 818 F.Supp. 1354, 1355-56 (D.Nev.1993).

6    That rule provides, in relevant part, that

        [w]hen by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged.

    Fed.R.Civ.P. 6(b).

7    The Inmate Grievance Program supervisor may waive the timeliness of the grievance submission due to "mitigating circumstances." 7 N.Y.C.R.R. § 701.7(a)(1).

8    Although there is no need to address this argument since plaintiff failed to pursue the matter through to the CORC, had he done so with regard to the excessive force and harassment grievance filed at Groveland, he nonetheless would have failed to satisfy the PLRA's exhaustion requirement since, as the Supreme Court has now made clear, the filing and pursuit to completion of an untimely grievance does not satisfy the Act's exhaustion requirement. *Woodford v. Ngo,* --- U.S. ----, 126 S.Ct. 2378, 2382 (2006).

2007 WL 957530

9   As this case aptly illustrates, many of the typical fact patterns presented in cases involving an inmate's failure to exhaust do not fit neatly into any single category, but instead may overlap into two, or potentially even all three, of the groupings identified in *Hemphill. See Giano v. Goord,* 380 F.3d 670, 677 n. 6. This fact may well account for a blurring of these categories in a large share of Second Circuit PLRA cases. *Id.*

10  Relying upon case law which has since been supplanted in light of the Supreme Court's contrary decision in *Porter v. Nussle,* 534 U.S. 516, 122 S.Ct. 983 (2002), plaintiff argues that he was not required to exhaust administrative remedies in light of the nature of his claim. The case upon which Snyder principally relies, however, *Lawrence v. Goord,* 238 F.3d 182 (2d Cir.2001), has since been vacated, 535 U.S. 901, 122 S.Ct. 1200 (2002), and the Court has now made it clear in *Porter* that PLRA's exhaustion requirement applies to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter,* 534 U.S. at 532, 122 S.Ct. at 992; *Ruggiero,* 380 F .3d at 173 (citing *Porter* ). The contention implicit in plaintiff's argument, to the effect that his reliance upon pre-*Porter* case law as a basis for not filing a formal grievance was appropriate, citing *Rodriguez v. Westchester County Jail Correctional Dept.,* 372 F.3d 485 (2d Cir.2004), is misplaced, since *Porter* was decided some three years prior to the events at issue.

11  It should be noted that fear of retribution can also provide a basis for finding that a defendant should be estopped from asserting failure to exhaust as a defense. *See Hemphill,* 380 F.3d at 688-89.

---

**End of Document**                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 1056416
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Kody WEIDMAN, Plaintiff,
v.
Larry WILCOX, Defendant.

No. 6:12–CV–6524 (MAT).
|
Signed March 17, 2014.

**Attorneys and Law Firms**

Kody Weidman, New Berlin, NY, pro se.

**DECISION AND ORDER**

MICHAEL A. TELESCA, District Judge.

**I. Introduction**

\*1 *Pro se* plaintiff Kody Weidman ("Weidman" or "Plaintiff"), an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), instituted this action pursuant to 42 U.S.C. § 1983, alleging that he was denied adequate medical treatment in violation of his rights under the Eighth Amendment. Defendant has moved to dismiss the complaint on the basis that Weidman has failed to exhaust his administrative remedies.

**II. Background**

Plaintiff has alleged the following facts, which the Court accepts as true for purposes of this motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b) (6)"). *E. g., Jaghory v. New York State Dep't of Educ.,* 131 F.3d 326, 329 (2d Cir.1997) (citations omitted). On September 3, 2012, Plaintiff was bitten on his left cheek by a spider. He reported it and was sent to sick call. However, the head nurse refused to treat him, and as a result, his left cheek "swell[ed] up and start[ed] to pus", and became painful. Dkt # 1, p. 3 of 4. Plaintiff contacted "D.I. Delmani", who in turn contacted "the sgt", who took him to the hospital at Lakeview on September 6, 2012. *Id.* There, Plaintiff was seen by a doctor who gave him "sulfamethox" and applied a heat

pack to his face. The "pus and swelling then went down." *Id.*

Plaintiff did not file a grievance but instead proceeded directly to this Court, filing his complaint on September 14, 2012. Defendants filed a motion to dismiss on March 18, 2013. The complaint was dismissed for failure to prosecute on June 19, 2013, but was reinstated on June 25, 2013. The matter was transferred to the undersigned on February 20, 2014. For the reasons set forth below, the motion to dismiss is granted, and the complaint is dismissed in its entirety with prejudice.

**III. Defendant's Motion to Dismiss**

Defendant asserts that it is clear from the face of Plaintiff's complaint that he has failed to exhaust his administrative remedies by filing a prison grievance, and therefore his complaint warrants dismissal pursuant to Rule 12(b)(6). In response to Defendant's non-exhaustion argument, Plaintiff simply restates the basis for his grievance as his reason for not exhausting his administrative remedies.

**A. Administrative Exhaustion**

The Prison Litigation Reform Act of 1995 (the "PLRA"), Pub.L. No. 104–134, 110 Stat. 1321 (1996), requires an inmate to exhaust all available administrative remedies before filing suit in federal court. Specifically, Section 1997e(a) of Title 42 U.S.C. provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has ruled that the exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong[,]" *Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002).

\*2 It is well established that exhaustion requires that "a prisoner must grieve his complaint about prison conditions up through the highest level of administrative review" before filing suit. *Porter v. Goord,* No. 01 Civ. 8996(NRB), 2002 WL 1402000, at \*1 (S.D.N.Y. June 28, 2002) (citing *Neal v. Goord,* 267 F.3d 116, 122 (2d Cir.2001) ("[G]rievances must now be fully pursued prior to filing a complaint in federal court."); other citation

Case 9:18-cv-00339-GTS-ML Document 60 Filed 06/27/19 Page 102 of 103

omitted)); *see also Booth v. Churner,* 532 U.S. 731, 735, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001) (noting that inmate, who conceded nonexhuastion below, "did not, however, go beyond the first step, and never sought intermediate or final administrative review after the prison authority denied relief"); *Gibson v. Goord,* 280 F.3d 221, 223 (2d Cir.2002) (noting plaintiff "had not pursued the available remedy of filing a 'level two grievance' "). "Complete exhaustion" is therefore required. *Graham v. Cochran,* No. 96 Civ. 6166(LTS)(RLE), 2002 WL 31132874, at *1, 6 (S.D.N.Y.2002) (noting "action must be dismissed because [plaintiff] unreasonably failed to appeal"); *see also McCoy v. Goord,* 255 F.Supp.2d 233, 251 (S.D.N.Y.2003) ("The standard is not one of fair notice to the defendants, or of substantial compliance.").

Prisoners in DOCCS custody must complete a three-step inmate grievance procedure, including two levels of appeals, to exhaust their administrative remedies. *See, e.g., Baskerville v. Blot,* 224 F.Supp.2d 723, 729 (S.D.N.Y.2002); N.Y. CORR. LAWW § 139; N .Y. COMP.CODES R. & REGS. tit. 7, § 701.7. The DOCCS grievance procedure is available for any number of complaints, as New York State law "permits inmates to file internal grievances as to virtually any issue affecting their confinement." *Flanagan v. Maly,* No. 99 Civ. 12336(GEL), 2002 WL 122921, at *1 (S.D.N.Y. Jan.29, 2002) (citations omitted).

Although the Second Circuit has not explicitly ruled on the issue of whether exhaustion is jurisdictional, it has held indirectly that it is not. *See Jenkins v. Haubert,* 179 F.3d 19, 28–29 (2d Cir.1999) (failure to exhaust is an affirmative defense); *Snider v. Melindez,* 199 F.3d 108, 112 (2d Cir.1999) (exhaustion need not be pled in the complaint); *Davis v. New York,* 316 F.3d 93, 101 (2d Cir.2002) (non-exhaustion may be waived). Thus, most courts in this Circuit have found that Rule 12(b)(6), rather than Rule 12(b) (1), is the proper vehicle for a defendant to use to seek dismissal of a § 1983 complaint, provided that nonexhaustion is apparent on the face of the complaint. *McCoy,* 255 F.Supp.2d at 249 (citing *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 74–75 (2d Cir.1998) ("An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint."); other citation omitted). If, on the other hand, "nonexhaustion is not clear from the face of the complaint, a defendant's motion

to dismiss should be converted, pursuant to Rule 12(b), to one for summary judgment limited to the narrow issue of exhaustion and the relatively straightforward questions about the plaintiff's efforts to exhaust, whether remedies were available, or whether exhaustion might be, in very limited circumstances, excused." *McCoy,* 255 F.Supp.2d at 251 (citation omitted).

**B. Analysis**

**\*3** Plaintiff's complaint, broadly construed, asserts entitlement to damages under 42 U.S.C. § 1983 for negligent medical care and deliberate indifference to a serious medical need. Because Plaintiff has not alleged that he was singled out for such treatment, his action is one brought with respect to prison conditions, and he must exhaust his administrative remedies. *Polanco v. City of N.Y. Dep't of Corr.,* No. 01 Civ. 759(AGS), 2002 WL 272401, at *2 (S.D.N.Y. Feb.26, 2002) (citing *Neal v. Goord,* 267 F.3d at 119–21 (claims of inadequate medical treatment generally relate to prison conditions)). Here, Plaintiff admitted in his complaint that there was a prison grievance procedure available to him, but he did not use it. Dkt # 1, p. 2 of 4. When asked on the form complaint why he did not file a grievance, his response reads in full as follows: "I Kody Weidman when [sic] to sick call about the spider bite on my face and they refuse to attend me." *Id.*

In certain situations, an inmate may be exempted from the exhaustion requirement. If the inmate argues that he is exempt, the court must undertake a three-part inquiry, which entails asking (1) whether administrative remedies were not in fact available; (2) whether the defendants' actions inhibited exhaustion so as to estop them from asserting non-exhaustion as an affirmative defense; or (3) whether "special circumstances" exist (e.g., an inmate reasonably misunderstood the requirements of the grievance procedures). *Hemphill v. City of New York,* 380 F.3d 680, 686 (2d Cir.2004).

Plaintiff has not specifically argued that he is exempt from grieving for any of the reasons recognized in *Hemphill.* He does not claim that the grievance process was "unavailable" to him. Plaintiff does not identify any "special circumstances" that might justify his failure to exhaust his administrative remedies. He does not specifically claim that Defendants took any steps to inhibit him from taking advantage of the grievance process. He simply restates the gravamen of his complaint (i.e., he went to sick call and did not receive treatment for his spider bite)

as his reason for not pursuing a prison grievance through the proper channels. This is plainly insufficient.

In short, because Plaintiff has failed to identify any legally cognizable reason why he could not exhaust his administrative remedies, and because he affirmatively admits that he did not exhaust them, the Court must grant Defendants' motion to dismiss his complaint. *See, e.g., Lewis v. City of N.Y.,* No. 12 CV 5850(CM), 2013 WL 3833001, at *4 (S.D.N.Y. July 23, 2013) (granting defendant's motion to dismiss where plaintiff-inmate failed to offer any excuse for failure to follow through on the grievance he filed; did not claim that grievance process was "unavailable" to him; did not identify any "special circumstances" to justify his failure to exhaust his administrative remedies; and did not specifically claim that prison officials interfered with his ability to use the grievance process).

#### C. Whether Dismissal Is With or Without Prejudice

**\*4** When a prisoner fails to exhaust available administrative remedies, and the time permitted for pursuing such remedies has not expired, the complaint is ordinarily dismissed without prejudice, thereby allowing the prisoner to submit a grievance to the particular institution at which the incident in question occurred. *Snider v. Melindez,* 199 F.3d at 111–12; *see also Morales v. Mackalm,* 278 F.3d 126, 128, 131 (2d Cir.2002) (*per curiam*) (broadly stating in *dictum* that any dismissal for failure to exhaust administrative remedies should be without prejudice), *abrogated* on *other grounds, Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). In *Berry v. Kerik,* 366 F.3d 85 (2d Cir.2004), however, the Second Circuit explained that this "broad [ ] *dictum*" in *Morales* "would extend too far if applied to cases where exhaustion was required but administrative remedies have become unavailable after the prisoner had ample opportunity to use them and no special circumstances justified failure to exhaust." 366 F.3d at 88.

Here, because Plaintiff was released from prison during the pendency of this action, administrative remedies are no longer available to him. *Finger v. Superintendent McFinnis,* 99CIV.9870(LTS)(THK), 2004 WL 1367506, *5 (S.D.N.Y. June 16, 2004) (citing *Morris v. Eversley,*

205 F.Supp.2d 234, 241 n. 4 (S.D.N.Y.2002) (citing *Liner v. Goord,* 115 F.Supp.2d 432, 434 (S.D.N.Y.2000) (concluding that administrative remedies were no longer available to plaintiff who had been released from prison because inmate grievance procedures, on their face, are available only to inmates and visitors, and not to former prisoners)). Since the incident of which Plaintiff complains occurred in early September 2012, and he was not released to parole supervision until March 2013, he had ample opportunity to exhaust his administrative remedies while they were still available to him as a DOCCS prisoner. *See Berry,* 366 F.3d at 88 (former inmate who had been in DOCCS custody had "ample opportunity" to use administrative remedies where he had been incarcerated for several months after the onset of the conditions that gave rise to his complaints and before his release, and then had been incarcerated for periods of nine months and three months on unrelated offenses). As discussed above, Plaintiff has offered no legally cognizable reason for his failure to exhaust, simply stating, in effect, that he failed to file a grievance because he suffered a grievable injury. Hence, the Court finds that Plaintiff's complaint should be dismissed with prejudice. *See id.* (dismissing with prejudice inmate's action for failure to exhaust, where exhaustion was required but administrative remedies had become unavailable after prisoner had ample opportunity to use them, and no special circumstances justified failure to exhaust).

#### IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss (Dkt # 10) is granted, and Plaintiff's complaint (Dkt # 1) is dismissed in its entirety with prejudice. The Court hereby certifies that any appeal of this order would not be taken in good faith, and therefore it denies leave to appeal in *forma pauperis.* Any further request for in *forma pauperis* status must be made on motion to the United States Court of Appeals for the Second Circuit. The Clerk of the Court is requested to close this case.

**\*5 IT IS SO ORDERED.**

#### All Citations

Not Reported in F.Supp.3d, 2014 WL 1056416

---

     © 2019 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2019 Thomson Reuters. No claim to original U.S. Government Works.